UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
EUREKA V LLC,                                  :
        Plaintiff,                     :        Civil Action No.
                                               :
                                               :        3 02 CV 356 (DJS)
VS.                                            :
                                               :
THE TOWN OF RIDGEFIELD, THE BOARD OF            :
SELECTMEN OF THE TOWN OF RIDGEFIELD,            :
THE BOARD OF FINANCE OF THE TOWN OF             :
RIDGEFIELD, THE ECONOMIC DEVELOPMENT            :
COMMISSION OF THE TOWN OF RIDGEFIELD,           :
THE BENNETT'S FARM DEVELOPMENT                  :
AUTHORITY, and BARBARA SERFILIPPI, IN           :
HER OFFICIAL CAPACITY AS THE TOWN               :
CLERK OF THE TOWN OF RIDGEFIELD,                :
                                               :
        Defendants.                    :        OCTOBER 27, 2004
---------------------------------------------------------------x

**AFFIDAVIT OF MATTHEW C. MASON IN**
**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

STATE OF CONNECTICUT :
                     : ss. Wilton
COUNTY OF FAIRFIELD  :

    I, Matthew C. Mason, being duly sworn, depose and say:

    1.    I am over the age of eighteen (18) years and believe in the obligations of an oath.

    2.    I am an attorney with the law firm of Gregory and Adams, P.C. and am a member of the Bar of this Court.

    3.    This case involves Eureka V LLC's claims, _inter alia_, to enjoin the taking of the South Parcel of Bennett's Farm Property, consisting of the 155 acres owned by Eureka located to the south of Bennett's Farm Road.

4. I was lead trial counsel for Eureka V LLC ("Eureka") in <u>Ridgefield v. Eureka</u>, CV-01-0344176 S (the "State Case"), a trial of the value of the 458 acre North Parcel taken by Ridgefield by eminent domain for open space. The Defendants claim in their motion for summary judgment that: "In the State Case, a prior action between the same parties as in this federal action, the following issue was actually litigated, submitted for determination, and in fact determined: was development pursuant to the plan Eureka submitted to the Town of Ridgefield and its agencies (the 'Master Plan') reasonably probable, or physically possible?" Def. Memo at 2. This assertion is completely untrue, as the feasibility of the Affordable Housing Master Plan was never litigated or submitted for determination by the Court -- it was simply not at issue in the State Case.

5. The only residential development at issue in the State Case concerned a potential subdivision [10 lots] on the 245 acres zoned for residential use, about which the appraisers differed as to whether open space or residential development was the highest and best use. The potential of the balance of the entire Bennett's Farm Property to support residential development, as contemplated by Eureka's Affordable Housing Master Plan, including the 155 acre South Parcel which was <u>not</u> at issue in the State Case, was never an issue in the State Case, let alone one that was decided adversely to Eureka.

6. The State Case involved only the value of the North Parcel. The issues were framed by the appraisals of the parties' experts. Eureka's expert appraisers, Christopher Kerin of Kerin Commercial Realty and Thomas Merola of Valuation Services, both concluded that the highest and best use of the North Parcel was for a mixed use development consistent with the existing zoning, i.e., residential development [10 lots] of the 245 acres zoned for residential use, and commercial development of the 213 acres zoned CDD (Commercial Development District).

DX 12 at 24-25 (Exhibit A hereto); DX 13 at 16 (Exhibit B hereto); 1/21/04 Kerin TR 53 line 6 – TR 54 line 16 (Exhibit C hereto); 1/22/04 Merola TR 80 line 17- TR 81 line 6 (Exhibit D hereto).[1]

7. Ridgefield's appraiser, John Leary, agreed that the highest and best use of the CDD zoned property was for commercial development, and that sewer and water were reasonably available to support development of some 800,000 square feet of development on the North Parcel alone, but concluded that the highest and best use of the residential property was for open space.  PX 6 at A-18, 20 -21 (Exhibit E hereto); PX 7 at A-27-29 (Exhibit F hereto); 1/29/04 Leary TR 15 line 7 – TR 19 line 8 (Exhibit G hereto).

8. Eureka's appraisers did not base their opinions of value on Eureka's Affordable Housing Master Plan.

9. Mr. Kerin testified as follows on cross-examination:

Q. Okay.  Let me ask you this, did affordable housing play any role in how you arrived at your opinion of value?

A. I appraised the property with no approvals in place.

THE COURT: Did it afford any basis?

THE WITNESS: No.

1/21/04 Kerin TR 107 lines 2-6 (Exhibit H hereto).

10. Similarly, on cross examination Mr. Merola testified as follows:

Q. All right.  Now did affordable housing play any role on how you arrived at your opinion of value?

A. No.

1/22/04 Merola TR 103 lines 20-22 (Exhibit I hereto).

---

[1] The exhibits and documents cited herein and attached to this affidavit are from the State Case.  DX refers to Defendant's [Eureka] Trial Exhibit and PX refers to Plaintiff's [Ridgefield] Trial Exhibit.

11. Eureka never argued for a value of the North Property based on the Affordable Housing Master Plan.

12. If Eureka had advocated a valuation based on its Affordable Housing Master Plan, the trial in the State Court Case would have been very different and the opinions of value of Eureka's appraisers would have been substantially higher. Eureka would have fully litigated the feasibility of obtaining a zone change and established, like it did for the CDD zoned portion of the North Parcel, that sewer and water were readily available to support that development.

13. All the parties' appraisers, including Ridgefield's appraiser, agreed that development of the CDD portion of the site was reasonably probable and physically possible. E.g. PX 6 at A-18, A-20-21 (Exhibit E hereto); Leary 1/29/04 TR 15 line 7 – TR 19 line 8 (Exhibit G hereto); Leary 1/29/04 TR 118 lines 13 – 25 (Exhibit J hereto). This is an admission by Ridgefield that sewer and water are available to support development of the CDD zoned portion of the site.

14. Ridgefield's counsel acknowledged during the trial that all three appraisers valued the CDD zoned property for corporate, not residential use. 1/23/04 TR 7 lines 4 -21 (Exhibit K hereto).

15. The Defendants' argument that certain aspects of the State Court Decision apply to the entire Bennett's Farm Property, including the South Parcel which was not at issue in the State Case, is particularly offensive given that the Defendants took precisely the opposite position in the State Case. There Ridgefield argued that the South Parcel was a legally distinct property and issues pertaining to development of that parcel, including Ridgefield's own Preliminary Project Plan for development of the South Parcel and its plans for water and waste water treatment, were irrelevant to the value and development potential of the North Parcel. The

Court agreed with Ridgefield and excluded evidence pertaining to the South Parcel.  1/23/04 TR 31 line 3 - TR 37 line 19 (Exhibit L hereto).

16. In sum, the only issue pertaining to residential development in the State Case concerned the residentially zoned portion of the North Parcel, on which Eureka proposed only 10 lots.  Residential development of the entire North Parcel, or of the entire Bennett's Farm Property, or of the South Parcel or of Eureka's Affordable Housing Master Plan were never litigated or decided by the Court.  Since Eureka never argued for a valuation based on the Affordable Housing Master Plan, the claim that the feasibility of that plan was litigated and decided by the Court and was necessary to its Judgment is utter nonsense.

17. On August 31, 2001, the Plaintiff filed with the Planning and Zoning Commission an application for a zone change and amendment to the Town Plan of Conservation and Development as part of a development plan consistent with its Affordable Housing Master Plan filed in January 2001, including 700 residential units (plus the 10 lot subdivision) of which 210 would constitute affordable housing under Conn. Gen. Stat. §8-30g.  Like the Affordable Housing Master Plan, this application proposed to develop the South Parcel with 445,000 square feet of commercial development and 150 residential units.

18. Ridgefield completed the taking of the North Parcel by eminent domain on December 20, 2001, when it filed its Certificate of Taking with the Town Clerk of Ridgefield.

19. Following the taking of the North Parcel, Eureka had to withdraw its applications for a zone change and text amendment since that taking had effectively gutted the application and Eureka could not ask the Commission to act on a proposed zone change which in part affected property it not longer owned.

20. Eureka has **never** abandoned its plans for affordable housing on the South Parcel. In fact, Eureka's commitment to affordable housing on the property is unwavering, including because Ridgefield's conduct has made it clear that Eureka will only receive development approvals through the courts.

                                                                                         _____
                                                                                         Matthew C. Mason

Sworn to before me this
27th day of October, 2004
_____
Commissioner of the Superior Court

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed this day, postage pre-paid on October 28, 2004 to the following parties:

Stewart Edelstein, Esq.
Jonathan S. Bowman, Esq.
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06601-1821

Monte E. Frank, Esq.
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT 06810

                                                                                                     _____
                                                                                                     Matthew C. Mason, Esq.