EXHIBIT A

# APPRAISAL

Property of

Town of Ridgefield

Bennett's Farm Road, Ridgefield, CT

A 458 ± acre parcel of vacant land
zoned commercial and residential

as of

December 20, 2001

Appraisal authorized by:   Attorney Matthew Mason
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897

Eureka Trial Exhibit
12

## HIGHEST AND BEST USE

The dictionary of Real Estate Appraisal, third edition, published by the Appraisal Institute, 1993, provides the following definitions of Highest and Best Use:

> The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability.

> Highest and Best Use of Land or a site as though vacant: Among all reasonable, alternative uses, the use that yields the highest present land value, after payments are made for labor capital, and coordination. The use of a property based on the assumption that the parcel of land is vacant or can be made vacant by demolishing any improvements.

> Highest and Best Use of the property as improved: The use that should be made of a property as it exists. An existing property should be renovated or retained as is so long as it continues to contribute to the total market value of the property, or until the return from a new improvement would more than offset the cost of demolishing the existing building and constructing a new one.

The determination of highest and best use of a given property involves consideration of four basic categories of criteria. The categories of analysis are: 1) physically possible, 2) legally permissible, 3) financially feasible, and 4) maximally productive. The categories of analysis may be considered in sequence, with each subsequent category becoming a more restrictive means of selection or determination of the highest and best use.

Physically possible. Determinants of what may be physically developed on a given site include the following factors: location, parcel size and shape, topography, wetlands and soil composition. Off-site considerations such as utilities and paved roads also influence the development potential of the land. The subject has 458 $\pm$ acres of unimproved vacant land. There is an abandoned road that runs north from Bennett's Farm Road to Bennett's Pond. There is a second road, that was paved at one time, that runs north to the high point of the parcel. The land has open fields and wetlands. The topography is level to gently rolling. The property has sufficient road frontage and acreage that will allow commercial and residential development of the property. Electricity and telephone are available to the property. As noted earlier, public water and sewer are located nearby and should be able to be obtained. Well and septic may also be an option.

There is also a plan to widen Route 7 to a four land highway over the next three years. Such a widening, alleviates any traffic congestion and enhances the site as a center for commercial or office development.

Legally permitted. Government imposed regulations (zoning codes and development plans) and private covenants or deed restrictions can limit the range of permitted land uses at a specific site. The subject property is located within a CDD (Corporate Development District) and RAAA, RAA and RA (residential) zone. We estimate that 213 acre of land are zoned CDD, 237.1 acres are zoned RAAA, 5.9 acres are zoned RA and there is a 2 acre RAA parcel. The applicable zoning permits a wide range of uses.

Financially feasible. Patterns of land use development within the subject neighborhood were studied. The subject is located in an area of residential use. The "1999 Ridgefield Plan of Conservation and Development" as commissioned by the Ridgefield Planning and Zoning Commission, provides a guide as to the needs and plan for the future growth of the town. In the Business and Economic Development portion of the report, an emphasis is placed upon the development of CDD zones in order to encourage and expand the economic base. In the addendum a copy of the plan from the report is included. Commercial and residential development of the subject is financially feasible.

According to the Building Department in 1999, 93 new single family home permits were issued. In 2000, 74 new permits and in 2001, 48 permits. In 1999 seven subdivisions were approved creating 27 new lots. In 2000, eight subdivisions were approved creating 28 new lots. In 2001 two subdivisions gained permits creating 5 lots. A 20 lot subdivision is before the Board, but as not yet received approvals. It should be noted that a ten lot subdivision was purchased by the town for $3,438,000 (approximately $350,000 per lot), diminishing the available inventory. The town is also marketing two seven acre lots for a minimum of $650,000 each. We conclude that residential development is financially feasible.

Maximally productive. Maximally productive may refer to a category of land use; it may also refer to an intensity of land use. Given the town plan for development and the demand for commercial and residential land in the town of Ridgefield and abutting Danbury, development of commercial and residential uses would be the most productive use of the subject property. The report "IBM Property: Limitations and Opportunities" - April 1995, concludes that up to 1,900,000 s.f. of corporate space is possible. The report also notes that residential development is possible.

Conclusion: We conclude that the highest and best use of the 213 acres of CDD zoned land is to develop with a corporate type campus of commercial and office space. The highest and best use of the portion of the subject that has 245 acres of residentially zoned land would be to develop for residential purposes. This would also include setting aside lands that are best suited for open space and recreational uses.

# KERIN COMMERCIAL REAL ESTATE

## SELF-CONTAINED REAL ESTATE APPRAISAL REPORT

**SUBJECT PROPERTY:**

NORTH SIDE OF BENNETT'S FARM ROAD
RIDGEFIELD, CONNECTICUT

**PROPERTY OF:**

EUREKA V LLC

**DATE OF VALUATION:**

DECEMBER 20, 2001

**PREPARED FOR:**

MATTHEW C. MASON, ESQUIRE
GREGORY AND ADAMS, P.C.
190 OLD RIDGEFIELD ROAD
WILTON, CT 06897

**PREPARED BY:**

CHRISTOPHER K. KERIN, MAI, CCIM

Eureka Trial Exhibit 13

P.O. BOX 814, NEWTOWN, CONNECTICUT 06470-0814
PHONE (203) 426-8933        FAX (203) 426-2474

## HIGHEST AND BEST USE

The principle of highest and best use is defined in *The Dictionary of Real Estate Appraisal, Third Edition*, published by the Appraisal Institute, as follows:

> *"The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability."*

In arriving at an opinion of the highest and best use for the subject property, consideration has been given to such factors as neighborhood trends and influences, accessibility, zoning, current market conditions relative to this type of property, physical characteristics of the property, uses and requirements permitted by zoning, etc. Based on the foregoing considerations, it is the appraiser's opinion that the highest and best use of the subject property would be to construct a mixed-use development containing residential and commercial uses consistent with present zoning. Factors that support this conclusion are as follows:

1) Residential development is permitted in the subject's RA, RAA and RAAA zones. Commercial development is permitted in the subject's CDD zone. A zone change could be obtained to allow more flexible development of the 458 acres consistent with market demands.

2) There would appear to be no physical restraints that would prevent development. Any development plan should account for areas of sloping topography and wetlands. The property benefits from frontage along Bennett Pond and has a view amenity from the central portion of the parcel.

3) Mixed-use development of the subject property with residential and commercial uses consistent with present zoning is financially feasible and represents the most profitable use of the subject property.

Note that the Master Plan, zone change and text amendments pending as of the date of Taking indicated a potential for approximately 560 residential units on the subject property. The plan accounted for wetlands and sloping topography, and set aside large areas of open space. 30% of the units on the property were "affordable housing" as described in the Connecticut Statutes. The market value of the subject property would be higher if the zone change and text amendments were approved in accord with the Master Plan. Refer to page A-7 of the Addenda for a copy of this Master Plan.