```
DOCKET NO.: CV-01-0344176S
* * * * * * * * * * * * * X

TOWN OF RIDGEFIELD,              :

          PLAINTIFF,             :    SUPERIOR COURT OF CONNECTICUT

     -VS-                        :    JUDICIAL DISTRICT OF DANBURY

EUREKA V, LLC, ET AL             :    JANUARY 21, 2004

          DEFENDANTS.            :

* * * * * * * * * * * * * X

B E F O R E:
          THE HONORABLE HOWARD J. MORAGHAN, JUDGE TRIAL
               REFEREE

A P P E A R A N C E:


                    COHEN AND WOLF, P.C.
               BY:  MONTE E. FRANK, ESQUIRE
                        And
                    JONATHAN S. BOWMAN, ESQUIRE
                    1115 Broad Street
                    Bridgeport, Connecticut  06601
                    ATTORNEY FOR THE PLAINTIFF

                    SHIPMAN & GOODWIN, LLP
               BY:  BARRY C. HAWKINS, ESQUIRE
                    1 Landmark Square
                    Stamford, Connecticut  06901
                    ATTORNEY FOR DEFENDANTS

                    GREGORY AND ADAMS, P.C.
               BY:  MATHEW C. MASON, ESQUIRE
                    190 Old Ridgefield Road
                    Wilton, Connecticut  06897
                    ATTORNEY FOR DEFENDANTS


                                        Donna Haas
                                        Court Monitor
```

1  CHRISTOPHER KERIN, called as a witness, was
2  examined and testified as follows:
3          THE CLERK: Do you solemnly swear or solemnly and
4      sincerely affirm, as the case may be, that the evidence
5      you shall give concerning this case, shall be the truth,
6      the whole truth and nothing but the truth, so help you
7      God or upon penalty of perjury?
8          THE WITNESS: I do.
9          THE CLERK: You may be seated.
10         State your name and address for the record and spell
11     your name, please.
12         THE WITNESS: My name is Christopher Kerin, K-E-R-I-
13     N. My address, for the firm, is 211 State Street,
14     Bridgeport, Connecticut.
15 DIRECT EXAMINATION BY MR. HAWKINS OF MR. KERIN:
16   Q  Mr. Kerin, what is your occupation?
17   A  I'm a commercial real estate appraiser in the State of
18 Connecticut, I'm certified and I also hold the appraisal
19 institute's MAI designation.
20         MR. HAWKINS: Your Honor, I believe, that counsel
21     will be in agreement that we've stipulated that he be
22     qualified as an expert witness as an appraiser?
23         MR. BOWMAN: Your Honor, I'll stipulate as to
24     qualifications.
25         THE COURT: Very well, the record may indicate a
26     stipulation with respect to his expertise.
27   Q  Mr. Kerin, are you familiar with property, described by the

1            MR. HAWKINS:  I --
2            MR. BOWMAN:  That's his opinion, I don't think
3      that's the question he was asked.
4            MR. HAWKINS:  I agree.  Let me try it again.
5  BY MR. HAWKINS:
6      Q   Did you reach a conclusion, with respect to the highest and
7  best use of this parcel?
8      A   Yes.
9      Q   And, what is that highest and best use of the property?
10     A   On page 16 of my appraisal --
11           MR. HAWKINS:  In the appraisal report, by
12      stipulation and a full exhibit, Your Honor, it's number
13      --
14           THE COURT:  That's defendant's exhibit?
15           MR. HAWKINS:  It's number 13.
16           THE COURT:  Defendant's exhibit?
17           MR. HAWKINS:  13, Defendant's Exhibit 13.
18     A   I'd go over the highest and best use in the four criteria
19  we've just talked about two of them.  The third criteria is whether
20  or not it's financially feasible.  And the forth is that, use that
21  is most profitable, would be the value at which the property would
22  sell.
23           With regard to the highest and best use of this property,
24  it's my opinion, that the highest and best use would be, to
25  construct a mixed-use development, containing both residential and
26  commercial uses, consistent with present zoning.
27           But, also, when you look at the market for properties that

1   are of this size, the subject property, again, is 458 acres in
2   size, typically, you find that the owner attempts to obtain some
3   type of zone change to meet the market, as of that period in time.
4   So, a zone change could be obtained to allow more flexible uses of
5   this property, but I am appraising the property under it's current
6   zoning with no approvals in place, with the buyer taking the full
7   risk and performance of obtaining any approvals.  And, if approvals
8   were obtained, specifically, also approvals in accordance with the
9   master plan of development for affordable housing, the market value
10  of this property would be higher.
11      Q   But, you didn't go to that higher value, did you?
12      A   No.
13      Q   Your highest and best use of this property, for the
14  purposes of this appraisal report, as of the taking date, was based
15  on its existing zoning?
16      A   That's correct.
17      Q   Now, we'll get to the question that you already
18  anticipated.  As a result of your review of the property and the
19  limitations and your determination as to the highest and best use,
20  did you come to a conclusion as to the fair market value of the
21  property on the taking date of December 2001?
22      A   Yes.
23      Q   And, what is that value, sir?
24      A   Twenty million six hundred thousand dollars.
25      Q   All right.  And, could you tell the Court, how it was, your
26  methodology, in relatively brief form, the method by which you
    reached that conclusion as to the value on the taking date?

DOCKET NO. CV01-0344176-S

**EXHIBIT D**

```
* * * * * * * * * * * * * * * *X
TOWN OF RIDGEFIELD
                PLAINTIFF     : SUPERIOR COURT OF CONNECTICUT

    -VS-                      : JUDICIAL DISTRICT OF DANBURY

EUREKA V LLC                  : JANUARY 22, 2004
                DEFENDANT
* * * * * * * * * * * * * * * *X
```

B E F O R E:

    THE HONORABLE HOWARD J. MORAGHAN, JUDGE

A P P E A R A N C E S:

    COHEN AND WOLF P.C.
    BY:  MONTE E. FRANK, ESQUIRE
         158 Deer Hill Avenue
         Danbury, Connecticut 6810
    ATTORNEY FOR THE PLAINTIFF

    COHEN AND WOLF P.C.
    BY:  JOHNATHAN S. BOWMAN, ESQUIRE
         158 Deer Hill Avenue
         Danbury, Connecticut 6810
    ATTORNEY FOR THE PLAINTIFF

    SHIPMAN AND GOODWIN LLC
    BY:  BARRY C. HAWKINS, ESQUIRE
         1 Landmark Square, Suite 1700
         Stamford, Connecticut 06901
    ATTORNEY FOR THE DEFENDANT

    GREGORY & ADAMS PC
    BY:  MATTHEW MASON, ESQUIRE
         190 Old Ridgefield Road
         Wilton, Connecticut 06897
    ATTORNEY FOR THE DEFENDANT

                                       Geraldine Gavay
                                       Court Monitor

```
 1    T H O M A S   M E R O L A, called as a witness, was examined
 2    and testified as follows:
 3              THE CLERK:  Raise your right hand, please.  Do you
 4    solemnly swear, or solemnly and sincerely affirm, as the
 5    case may be, that the evidence you shall give concerning
 6    this case shall be the truth, the whole truth, and
 7    nothing but the truth, so help you God, or upon penalty
 8    of perjury?
 9              THE WITNESS:  Yes, I do.
10              THE CLERK:  You may be seated.  State your name and
11    address for the record and spell your last name, please.
12              THE WITNESS:  My name is Tom Merola, M-e-r-o-l-a.
13    I live at 112 Mares, that's M-a-r-e-s, Hill Road,
14    Ivoryton, Connecticut.
15              THE COURT:  Your name Tom or Thomas?
16              THE WITNESS:  I -- I usually go by Tom.
17              THE COURT:  What's your name?
18              THE WITNESS:  Thomas.
19              THE COURT:  Go ahead.
20              MR. HAWKINS:  Your Honor, counsel for the town and
21    we have stipulated that Mr. Merola is qualified as an
22    expert witness.
23              THE COURT:  I didn't hear you.
24              MR. HAWKINS:  Counsel have stipulated that Mr.
25    Merola is an expert witness.
26              THE COURT:  All right.  The record may so indicate.
27    I assume you did?
```

1  everybody in this room is probably more than enough familiar
2  with the nature of the property, could you describe for us the
3  methodology that you used and how you derived your value
4  conclusion as of the taking date?
5  A    Well, what I had done was, first I had considered the
6  highest and best use of the property. And after doing that
7  analysis I considered the three approaches to value, the cost
8  approach, income approach, and sales approach. The cost
9  approach -- this is vacant land. Cost approach is
10 inappropriate, so that was not -- not used. The income
11 approach, values, streams of income, and the property is vacant
12 land. It has no income stream, so that was deemed
13 inappropriate. And so, we'll use the sales approach.
14 Q    And in your judgment, the sales approach is the only one
15 that was appropriate to use of the three recognized techniques?
16 A    That's correct.
17 Q    Okay. And with respect to the sales approach, you said
18 that you had to determine the highest and best use. Could you
19 elaborate on what your findings were with respect to the highest
20 and best use of this property?
21 A    Sure. The highest and best use considers four factors,
22 physically possible, financially feasible, maximally profitable,
23 and legally permissible. And considering those factors, looking
24 at each one, came to the conclusion that the highest and best
25 use would be for the -- it's -- There's two zones that exist at
26 the subject property, and there's 213 acres of corporate
27 development design, and, so, my highest and best use was for

```
 1    that portion to be developed as a corporate office park in that
 2    manner; and, then, the remaining 245 acres, which is
 3    residential, to be developed as residential property.
 4         Q    And where in your report is your highest and best use
 5    conclusion of -- set forth?
 6         A    On page 24.
 7         Q    And how does the highest and best use -- the
 8    determination of what is the highest and best use of the
 9    property -- how does that relate to the comparable sales
10    evaluation process?
11         A    Well, it helps in determining which sales are
12    comparable, which variables that are relative -- relevant to the
13    subject property that you need to consider.
14         Q    Did you value the property with respect to its current
15    zoning?
16         A    Yes, I did.
17         Q    And is that the only option available to you?
18         A    Well, in this case, I determined that the current zoning
19    was the highest and best use, so, yes.
20         Q    So any other references that you have in your report as
21    to other things that could be done with the property are in
22    there for other purposes?
23         A    Correct.
24         Q    Okay.  But at the end of the day, the current zoning
25    gives you the highest and best use by which you compare the sale
26    to other properties?
27         A    That's correct.
```