EXHIBIT L

DOCKET NUMBER: CV-01-034-4176S

| | |
|---|---|
| TOWN OF RIDGEFIELD | SUPERIOR COURT OF CONNECTICUT |
| V | JUDICIAL DISTRICT OF DANBURY |
| EUREKA V LLC, ET AL | JANAURY 23, 2004 |

B E F O R E:

    THE HONORABLE HOWARD J. MORAGHAN, J.T.R.

A P P E A R A N C E S:

    JONATHAN BOWMAN, ESQUIRE
    MONTE E. FRANK, ESQUIRE
        COHEN AND WOLF, P.C.
        158 DEER HILL AVENUE
        DANBURY, CONNECTICUT 06810
        AND AT:
        1115 BROAD STREET
        BRIDGEPORT, CONNECTICUT 06604
    ATTORNEYS FOR THE PLAINTIFF

    MATTHEW C. MASON, ESQUIRE
        GREGORY AND ADAMS, P.C.
        190 OLD RIDGEFIELD ROAD
        WILTON, CONNECTICUT 06897
    ATTORNEY FOR THE DEFENDANT

    BARRY C. HAWKINS, ESQUIRE
        SHIPMAN & GOODWIN LLP
        1 LANDMARK SQUARE
        SUITE 1700
        STAMFORD, CONNECTICUT 06901
    ATTORNEY FOR THE DEFENDANT

            GLORIANNE J. DEE
            COURT MONITOR

Case 3:02-cv-00356-DJS    Document 70-9    Filed 10/27/2004    Page 2 of 8
31

1  south for economic development, is that correct?
2     A   That was my understanding, yes.
3     Q   And that Mr. Marconi was asking you to help and assist
4  in preparation of this plan because it was -- it was necessary
5  in furtherance of taking the south parcel for economic
6  development, is that right?
7     A   Yes.
8     Q   And in the course of -- strike that.
9         In furtherance of the first selectman's request, did
10 you contact Glen Shelter of Planemetrics?
11    A   Yes, I did.
12            MR. FRANK:  If I could -- I just want to make it
13         clear as to which parcel we're talking about.
14            MR. MASON:  We're talking about the south
15         parcel, Your Honor.
16            MR. FRANK:  Very well, Your Honor.
17            And then my question is -- my objection is the
18         relevance of the south parcel to this action.
19            MR. MASON:  Your Honor, the -- the south parcel
20         and the town's project plan are relevant in a host
21         of different ways and in a host of different issues.
22            As the witness just testified the town's decided
23         plan of taking the property was to take the north
24         for open space and the south for commercial
25         development.
26            In furtherance of that plan, the town engaged
27         Planemetrics to prepare a project plan.  Most in --

32

```
 1    The work in that plan was done in the months
 2    preceding the taking of the subject parcel and
 3    ultimately a plan was submitted to the town and
 4    approved within a matter of weeks after the taking
 5    of the subject parcel.
 6         The town's efforts to develop the southern
 7    parcel and development of the project plan are
 8    pertinent with respect to the town's desire for
 9    commercial development, which relates to the highest
10    and best use, and the town's willingness to support
11    that use.
12         Second, with respect to utilities, provision of
13    sewer and water and traffic and other related issues
14    to the development of the north parcel, the same
15    issues are raised with respect to development of the
16    north or the south.
17         Mr. Inglese has already testified that with
18    respect to his report and the provision of sewer and
19    water the same issues are raised whether you are
20    talking about the north, the south, or both parcels.
21         The town put together a project plan which came
22    up with a potential development of between four and
23    six hundred thousand square feet of office.  They
24    made certain conclusions with respect to the ability
25    of providing sewer and water to that site.  And we
26    intend to demonstrate, Your Honor, that the
27    conclusions that the town itself reached with
```

1   respect to a project plan for development.
2           In his role as a acquirer, a potential purchaser
3   of the south are very different than the positions
4   that it's taking with respect to what Eureka could
5   do on the north which is not an entirely separate
6   part of -- part of town. It's the adjoining
7   property raising the identical issues on sewer and
8   water.
9           So the -- the conclusions that Mr. Shelter from
10  Planemetrics reached, the research that he did, the
11  discussions he had with town officials, the
12  conclusions reflected in the town plan, all of those
13  points, Your Honor, are relevant to the issue of --
14  to the similar issues with respect to the north.
15          Basically, what they're doing in this case, Your
16  Honor, is saying we can develop six hundred thousand
17  square feet on the south -- smaller parcel more
18  difficult but we can do it.
19          You on the north, you couldn't do it. And
20  they're asking you, Judge, not to consider anything
21  that they considered in making their own
22  determination about how much they could develop on
23  the south.
24          And in connection with their decision to acquire
25  the property. They're in the shoes of a purchaser
26  of the property and it's directly relevant on all
27  those issues and others.

```
 1              MR. FRANK:  Judge, the south parcel is a
 2       different property and Connecticut property is
 3       unique.  It has unique characteristics but from a
 4       regulatory, a physical, and an environmental
 5       standpoint.
 6              The town's project plan does not consider the
 7       north parcel one iota.  It discusses a specific
 8       municipal project for a unique piece of property, a
 9       different piece of property.
10              The propriety of the project plan that the town
11       developed is a subject of a district court action
12       which Eureka brought against the municipality.
13              The issues relating to the project plan and
14       everything involved in it are going eventually going
15       to get decided by the Federal court.  I can't see
16       how a different piece of property with different
17       characteristics, different wetlands partially in a
18       different watershed is at all relevant to the
19       proceeding here.
20              Finally, Mr. Mason gave a recitation of -- of
21       some of things the project plan says.  But the
22       conclusions that were drawn in the project plan are
23       substantially different than the conclusions that
24       are reached with respect to the north parcel.
25              I -- I -- I think it's completely irrelevant and
26       I don't think it's proper for the court to consider
27       it.
```

1     MR. MASON:  Well, what Mr. Frank didn't address,
2  Your Honor, is the fact that the provision of sewer
3  and water -- those issues are identical.  They are
4  identical.
5     These parcels -- They are adjoining parcels.
6  There's a road that goes through the middle.  And
7  for the town -- at the very same time that the
8  months before they take the north parcel for open
9  space, they're looking to develop the very next --
10 the parcel that we own.  They want to buy it.  They
11 want to buy it or take it by eminent domain.  And as
12 part of their decision making process, they get a
13 planner, the planner works with engineers, he looks
14 at issues including sewer and water -- they're the
15 same issues that are at issue with respect to
16 development of the north.  It -- It's is beyond
17 comprehension to me that they can really argue that
18 it is irrelevant.
19    Irrelevant, as Your Honor knows, and the
20 Practice Book is defined as evidence having any
21 tendency to make the existence of any fact that is
22 material to the determination of the proceeding more
23 probably or less probable than it would be without
24 the evidence.
25    THE COURT:  Is that irrelevant or relevant?
26    MR. MASON:  That is what relevant evidence is.
27 And most definitely, Your Honor, if the town in

```
 1    evaluating whether it could provide sewer service to
 2    the south.  If it could develop six hundred thousand
 3    square feet of office building on the south -- the
 4    adjoining property with septic that is a fact that
 5    is relevant to your determination as to what might
 6    happen or is reasonably probable to happen on the
 7    north parts.
 8        This is the town itself.  It's not some third
 9    party.  It's the condemning municipality and people
10    that it retained and it's based on the same
11    information that would be available in the market
12    place to any person deciding what were the
13    development potential of the north parcel is.
14        They're the identical issues.
15        MR. FRANK:  I would disagree with that.
16        They're very different issues.  There are very
17    different wetlands on the property.  There are
18    different wetland systems.  The south parcel doesn't
19    have a hundred acre pristine pond.  The south parcel
20    is not entirely in the -- in a public water --
21    drinking water shed which the north parcel is.
22        There are different considerations and there are
23    also different conclusions drawn.  The project plan
24    for the south proposes septic.  It does not propose
25    sewer.
26        Finally, Your Honor, again, this goes to, I
27    assume, to highest and best use.  And the highest
```

1   and best use that all three appraisers use with
2   respect to the subject parcel is for a corporate
3   development.  There's no dispute there.
4       So, for them to now to bring in the south side
5   and say you did various things on the south side
6   even though it's completely different property and
7   somehow make it relevant well it doesn't come
8   together.
9       MR. MASON:  If Attorney Frank is willing to
10  stipulate that there would have been no difficulties
11  obtaining sewer and water for development of the
12  north parcel consistent with it's highest and best
13  use then that's fine.
14      But I don't believe that's the position the
15  town's taking.
16      MR. FRANK:  Of course, I'm not because there are
17  different issues on the north parcel.
18      THE COURT:  I've heard enough again, gentlemen,
19  sustained.
20      MR. FRANK:  Thank you, Your Honor.
21      THE COURT:  Move on.
22  Q   Mr. Inglese in the year 2001 -- Strike that.
23      THE COURT:  Withdrawn?
24      MR. MASON:  Yes, sir.
25      Pardon me.
26  Q   Mr. Inglese, may I direct your attention, please, to
27  what has been marked as Defendant's Trial Exhibit 62