UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------------x
EUREKA V LLC,
           Plaintiff,               :               Civil Action No.

             :               3 02 CV 356 (DJS)

VS.

THE TOWN OF RIDGEFIELD, THE BOARD OF
SELECTMEN OF THE TOWN OF RIDGEFIELD,
THE BOARD OF FINANCE OF THE TOWN OF
RIDGEFIELD, THE ECONOMIC DEVELOPMENT
COMMISSION OF THE TOWN OF RIDGEFIELD,
THE BENNETT'S FARM DEVELOPMENT
AUTHORITY, and BARBARA SERFILIPPI, IN
HER OFFICIAL CAPACITY AS THE TOWN
CLERK OF THE TOWN OF RIDGEFIELD,

           Defendants.               :               NOVEMBER 4, 2004
---------------------------------------------------------------------x

### PLAINTIFF'S MOTION TO AMEND JUNE 17, 2004 ORDER REGARDING FILING OF JOINT TRIAL MEMORANDUM AND TRIAL READINESS

Plaintiff Eureka V, LLC hereby moves for an order modifying the dates when the Joint Pre-Trial Memorandum is to be filed and the case is to be ready for trial to 45 and 75 days, respectively, after the United States Supreme Court issues its decision in Kelo v. New London, 268 Conn. 1, 843 A.2d 500, *cert granted*, __ S. Ct. __, 2004 WL 2069452 (2004), which decision will address core issues raised in Plaintiff's complaint and could render Plaintiff's first two counts moot. Alternatively, Plaintiff requests that the dates when the Joint Pre-Trial Memorandum is to be filed and the case is to be ready for trial be moved to January 30, 2004 and March 2004, respectively, because counsel requires additional time to complete the Joint Pre-Trial Memorandum. In support of its motion Plaintiff states as follows:

1. As the Court will recall, this case arises out of the Town of Ridgefield's efforts, following Eureka's filing of its Affordable Housing Mixed Use Master Plan for the Bennett's Farm Property, to take Eureka's property from it in bad faith, for an improper purpose and as a pretext to stop affordable housing on the property.

2. Eureka's First Amended Verified Complaint contains three counts. In Count One, Plaintiff alleges that the defendants' proposed implementation of the Preliminary Project Plan violates §§ 7-136 and 7-148 and Chapter 132 of the General Statutes, does not constitute a bona fide plan for a municipal development project, constitutes a bad faith exercise of the authority granted to municipalities by these statutes and is unreasonable and unnecessary. In Count Two, Plaintiff alleges that the intended condemnation of the parcel violates the Fifth and Fourteenth Amendments to the United States Constitution and Article First, § 11, of the Connecticut Constitution, in that it is not being carried out to serve a public use, and that the intended condemnation constitutes a bad faith, unreasonable and unnecessary exercise of the eminent domain power. In Count Three, Plaintiff alleges that the Defendants have violated the Federal Fair Housing Act, Title 42 U.S.C. § 3601 et seq.

3. In Kelo v. New London, 268 Conn. 1, 843 A.2d 500, *cert granted*, __ S. Ct. __, 2004 WL 2069452 (2004) the Court addressed numerous issues relative to a municipality's ability to take property by eminent domain for economic development purposes.

4. On September 28, 2004, the United States Supreme Court granted certiorari in Kelo and the following is identified as the question presented: "What protection does the Fifth Amendment's public use requirement provide for individuals whose property is being condemned, not to eliminate slums or blight, but for the sole purpose of 'economic development'

that will perhaps increase tax revenues and improve the local economy?" A copy of the Question Presented from the United States Supreme Court website is attached as Exhibit A hereto.

5. Ridgefield's stated purpose for seeking to take Eureka's property is for economic development that it hopes will increase tax revenues and improve the local economy.

6. If the United States Supreme Court concludes that the Fifth Amendment precludes taking of property solely for economic development, Ridgefield would have to withdraw its intended condemnation and the first two counts of Eureka's complaint, which are predicated on obtaining injunctive relief to stop implementation of Ridgefield's Preliminary Project Plan and taking of the property for purported economic development, would be moot. At that time Eureka would have to decide whether to proceed and try its Third Count, or withdraw the action. In all events, trial of the Third Count would be substantially less involved that trial of all three counts, which could easily take three to four weeks.

7. It is also possible that the Supreme Court could approve a taking for economic development, but only upon a specified showing by the condemning authority, a showing that Ridgefield may or may not be able to make and about which the parties may or may not have submitted all pertinent evidence to this Court. If the parties try the case and the Supreme Court's decision in Kelo articulates a standard not addressed during the trial, the parties and the Court face the prospect of re-trying the entire case.

8. We understand that the Supreme Court will decide Kelo by the end of this term, i.e. no later than June 30, 2005. Accordingly, Plaintiff's requests that the court enter an order modifying the dates when the parties Joint Pre-Trial Memorandum is due and when the case is to be trial ready to 45 and 75 days, respectively, after the United States Supreme Court issues its

decision in Kelo. Thus, under the worst case scenario the case should be ready for trial by late summer or early fall 2005.

9. In the alternative, Plaintiff requests that the date for filing of the parties' Joint Pre-Trial Memorandum be adjourned to January 30, 2004 and the date for when the case is to be trial ready be adjourned to March 2004 because counsel requires additional time to complete the Joint Pre-Trial Memorandum. Plaintiff's counsel had planned to devote most of October 2004 to preparation of the Joint Trial Memorandum. However, on October 6, 2004 Defendants filed (i) Defendants' Motion to Add or Supplement Affirmative Defenses, and (ii) Defendants' Motion for Summary Judgment. While both motions are entirely meritless, Plaintiff's counsel has had to devote a significant amount of time in the last three weeks to preparing opposition papers. Plaintiff has also been involved in other proceedings with Ridgefield related to obtaining payment by Ridgefield of the judgment entered against it in other litigation between the parties, which has not yet been satisfied. Plaintiff's counsel has substantial commitments in other matters over the next two weeks, as well as in November and December 2004, and it will be virtually impossible for Plaintiff to complete the Joint Pretrial Memorandum by November 12, 2004. Plaintiff's present draft of the Joint Pre-Trial Memorandum is 70 pages and involves literally hundreds of exhibits; a substantial amount of work remains to complete the Joint Pre-Trial Memorandum.

10. Based upon conversations with Defendants' counsel, the Defendants have not yet determined whether they consent or object to this motion, but will be meeting on Wednesday, November 5, 2004 to discuss it. Counsel for one or both of the parties will then inform

the Court of the Defendants' position on the Motion.

                          Plaintiff
                          Eureka V LLC

By: _/s/ Matthew C. Mason_____
Matthew C. Mason (ct 15291)
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000 (Tel.)
(203) 834-1628 (Fax)\
mmason@gregoryandadams.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this day, postage pre-paid to the following counsel of Record on November 3, 2004:

Stewart Edelstein, Esq.
Jonathan S. Bowman, Esq.
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06601-1821

Monte E. Frank, Esq.
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT 06810

_____
Matthew C. Mason

**EXHIBIT A**

**04-108    KELO, ET AL. V. NEW LONDON, CT, ET AL.**

Decision Below:    843 A.2d 500 (Conn. 2004)

QUESTION PRESENTED

What protection does the Fifth Amendment's public use requirement provide for individuals whose property is being condemned, not to eliminate slums or blight, but for the sole purpose of "economic development" that will perhaps increase tax revenues and improve the local economy?

Cert. Granted 9/28/04