UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------x
EUREKA V LLC,
          Plaintiff,                                        :         Civil Action No.

                                                            :         3 02 CV 356 (DJS)

VS.

THE TOWN OF RIDGEFIELD, ET AL. :

          Defendants.                               :         NOVEMBER 8, 2004
------------------------------------------------------------------x

## REPLY TO EUREKA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This memo is in reply to Eureka's memo opposing Defendants' October 27, 2004 Motion for Summary judgment ("Opposition Memo").[1] Defendants' motion is based on the collateral estoppel effect of a state court judgment in the action in which the court determined, *inter alia*, that the proposed development of the Bennett's Pond Property, including the South Parcel that is the subject of this federal action, is neither "reasonably probable" nor "physically possible" (the "State Court Action"). This judgment in the State Court Action is dispositive of Defendants'

---

[1] This Reply Memo does not respond to the extraneous discussion from page 2 to the top of page 10 of the Opposition Memo, which does not address any of the issues presented by this motion for summary judgment.

1

Second, Ninth, and Tenth affirmative defenses and warrants the entry of summary judgment in favor of Defendants.

This Reply Memo refutes Eureka's three arguments: 1) that the feasibility of Eureka's affordable housing Master Plan was not litigated or necessarily determined in the State Court Action (it was, as is evident from Judge Moraghan's Memorandum of Decision and the testimony and evidence in the State Court Action); 2) that Defendants have failed to establish entitlement to judgment as a matter of law (this Court has already rejected Eureka's contention that lack of feasibility is not a valid defense, and Defendants are entitled to judgment as a matter of law); and 3) that Defendants have failed to establish the affirmative defense of mootness (Defendants have established this defense).

1. **The feasibility of Eureka's affordable housing Master Plan was litigated and necessarily determined in the State Court Action.**

Despite the exhibits and testimony Eureka put into the record in the trial and the explicit factual findings in Judge Moraghan's August 26, 2004 Memorandum of Decision in the State Court Action, Eureka contends, at pages 15-19 if its Opposition Memo, that Judge Moraghan did not determine the feasibility of Eureka's Master Plan. This contention is ironic, because, in the trial of the State Court Action, *Eureka* raised the feasibility of the entirety of its affordable housing Master Plan – which includes the South Parcel that is the subject of this federal action:

- Eureka put into evidence its Master Plan as Exhibit 9. (Attached as Ex. A.)

- Eureka put into evidence its August 31, 2001 Application for Text Amendment in furtherance of its Master Plan, as Exhibit 73. (Excerpts attached as Ex. B.) [2]

- Eureka put into evidence its August 31, 2001 Application for Zone Change in furtherance of its Master Plan, as Exhibit 74. (Excerpts attached as Ex. C.)

- Eureka put into evidence the May 16, 2001 report of John Block, of Allan Davis Associates, its water and sewer engineer, "summarizing the alternative means of providing water and sewer service to the proposed Bennett's Pond development" (which includes the South Parcel), as part of Exhibits 73 and 74 (the "Block Report") (attached as Ex. D). Eureka also made the Block Report part of its applications in furtherance of its Master Plan which were Exhibits 73 and 74 in the State Court Action. (See Tabs 7 and 9 of Exhibits B and C, respectively, to this Reply Memo).

- Eureka disclosed Mr. Block as a testifying expert witness in this federal action on the same subjects he sought to testify about in the State Court Action – the feasibility of water and sewer service to the Bennett's Pond Property, including the South Parcel. See the August 27, 2004 Supplemental Expert Witness Disclosure of Eureka, with cover letter. (Attached as Ex. E.)

- Eureka's Master Plan (Ex. A), applications in furtherance of its Master Plan (Exs. B and C) and the Block Report (Ex. D) all pertain to the entire Bennett's Pond Property, including the South Parcel.

- Eureka put into evidence in the State Court Action the report of one of its two expert appraisers, Christopher Kerin, which contains a discussion of Eureka's affordable housing Master Plan, including the South Parcel, and a copy of the plan itself. (Excerpts attached as Ex. F, at pages 3-4, 15-16, and A-7.) In investigating sewer options for Eureka's proposed development, Mr. Kerin relied on the Block Report referred to above. See the transcript of the proceedings in the State Court Action on January 21, 2004 (excerpts attached as Ex. G, at page 117).

- Eureka put into evidence in the State Court Action the report of the other of its two appraisers, Thomas Merola, which contained a discussion of the Master Plan, including the

---

[2] Defendants' counsel will provided the court with complete copies of all documents submitted in excerpted form.

3

South Parcel, and the Block Report. (Excerpts attached as Ex. H, at pages 6, 8, 18, and 28.) See also Mr. Merola's testimony that he relied on the Block Report in determining whether sewer and water could be provided (excerpts attached as Ex. G, at pages 43-45).

- Eureka called as its first witness in the State Court Action William Richter, through whom it offered Exhibit 9, the Master Plan, and elicited his testimony concerning it. See Ex. G, at pages 24-27, for his direct examination and Ex. G, at pages 37-42, for his cross examination, both on this subject.[3]

- Eureka subpoenaed Oswald Inglese, Ridgefield's Director of Planning, and elicited his testimony with respect to sewer accessibility for the North Parcel and South Parcel. See the transcript of the proceedings in the State Court Action on January 22, 2004 (excerpts attached as Exhibit I, at pages 12 - 13).

Thus, the feasibility of Eureka's Master Plan was litigated.

Judge Moraghan's Memorandum of Decision ("Judgment") makes explicit that, on this record, the feasibility of Eureka's Master Plan was also necessarily determined. As discussed in more detail at pages 2-4 of Defendants' October 5, 2004 memo supporting their motion for summary judgment, Judge Moraghan, in entering the Judgment, made factual findings applicable to the South Parcel, including the following:

- "The residential development proposed by Eureka is not reasonably probable or physically possible." Judgment, at 11.

- Roseland Property Company, which Eureka retained to develop Bennett's Pond Property, wrote that the property "cannot be developed at any accessible level using septic." Id, at 9.

- The Department of Environmental Protection stated that since the primary purpose of the proposed sewer line for development of Bennett's Pond Property is to serve new

---

[3] In this transcript, "tax amendment" should be "text amendment."

development within the public water supply watershed, "it is contrary to state policy." Id, at 9.

Since the feasibility of development in accordance with Eureka's Master Plan is essential to the viability of all of Eureka's counts in this federal action, additional findings in the Judgment pertaining to the North Parcel are particularly significant:

- "Eureka's suggestion that the requisite water and septic systems could be made available to support a residential development equates to *wishful thinking*." Judgment, at 9. (Emphasis supplied.)

- "There is no evidence in this case of the possible utilization of some substitute for obtaining drinking water for the proposed residential development. The possibility of utilizing Danbury's sewer facilities is *too nebulous to seriously entertain*." Id, at 8. (Emphasis supplied.)

- "Various and sundry local and state regulations have served to convert any reasonably probable development of this subject property to a '*mere nice thought*.'" Id, at 8. (Emphasis supplied.)

Thus, in determining the valuation issue presented in the State Court Action, Judge Moraghan necessarily determined the feasibility of developing the Bennett's Pond Property – including the South Parcel.

**2.     Ridgefield has established entitlement to judgment as a matter of law.**

At pages 19 – 26 of Eureka's Opposition Memo, it contends that, even if Eureka could not build affordable housing, it is entitled to relief based on the contention that the Defendants improperly tried to stop the affordable housing that Eureka could not build. Eureka's position

5

defies logic, and is unsupported by any authority. Indeed, rather than citing any case to support that odd proposition, Eureka engages in an extended discussion of *AvalonBay v. Orange*, 256 Conn. 557 (2001), a case distinguishable from the case at bar for many reasons (none relevant to the ruling on Defendants' motion for summary judgment) and, more importantly, a case that never reached the very issue dispositive of Defendants' motion for summary judgment.

The issue presented is: Where the feasibility of Eureka's affordable housing Master Plan, applicable to the South Parcel as well as the North Parcel, was necessarily determined in the State Court Action between the same parties as the parties to this federal action, and the judge in the State Court Action found that Eureka's affordable housing Master Plan is neither "reasonably probable" nor "physically possible," can Eureka pursue its claims predicated on the assumption that it can build affordable housing in accordance with its Master Plan, despite those findings?

The answer is: no, Eureka cannot pursue its claims. See the discussion at pages 7-10 of Defendants' memo supporting summary judgment. For a case directly in point, see *Albahary, et al. v. City of Bristol*, 84 Conn. App. 329, discussed at pages 9-10 of that memo.[4]

This Court has already ruled *in this case* that lack of feasibility of Eureka's affordable housing Master Plan is a valid defense to Eureka's claims. On July 2, 2002, this Court

---

[4] Eureka attempts to distinguish *Albahary*, at page 18 of its Opposition Memo, solely on the ground that, in that case, the issue sought to be litigated in the second action had been litigated and determined in the first action. Since the feasibility of Eureka's affordable housing Master Plan was already litigated and determined in the State Court Action, *Albahary* is not distinguishable.

6

(Squatrito, J.), denied Eureka's motion to strike Defendants' Seventh Affirmative Defense. Eureka's motion was based on its contention, which this Court rejected, that "the Seventh Affirmative Defense is not a legitimate defense to plaintiff's action . . . since the Plaintiff's intent and *the actual development potential* of the property is irrelevant." (Emphasis supplied.) (Eureka's Motion to Strike the Defendants' Seventh Affirmative Defense dated April 24, 2002, at 2.) See also Eureka's memo supporting that motion, in which it contended unsuccessfully: "The Plaintiff's plans and *whether the Plaintiff could ultimately obtain approvals for such plans is simply irrelevant.*" (Emphasis supplied.) (Plaintiff's April 24, 2004 supporting memo, at page 5.) In addition, on August 1, 2002, this Court allowed Defendants to amend their Seventh Affirmative Defense by making explicit their defense that Eureka's Master Plan is not feasible.

Furthermore, where, as in this case, a plaintiff seeks injunctive relief and money damages to stop a condemnation based on the claim that the condemnation is pretextual to stop affordable housing, and the affordable housing that the plaintiff seeks to build is not reasonably probable or physically possible, summary judgment should enter.

As for injunctive relief, Eureka cannot show any irreparable harm, since, as Judge Morgahan has already ruled, it cannot build affordable housing as proposed in its Master Plan. Irreparable harm is a necessary element to obtain injunctive relief. *Charter Communications Entertain. I, LLC v. Shaw*, 163 F. Supp. 2d 121, 126 (D. Conn. 2001). In *Charter*

*Communications*, the plaintiff cable company sought to enjoin the defendant former customer from using a computer chip to access television channels he had not paid for. The court denied the application for permanent injunction, finding that irreparable harm was not shown because the former customer had returned the chip to the plaintiff. Likewise, in the case at bar, the very basis for Eureka to seek injunctive relief – construction of affordable housing – is not feasible, as Judge Moraghan already ruled, and Eureka has no application pending for the construction of affordable housing.

As for both injunctive relief and Eureka's claims for damages, see the discussion of mootness, below.

3.  **Ridgefield has established mootness.**

In its Opposition Memo, Eureka makes two admissions establishing mootness. First, it admits, at page 6, that nearly 80% of the affordable housing that Eureka planned to build according to the Master Plan is on the North Parcel – which parcel the Town of Ridgefield condemned without any objection from Eureka.[5] This alone renders Eureka's Master Plan moot. Eureka necessarily admits mootness: "Such taking [of the North Parcel] *gutted its application and effectively rendered its application moot.*" Eureka's Opposition Memo, at 27.

---

[5] The calculation is as follows: Eureka admits that its Master Plan provides for 710 residential units, of which 560 are to be constructed in the North Parcel and 150 in the South Parcel; 150 is less than 22% of 710, and thus Eureka's Master Plan provides for nearly 80% of residential units in the North Parcel, none of which can be built. See Eureka's Opposition Memo, at 6.

To avoid this obvious mootness, Eureka contends that it has not abandoned some possible future plans for affordable housing on the South Parcel. No one knows what those possible plans might be. This argument is pure speculation. A party cannot pursue litigation based on hypothetical facts, or possible future conduct. There must be an actual case or controversy. "Article III, Section 2 of the United States Constitution limits federal court jurisdiction to actual cases and controversies. '[W]hen the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,' the case is moot." *Jefferson v. Abrams*, 747 F. 2d 94, 96 (2d Cir. 1984), citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*). In *Jefferson*, the court dismissed an injunction action as moot because "[t]here is presently no case or controversy." *Id*, at 97. See also *Olin Corporation v. Consolidated Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993): "Article III of the Constitution limits the jurisdiction of the federal courts to actual cases and controversies, as distinguished from 'advisory opinions.'" *Id*, at 17, citing *F.X. Maltz, Ltd. v. Morgenthau*, 556 F.2d 123 (2d Cir. 1977).

Since Eureka has abandoned its Master Plan, and the State Court has already determined that Eureka's Master Plan is not feasible as to *any* of the Bennett's Pond Property, this action is moot.

THE DEFENDANTS,

By: _____
Stewart I. Edelstein, Esq. (ct06021)
Jonathan S. Bowman, Esq. (ct08526)
Monte E. Frank, Esq. (ct13666)
Cohen and Wolf, P. C.
1115 Broad Street
Bridgeport, CT 06604
Tel: 203/368-0211
Fax: 203/576-8504
Sedelstein@cohenandwolf.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed by first class, postage prepaid mail on the 8th day of November, 2004.

Matthew C. Mason, Esq.
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT  06897
Tel:  203/762-9000
Fax: 203/834-1628

*[signature]*
Stewart I. Edelstein