UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUREKA V LLC : | CIVIL CASE NO: |
| : | |
| Plaintiff, : | 3 02 CV 356 (DJS) |
| : | |
| VS. : | |
| : | |
| THE TOWN OF RIDGEFIELD, THE : | |
| BOARD OF SELECTMEN OF THE TOWN : | |
| OF RIDGEFIELD, THE BOARD OF : | |
| FINANCE OF THE TOWN OF RIDGEFIELD : | |
| THE ECONOMIC DEVELOPMENT : | |
| COMMISSION OF THE TOWN OF : | |
| RIDGEFIELD, THE BENNETT'S FARM : | |
| DEVELOPMENT AUTHORITY, and : | |
| BARBARA SERFILIPPI, IN HER OFFICIAL : | |
| CAPACITY AS THE TOWN CLERK OF THE : | |
| TOWN OF RIDGEFIELD : | |
| : | |
| Defendants. : | MARCH 28, 2005 |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO
SUPPLEMENT OR AMEND FIRST AMENDED VERIFIED COMPLAINT**

**I.   PRELIMINARY STATEMENT**

Defendants hereby object to Plaintiff's Motion to Supplement or Amend First Amended Verified Complaint dated March 8, 2005 ("Plaintiff's Motion"). Plaintiff's Motion should be denied because: 1) it is premature; 2) the subsequent events alleged in Plaintiff's Second Amended Verified Complaint are distinct and unrelated to Plaintiff's First Amended Verified Complaint; 3) Plaintiff's Motion is otherwise untimely; and 4) Defendants will suffer undue prejudice if Plaintiff's Motion is granted. Moreover, from a practical

standpoint, if this Court were to allow Eureka's March 2005 application to Ridgefield's Planning and Zoning Commission (the "P & Z") to become a part of this case, it would necessitate expert review of the application, new expert disclosures, the re-opening of discovery and significant delay in the trial of this case.

## II. STATEMENT OF FACTS

Plaintiff Eureka V LLC ("Eureka") commenced this action by summons and complaint filed on February 28. Eureka filed its First Amended Verified Complaint in July 2002 and it is currently the operative complaint in this action.

The allegations in the First Amended Verified Complaint focus on Plaintiff's claim that Defendant Town of Ridgefield (the "Town") acted in bad faith by attempting to exercise eminent domain over Eureka's property, for the alleged purpose of preventing Eureka from pursuing its claimed affordable housing plan filed in August 2001.

On August 31, 2001, Eureka filed with the P & Z an application for a zone change, an application for a text amendment, and an application to amend the Town Plan of Conservation and Development (the "First Application"). As part of the First Application, Eureka proposed a conceptual plan for 700 residential units, of which 210 would constitute affordable housing. Eureka did not submit a site plan application. According to this plan, Eureka sought to develop the property north of Bennett's Farm Road (the "North Parcel") with the majority of the affordable housing units. The Town acquired the North Parcel (458 acres) by eminent domain without challenge from Eureka. The plan set forth in the First

Application further called for a total of 150 residential units on the property south of Bennett's Farm Road (the "South Parcel"), of which 45 were to be affordable housing units. Eureka withdrew the First Application after commencing this lawsuit and after the Town had acquired the North Parcel by eminent domain.[1]

Defendants filed their Answer and Affirmative Defenses to the First Amended Verified Complaint on December 20, 2002. All of Defendants' affirmative defenses respond to the allegations in the First Amended Verified Complaint regarding the First Application and the plan set forth in the First Application. These affirmative defenses include Defendants' assertion that this plan is not feasible.

On or about October 5, 2004, Defendants filed a Motion to Amend or Supplement Affirmative Defenses to add a ninth affirmative defense. This request was based on the Connecticut Superior Court's finding in Eureka's appeal of the value of the North Parcel, that the conceptual residential development proposed by Eureka in the First Application is "not

---

[1] By referendum, with a mandate of 3,102 to 1,379, citizens of the Town voted to acquire the North Parcel for open space, recreation and other municipal purposes and the South Parcel for corporate, municipal and/or purposes set forth in sections 8-187 or 32-222 of the Connecticut General Statutes (the "Referendum"). The Referendum authorized the preparation of a development plan for the South Parcel. The entire South Parcel is in the Town's Corporate Development District (CDD) zone and has been for many years, long before Eureka acquired it. This zoning designation allows for the development of low intensity office campus facilities to support research, development and administrative features.

3

reasonably probable or physically possible."[2] This Court granted Defendants' Motion to Amend or Supplement Affirmative Defenses on January 7, 2005. Defendants also filed a Motion for Summary Judgment based on the Superior Court's finding with respect to the First Application. That motion is pending before this Court.

The discovery deadline in this action, including all discovery related to experts and expert reports, was on September 30, 2002. Both parties have disclosed several experts, most of whom are expected to testify about various aspects of the First Application. The depositions of all of these experts were completed long ago.

This case was ready to proceed to trial at the end of 2004 and was effectively stayed, pending a decision by the U.S. Supreme Court in Kelo v. City of New London, 268 Conn. 1, cert. granted, 125 S.Ct. 27 (2004), except for this Court's ruling on Defendants' Motion for Summary Judgment. Kelo was argued before the Supreme Court on February 22, 2005 and the parties are awaiting a decision.

Plaintiff's Motion now seeks permission to file a Second Amended Verified Complaint for the purpose of alleging events that took place on March 7, 2005. Specifically, Eureka seeks to allege that it filed a new application with the P & Z on that date for a zone

---

[2] Pursuant to the Referendum, on December 20, 2001, the Town acquired the North Parcel by eminent domain. In connection with the taking, the Town deposited $8,500,000 with the Superior Court for the Judicial District of Danbury. This amount represents $500,000 more than Eureka paid IBM for the entire Bennett's Pond Property. Eureka challenged the value of the North Parcel, claiming that it alone was worth over $21,000,000. After a trial, the Court (Moraghan, J.) found the value of the North Parcel to be $11,500,000 (the "State Court Judment"). Neither the Town nor Eureka appealed the State Court Judgment.

change, a text amendment, and an amendment to the Town Plan of Conservation and Development, as part of a new development plan proposing "510 residential units on the South Parcel that would constitute affordable housing" (the "Second Application").

The Second Application encompasses an entirely new proposal. This proposal includes new reports and maps, and is based on information which developed years after Eureka filed this action. For example, the sewer letter Eureka cites as relevant is dated July 1, 2004, a date that is more than two years after the date this case was commenced. The proposal in the Second Application is also conceptual in nature and dependent on various factors which may or may not come into play. For example, the Master Plan map contains the following note: "The development depicted on this plan is a conceptual development plan only and may be changed as a result of regulatory review. The concept plan is conditioned upon an agreement being reached between the Town of Ridgefield and Eureka V LLC and the plan will require various municipal state and federal approvals."

As of this date, the Second Application has not even been the subject of any public hearings. Obviously, the P & Z has not issued any decisions with respect to the Second Application. In fact, the Town has taken no action with respect to the Second Application.

### III. ARGUMENT

#### A. Plaintiff's Motion Should Be Denied Because the P & Z Has Not Ruled On the Second Application, Plaintiff Is Required to Exhaust Its Administrative Remedies, and Plaintiff's Motion Is Premature.

Any judicial resolution based on the Second Application is premature because it is pending before the P & Z, which has not yet ruled on the Second Application. "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." Simko v. Ervin, 234 Conn. 498, 503 (1995) (citation and internal quotation marks omitted). The purpose behind the exhaustion doctrine is to give local boards the first opportunity to handle administrative matters so that the reviewing court will have the benefit of the local board's judgment. The exhaustion requirement also "relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." Owner-Operators Independent Drivers Assn. Of America v. State, 209 Conn. 679, 692 (1989). Accordingly, if the P & Z is given the opportunity to review the Second Application and a decision favorable to Eureka is reached, there would be no need for Eureka to seek judicial review. If the P & Z reaches a decision unfavorable to Eureka, it would have a statutory right to file a timely appeal of that decision to the Superior Court and obtain appropriate relief. Conn. Gen. Stat. Section 8-8(b).

If this Court grants Plaintiff's Motion, Eureka would be allowed to circumvent both the requirement that it exhaust its administrative remedies, and the statutory appeal process

set forth in Section 8-8(b). This would set a dangerous precedent. Zoning applicants would be encouraged to file federal suits against local authorities, "thereby converting federal courts into super zoning boards." Williams v. City of Columbia, 906 F.2d 994, 996 (4th Cir. 1990). It is not the function of any federal court to act in such a capacity. Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir.), cert. denied, 474 U.S. 845 (1985).

For these reasons, Plaintiff's Motion should be denied.

### B. Plaintiff's Motion Should Be Denied Because the Subsequent Events Alleged in Plaintiff's Second Amended Verified Complaint Are Distinct and Unrelated to the First Amended Verified Complaint, Plaintiff's Motion is Otherwise Untimely, and Defendants Will Suffer Undue Prejudice if Plaintiff's Motion is Granted.

Fed. R. Civ. P. 15(a) addresses amendments to pleadings. Leave to amend under Rule 15(a) generally is freely granted; however, the district court has the discretion to deny leave "if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metropolitan Life Insurance Co., 310 F.3d 84, 101 (2d Cir. 2002) (citations omitted) (court denied Rule 15(a) motion where it was filed over four years after original complaint had been filed, discovery deadline had passed, and court had ruled on motion for summary judgment). Indeed, "the trial court [is] required to take into account any prejudice that might result to the party opposing the amendment." Ansam Associates, Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (citation and internal quotation marks omitted) (court denied Rule 15(a) motion where it was filed after

7

discovery deadline had passed and motion for summary judgment had been filed but not yet ruled on by the court).

Fed. R. Civ. P. 15(d) specifically addresses supplemental pleadings that set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Similar to Rule 15(a) motions, motions to supplement under Rule 15(d) should be freely granted, unless there has been "undue delay, bad faith, dilatory tactics, [or] undue prejudice to the party to be served with the proposed pleading." Sidari v. Orleans County, 169 F.Supp.2d 158, 162 (W.D.N.Y. 2000), citing Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) (internal quotation marks omitted).

Factors to consider in determining whether a supplemental pleading prejudices the opposing party are whether: 1) the opponent is required to expend significant additional resources to conduct discovery and prepare for trial; 2) the resolution of the dispute will be delayed significantly; and 3) the plaintiff will be prevented from bringing a timely action in another jurisdiction. Sidari v. Orleans County, 169 F.Supp.2d at 162-63. For example, in Sidari, the Court found prejudice to the opposing party and denied a Rule 15(d) motion, where it was filed three years after the action had been commenced and after significant discovery had taken place. Id. at 163.

Finally, the court must consider whether the proposed supplemental facts are logically connected to the original pleading. If they are not, then the Rule 15(d) motion will be denied. Albrecht v. Long Island Railroad, 134 F.R.D. 40, 41 (E.D.N.Y. 1991) (court denied Rule

8

15(d) motion where subsequent facts alleged were distinct and unrelated to original complaint).

Plaintiff's Second Amended Verified Complaint is in the nature of a supplemental pleading because it alleges occurrences that took place long after this action was commenced. Therefore, Plaintiff's motion is governed by Rule 15(d) rather than Rule 15(a). At first blush, it may seem that the occurrences alleged in the Second Amended Verified Complaint are related to the First Amended Verified Complaint, because the plans set forth in the First Application and the Second Application allegedly are affordable housing plans. In fact, however, the two plans are totally different from one another. They involve different pieces of property, in part, since the original plan proposed development on the North and South Parcels and the new plan proposes development just on the South Parcel, the only parcel still owned by Plaintiff. The new plan also increases the development of total residential units on the South Parcel by 340% and affordable housing units by more than 1,000%, huge numbers by any standard. The new plan further relies on new reports and opinions. All of the reports contained in the new plan bear a 2005 date. Consequently, the new plan is distinct and unrelated to the First Amended Verified Complaint. For this reason alone, Plaintiff's Motion should be denied.

Even if the new plan was related to the First Amended Verified Complaint, the

P & Z had ruled on the Second Application and Plaintiff had exhausted its administrative remedies, Plaintiff's Motion still should be denied, because it is otherwise untimely and will cause undue prejudice to Defendants if granted.[3]

Plaintiff's Motion is untimely because it seeks to amend or supplement its pleading over three years after commencing this action, almost two and a half years after the discovery deadline has passed, and after Defendants have filed a motion for summary judgment based on previously filed pleadings and conclusive findings of the Superior Court with respect to Eureka's original plan. Discovery that has been conducted, including discovery related to experts, was based on the First Application and the original plan, a project proposal completely different from the new plan. If Plaintiff's Motion is granted, Defendants will suffer undue prejudice either because they will be foreclosed from conducting discovery related to the new plan, or they will be forced to commit significant additional resources to conduct such discovery. This discovery would entail re-deposing experts and other witnesses that were deposed in connection with the original plan, and deposing "project professionals" and other witnesses in connection with the new plan. The Town also would need to employ their experts to evaluate the new plan and may need to employ additional experts. The Town and these experts would need to prepare for trial based on new facts. There also may be a

---

[3] Because issues of timeliness and prejudice are factors to be considered for both Rule 15(a) and Rule 15(d) motions, for purposes of this analysis, it makes no difference whether this Court views Plaintiff's Motion as a motion to amend or a motion to supplement.

need for additional witnesses depending on what is learned during discovery, and further analysis of the new plan. All of this would be a substantial undertaking that would cause a long delay in the trial of this case, and result in significant expense.

In sum, the supplement or amendment to its pleading that Plaintiff seeks turns this case into a new case with completely different facts at a time when Defendants are ready to proceed to trial. Eureka's claim in this case is that the Town pursued its Project Plan to acquire the South Parcel in order to thwart its alleged affordable housing plan, which at all relevant times consisted of the original plan set forth in the First Application. Now, three years later, Eureka has a new plan that has not even been considered by the P & Z, or by the Superior Court. This new plan has never been a part of this case, and should not be part of the case now. Plaintiff should not be permitted to make this change at such a late juncture.

Accordingly, Plaintiff's Motion should be denied.

THE DEFENDANTS

By: _____
Stewart I. Edelstein, Esq. (ct06021)
Jonathan S. Bowman, Esq. (ct08526)
Monte E. Frank, Esq. (ct13666)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel: 203-368-0211
Fax: 203-576-8504
Sedelstein@cohenandwolf.com
jbowman@cohenandwolf.com
mfrank@cohenandwolf.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed by U.S. first class, postage prepaid mail on the date hereof to:

Matthew C. Mason, Esq.
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT  06897
Tel: 203-762-9000
Fax: 203-834-1628

_____
Stewart I. Edelstein