UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 APR -8  P 4:01

------------------------------------------------------------x
EUREKA V LLC,
                Plaintiff,

                                  Civil Action No.   DISTRICT COURT
                                                 HARTFORD CT
                                  3 02 CV 356 (DJS)

VS.

THE TOWN OF RIDGEFIELD, THE BOARD OF
SELECTMEN OF THE TOWN OF RIDGEFIELD,
THE BOARD OF FINANCE OF THE TOWN OF
RIDGEFIELD, THE ECONOMIC DEVELOPMENT
COMMISSION OF THE TOWN OF RIDGEFIELD,
THE BENNETT'S FARM DEVELOPMENT
AUTHORITY, and BARBARA SERFILIPPI, IN
HER OFFICIAL CAPACITY AS THE TOWN
CLERK OF THE TOWN OF RIDGEFIELD,

                Defendants.                              APRIL 8, 2005
------------------------------------------------------------x

**PLAINTIFF EUREKA V LLC'S MEMORANDUM IN REPLY TO
DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO SUPPLEMENT OR
AMEND FIRST AMENDED VERIFIED COMPLAINT**

Plaintiff Eureka V LLC ("Eureka") submits this memorandum in reply to Defendants' Objection To Plaintiff's Motion To Supplement Or Amend First Amended Verified Complaint, dated March 28, 2005 ("Defs.' Br."). As set forth below, the four arguments Defendants assert in opposition to Plaintiff's Motion to Supplement or Amend First Amended Verified Complaint ("Motion") lack merit.

First, the proposed amendment is not premature and does not implicate the doctrine of exhaustion of administrative remedies. Eureka has no administrative remedies to Defendants' wrongful taking, and there is nothing about Eureka's claims, the proposed amendment or the new application that requires this Court to usurp any functions of the Ridgefield Planning & Zoning Commission ("P & Z"). (Defs.' Br. at 1, 6-7.) Second, the

claim that the new application is "distinct and unrelated to the Plaintiff's First Amended Verified Complaint" is flatly untrue. (*Id.* at 1, 9-10.) The Complaint asserts claims of misuse of eminent domain power to stop Eureka's plans for affordable housing; the new application pertains to the same property that is the subject of this action; and the new application is for affordable housing. The proposed amendment undeniably "bears some relationship to the subject of the original pleading." Third, the Motion is not untimely, as it was made *one day* after filing of the new application. (*Id.* at 10-11.) Fourth, Defendants' claims of prejudice are factually and legally unsupported. (*Id.*)

## FACTS

Defendants continue their practice of mischaracterizing Eureka's claim by describing it as follows: "[the Town] acted in bad faith by attempting to exercise eminent domain over Eureka's property, for the alleged purpose of preventing Eureka from pursuing its claimed *affordable housing plan filed in August 2001.*" (*Id.* at 2) (emphasis added). Eureka has never claimed that the proposed taking was intended solely to halt its plan filed in August 2001. Rather, Eureka alleges that once it disclosed its plans to pursue affordable housing on the site *in January 2001* the Defendants began efforts to take the property to stop *any* affordable housing on the property. This is clear from the allegations of the First Amended Complaint ("Complaint"), including the following:

> 20. On January 24, 2001, as part of the Planning and Zoning Commission's pre-application process for a proposed 10 lot subdivision on a portion of the North Parcel . . . Eureka filed with the Commission's staff an "Affordable Housing Mixed Use Master Plan of Development" ("Master Plan"), which showed Eureka's plans for development of the entire Bennett's Farm Property. . . .

> 26. Soon after Eureka filed its Master Plan in late January 2001 showing a substantial affordable housing component, the Selectmen began actively to pursue acquisition of the Bennett's Farm Property by eminent domain.

2

28.     The Selectmen's overriding objective in pursuing eminent domain was to take control of the property and ensure that there would be no residential development -- and in particular, no affordable housing on the property.

Defendants' knowledge of Eureka's intent to build affordable housing is what is relevant, not the precise number of units Eureka planned to or could in fact build. Even if Eureka had never filed an application for affordable housing before Defendants voted to take its property, its claims of misuse of eminent domain powers and violation of the Federal Fair Housing Act ("FFHA") would be valid since Defendants' goal was to stop *all* affordable housing on the site, not just the development plan shown in the August 2001 application. Whether Eureka could build 510, 150 or some other number of units on the South Parcel is immaterial where the taking is intended to stop any and all affordable housing on the property.

## ARGUMENT

### I.      EUREKA'S MOTION SHOULD BE GRANTED PURSUANT TO FED. R. CIV. P. 15(d) AS IT IS TIMELY AND DEFENDANTS WILL NOT SUFFER ANY UNDUE PREJUDICE.

Defendants pay lip service to the standard for amendment or supplement of a pleading. (Defs.' Br. at 7-9.) Fed. R. Civ. P. 15(a) provides that "a party may amend the party's pleading . . . by leave of court . . . and leave *shall be freely given* when justice so requires." (Emphasis added). The same standard applies to motions to amend under Rule 15(a) and motions to supplement under Rule 15(d). *PrimeTime 24 Jt. Venture v. DirecTV, Inc.*, No. 99-3307, 2000 WL 426396, at *4 n.10 (S.D.N.Y. Apr. 20, 2000); Defs.' Br. at 8.

It is the nonmovant's burden to show that the amendment should not be allowed. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). While "[t]he determination to grant or deny a motion to amend a complaint is within the discretion of the court . . . there

3

must be good reason to deny such a motion." *Marathon Ashland Petroleum, LLC v. Equili Co., L.P.*, No. 00-2935, 2002 WL 662900, at *4 (S.D.N.Y. Apr. 23, 2002). "[A]s a general matter, amendments are favored in order to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99 (1957). "The goal of Rule 15(d) is to establish a 'liberal policy favoring a merit-based resolution of the entire controversy between the parties.'" *Eison v. Kallstrom*, 75 F. Supp. 2d 113, 116 (S.D.N.Y.1999)(citation omitted). *See also U.S. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (reversing lower court's denial of motion to amend; "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (reversing lower court's denial of motion to amend where defendant would not be severely prejudiced.).

Defendants first argue that the "proposed supplemental facts are [not] logically connected to the original pleading," baldly asserting that since the proposed amendment relates to a new plan containing more affordable housing units on the South Parcel than the prior plan, it is "distinct and unrelated to the [Complaint]." (Defs.' Br. at 8 - 9).[1] Eureka's claim, however, is that Ridgefield has sought to take the property to stop any affordable housing on the site. *See supra* pp. 2-3. The Complaint references the complete application history of the property during Eureka's ownership, including its August 2001 application and withdrawal of the same after the Town took the North Parcel, which effectively gutted that

---

[1] While the new plan calls for 510 dwelling units on the South Parcel, the Defendants ignore the fact that the August 2001 application, the feasibility of which the Defendants seek to challenge in this action, contemplated 710 units on the entire Bennett's Farm Property (150 of which would be on the South Parcel, plus 445,000 square feet of office development). Thus, Defendants assertion that the increase in the number of dwelling units on the South Parcel makes this a vastly different plan requiring significant discovery and analysis (Def. Br. at 9) is not correct.

4

application.[2] (Complaint ¶¶ 18-25.) The proposed amendment is proper as it simply updates Eureka's earlier pleading. CHARLES A. WRIGHT, ET AL., 6A FED. PRAC. & PROC. CIV. 2D §1504 at 177 (West 1990) (supplemental pleading may be employed for a variety of purposes, including to "set forth new facts in order to update the earlier pleading.").

Moreover, Rule 15(d) by its express terms applies to events that have occurred since the date of the filing of the pleading. The "allegations in the supplemental pleading do not need to arise out of the same transaction or occurrence as the original; they need only bear some relationship to the subject of the original pleading." *Eison v. Kallstrom*, 75 F. Supp. 2d 113, 116 (S.D.N.Y. 1999) (quotation marks omitted). *See* 3 JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 15.30 at 15-108 (3d ed.1998); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (reversing district court's denial of motion to amend where additional facts connect supplemental pleading to original pleading.). The subject of the original complaint is Defendants' wrongful efforts to stop affordable housing. The new application is for affordable housing on Eureka's property, which undeniably "bear[s] some relationship to the subject of the original pleading."

*Albrecht v Long Island R.R.*, 134 F.R.D. 40 (E.D.N.Y. 1991), a personal injury action, is readily distinguishable. (Defs.' Br. at 8-9.) There the plaintiff moved to add a new claim based on an entirely different set of facts, i.e., a separate accident at another of the defendant's rail stations. The motion to supplement was denied since it was "clear that the two accidents are distinct and unrelated" and "the incidents are more appropriately treated as

---

[2] In the Complaint, Eureka states: "This application is pending, but will be re-filed so that the application and supporting documents can be amended to reflect the changed circumstances resulting from acquisition of the North Parcel by the Town of Ridgefield by eminent domain." (Complaint ¶ 24.) The new application is such an application.

5

two separate actions." *Id.* at 41. Eureka's new application is not a new action -- it directly relates to its original claim.

Defendants next make the erroneous assertion that Plaintiff's motion is untimely. (Defs.' Br. at 10.) First, the Motion to Amend was filed one day after the new application was filed, hardly undue delay. *See e.g., Phillips v. Kidder, Peabody & Co.*, No. 89-4936, 1994 WL 570072, at *4 (S.D.N.Y. Oct. 13, 1994) (granting leave to amend where motion was filed seven years after commencement of action and three months after discovery of the information.).

Second, with respect to the period between the filing of the Complaint and the proposed amendment, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block*, 988 F.2d at 350 (citation omitted); *State Teachers Ret. Bd. v. Fluor, Corp.*, 654 F.2d 843, 856 (2d Cir. 1980). Courts have regularly allowed supplementation of the complaint three, four or more years after filing of the original complaint. *See, e.g., Fluor Corp.*, 654 F.2d at 845-46 (three years between filing of class action complaint and motion to amend); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (four year interval); *Phillips*, 1994 WL 570072, at *4 (seven year period) (citing cases). There is no allegation of bad faith, and Defendants' have made no showing of undue prejudice. *See infra* at 7-8.

Defendants' reliance on *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84 (2d Cir. 2002) is misplaced. (Defs.' Br. at 7.) In *Jin*, plaintiff's motion to amend was filed almost four months after the entry of summary judgment and sought to inject completely new claims based upon entirely different statutes. *Id.* at 101.

Defendants' claim of prejudice is articulated as follows: "If Plaintiff's Motion is granted, Defendants will suffer undue prejudice either because they will be foreclosed from conducting discovery related to the new plan, or they will be forced to commit significant additional resources to conduct such discovery." (Defs.' Br. at 10.) First, the need to take discovery on the new plan, even if true, is an insufficient basis, standing alone, for denial of the motion. *U.S. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (claim that it would take several months to analyze all discovery material by itself constitutes insufficient prejudice to deny motion to amend, particularly where trial has not yet commenced and was not likely to do so for some time). Any need for additional discovery is easily remedied by the court permitting discovery on the new application.

Second, the claim that additional discovery will be costly (Defs.' Br. at 11) is not only unsupported but is not a basis for denial of the Motion. Particularly when considered in the context of this litigation, discrete supplemental discovery related to this new application will be minor. In all events, "allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'" *Marathon Ashland Petroleum, LLC*, 2002 WL 662900, at *6. See *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d at 1255; *S.S. Silberblatt, Inc.*, 608 F.2d at 42.

Third, the claim that this additional discovery would cause a "long delay in the trial of this case" (Defs.' Br. at 11) is disingenuous in the extreme. No trial date has been set, and filing of the Pre-Trial Order is awaiting the Court's ruling on the Defendants' motion for

summary judgment and the Supreme Court's ruling in *Kelo v. City of New London*, 268 Conn. 1, *cert. granted* 125 S.Ct. 27 (2004). Moreover, the parties previously completed document production from multiple parties and non-parties in a very short period of time, and conducted some 20 depositions in a four-month period. The parties should have no difficulty completing additional discovery, if any is necessary, within 60 or 90 days. The proposed amendment will not materially impact the filing of the Pre-Trial Memorandum or significantly delay the trial, if at all.

*Sidari v. Orleans County*, 169 F. Supp. 2d 158 (W.D.N.Y. 2000) and *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985) are inapposite. (Defs.' Br. at 7-8.) In *Sidari*, the court denied plaintiff's motion where the proposed "supplemental complaint" sought to add five new parties to the action and to add "completely new claims and legal theories." *Sidari*, 169 F. Supp. 2d at 163. In *Ansam Assocs., Inc.*, the court affirmed the district judge's denial of Ansam's motion to amend which sought (i) to add new claims, (ii) concerning different periods of time, and (iii) based upon a different statute. *Ansam Assocs., Inc.*, 760 F.2d at 446. In those rare instances where motions to amend or supplement are denied, the movant, unlike here, sought to add new parties and new claims and theories many years after the original action was brought to the prejudice of the defendant. The notion that allowance of the amendment would "turn this case into a new case" (Defs.' Br. at 11) has not been established for the simple reason it is not true.

## II.  EUREKA'S MOTION DOES NOT IMPLICATE THE DOCTRINE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Defendants make the remarkable claim that before Eureka's complaint can even include a factual allegation regarding its newly filed affordable housing application, Eureka must "exhaust its administrative remedies" and that "[a]ny judicial resolution based on the

Second Application is premature because it is pending before P & Z, which has not yet ruled on the Second Application." (Defs.' Br. at 6-7.) Defendants argue that if P & Z approves the new application, "there would be no need for Eureka to seek judicial review" and if the application is denied Eureka can appeal. (Defs.' Br. at 6.) This argument stands the law on its head, shifts the burden of proof and defies logic.

Not surprisingly, Defendants have not cited a single case in support of this argument in the context of misuse of eminent domain powers or violation of the FFHA. The obvious reality is that Eureka has absolutely no administrative remedies relative to its claims that Defendants' intended taking is to stop affordable housing. As the Court well knows, it is not Eureka's burden to prove that any application it filed (or even contemplated) is "feasible" or otherwise would be approved by P & Z. Indeed, the precise number of units that could be built on the site is irrelevant to a claim that the taking is intended to stop **any** affordable housing on the property. Ridgefield has failed to demonstrate why any "judicial review" of the new application is required by this Court; how the doctrine of administrative remedies is implicated by the proposed amendment; or why P & Z must rule on the application before it may be part of Eureka's complaint against the Defendants for wrongful taking to stop precisely the type of development contemplated by the new plan. Defendants' citation to cases regarding exhaustion of administrative remedies misses the mark. (Defs.' Br. at 6-7.) Those cases are irrelevant since Eureka is not asking this Court to decide whether the new application would be approved by P & Z, and Defendants' suggestion to the contrary is unfounded and entirely without support.

### III. THE PROPOSED AMENDMENT SHOULD BE ALLOWED IN LIGHT OF DEFENDANTS' NEW TENTH AFFIRMATIVE DEFENSE ALLEGING THAT EUREKA'S PLAN IS NOT FEASIBLE.

In their Statement of Facts, Defendants state that "[o]n or about October 5, 2004, Defendants filed a Motion to Amend or Supplement Affirmative Defenses to add a ninth affirmative defense." (Defs.' Br. at 3.) Incredibly, in an apparent effort to mislead the Court, the Defendants omit any reference to their Tenth Affirmative Defense, which was part of the same motion (granted on January 7, 2005) and provides as follows: "The plan of Eureka, which includes affordable housing, is not feasible. Therefore, Eureka is precluded from obtaining any relief in this action." Thus, while Eureka believes the issue of the feasibility of any plan for affordable housing on the site is irrelevant, Defendants have put it directly at issue in their new Tenth Affirmative Defense.[3] While the new plan was filed independent of this action, Eureka is certainly entitled to rebut this defense and the new application does just that. It ill behooves the Defendants to now complain about an allegation concerning a new application, when the allegation pertains to an issue the Defendants made part of the case by adding their Tenth Affirmative Defense just two months before the application was filed.

THE PLAINTIFF, EUREKA V LLC

By _Matthew C. Mason_
Matthew C. Mason (ct 15291)
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000 (Tel.)
(203) 834-1628 (Fax)
mmason@gregoryandadams.com

---

[3] Ridgefield had previously raised the issue of feasibility in the context of an alleged unclean hands defense (Seventh Affirmative Defense), a very different context and legal defense than its Tenth Affirmative Defense which flatly asserts that Eureka's development plans are not feasible.

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid this 8th day of April, 2005, to:

Stewart I. Edelstein, Esq.
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06601-1821

Monte E. Frank, Esq.
Cohen and Wolf, P.C.
158 Deer Hill Avenue
Danbury, CT 06810

_____
Matthew C. Mason