# Connecticut Trial Court Official Decisions

JORDAN v. OLD SAYBROOK ZONING COMM., No. CV01 0508891-S (Oct. 31, 2003)

JORDAN PROPERTIES, LLC ET AL. v. OLD SAYBROOK ZONING COMMISSION.

*2003 Ct. Sup. 11935*

No. CV01 0508891-S

Connecticut Superior Court, Judicial District of New Britain

at New Britain

October 31, 2003

[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]

*MEMORANDUM OF DECISION*

TANZER, JUDGE.

The plaintiffs, Jordan Properties, LLC (Jordan) and Jandim Realty Co., Inc. (Jandim), appeal from the decision of the defendant, Old Saybrook Zoning Commission (commission), approving an affordable housing application but conditioning such approval on the satisfaction of sixteen conditions. The plaintiffs also appeal from the commission's subsequent denial of an amended application, submitted in response to the sixteen conditions.

On September 18, 2000, Jordan applied to the commission for a Certificate of Zoning Compliance and for approval of a site plan in conjunction with the proposed construction of a multi-family housing development to be known as "Saybrook Commons." ("Application") Saybrook Commons was proposed to consist of 216 units to be located on an 11.97 acre parcel of land situated on North Main Street, Old Saybrook, Connecticut and owned by the plaintiff, Jandim.**[fn1]**

Prior to opening the matter for public comment, the commission held hearings on the site plan application on October 2, 2000, October 16, 2000 and November 6, 2000. The commission subsequently held public hearings on the application on November 13, 2000 and November 20, 2000. On December 4, 2000, the commission voted to approve the Application but limited their approval by imposing sixteen conditions.**[fn2]** Notice of the commission's decision was duly published in the *Hartford Courant* on December 12, 2000.

On December 26, 2000, Jordan submitted an amended application pursuant to General Statutes § **8-30g** (d), now subsection (h). This amended application modified several aspects of the original application by incorporating several of the sixteen conditions articulated by the commission. The commission held public hearings on the amended application on January 16, 2001, January 22, 2001 and February 7, 2001. On February 7, 2001, at the close of the public hearings, the commission upheld its prior determination, essentially affirming each of the
CT Page 11936
conditions with which the plaintiffs had not already. Notice of this

decision was duly published in the *Hartford Courant* on February 16, 2001.

On February 28, 2001, the plaintiffs appealed from both the commission's December 4, 2000 denial of the original Application and its February 7, 2001 denial of the amended application. On appeal, the plaintiffs challenge ten of the sixteen conditions. [fn3] The plaintiffs allege that the ten conditions have a substantial adverse impact on both the viability of Saybrook Commons as an affordable housing development and the degree of affordability of the dwelling units, in violation of § **8-30g**. The plaintiffs seek an order sustaining their appeal and directing the commission to set aside the ten conditions or, in the alternative, an order directing the commission to grant the amended application.

## JURISDICTION

General Statutes § **8-30g** (c), now subsection (g), establishes the appeals procedure for affordable housing applications. Section **8-30g** (a)(2) defines an affordable housing application as "any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing." The Application for site plan approval and the amended application for site plan approval satisfy the statutory definition of an affordable housing application, the provisions of § **8-30g** govern the present appeal. CITE HERE

## AGGRIEVEMENT

"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) *Harris v. Zoning Commission*, **259 Conn. 402**, **409**, **788 A.2d 1239** (2002). "A person does not become aggrieved until the zoning authority has acted, and the question of aggrievement is a jurisdictional one for the court . . . To be entitled to an appeal, the plaintiff[s] [are] required to allege and prove that [they are] aggrieved by the decision of the commission . . . The fundamental test by which the status of aggrievement . . . is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the
CT Page 11937
decision . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *Quarry Knoll II Corp. v. Planning & Zoning Commission*, **256 Conn. 674**, **702**, **780 A.2d 1** (2001). "Aggrievement is an issue of fact . . . and credibility is for the trier of the facts . . . Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts." (Internal quotation marks omitted.) *Id.*, 703.

The owners of property that is the subject of an application may prove aggrievement by testimony at the time of trial; *Winchester Woods Associates v. Planning & Zoning Commission*, **219 Conn. 303**, **308**, **592 A.2d 953** (1991); or "by the production of the original documents or

certified copies from the record." (Internal quotation marks omitted.) *Quarry Knoll II Corp. v. Planning & Zoning Commission*, supra, 256 Conn. 703.

Jandim alleges that it "is the owner of certain undeveloped real property situated on North Main Street in the Town of Old Saybrook"; and that it is aggrieved by the decision because the property it owns is the subject of the application. At the hearing, held on October 1, 2002, Jandim introduced two warranty deeds demonstrating, to the court's satisfaction, that it owns the subject premises. Jandim has successfully demonstrated a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole to support a finding of aggrievement.

"The interest which supports aggrievement need not necessarily be an ownership interest in real property." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice 2 Ed. (1999) 32.5, p. 538. A contract purchaser of the property that is the subject of the application possesses an interest tantamount to ownership and, thus, has standing to appeal a decision on the application. See *Shapero v. Zoning Board*, **192 Conn. 367**, **376-77**, **472 A.2d 345** (1984); see also *R&R Pool & Home, Inc. v. Zoning Board of Appeals*, **43 Conn. App. 563**, **569-70**, **684 A.2d 1207** (1996), rev'd on other grounds **257 Conn. 456**, **778 A.2d 61**.

Jordan alleges that it "has entered into an agreement with Jandim Realty whereby Jordan Properties has a contract to purchase the premises;" and that it is aggrieved by the commission's decision both because it is the contract purchaser of the subject premises and the applicant for site plan approval. In addition to being the applicant, Jordan, at the hearing, held on October 1, 2002, introduced a contract to
CT Page 11938
purchase the premises demonstrating, to the court's satisfaction, that at all relevant times it was a valid contract purchaser of the premises. Jordan has successfully demonstrated a specific, personal and legal interest in the subject matter of the decision, to support a finding of aggrievement.

In addition to demonstrating their specific personal and legal interests in the subject matter of the decision, the plaintiffs are also required to demonstrate that they have been injured by the decision. "Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units in a set-aside development, may appeal such decision pursuant to the procedures of this section." Section **8-30g** (f)

The plaintiffs have sufficiently demonstrated a possibility that the conditions imposed had a substantial adverse impact on the viability of the affordable housing development and on the degree of affordability of the affordable dwelling units. At trial, the plaintiffs introduced expert testimony as to the nature and extent of the adverse financial impact of the conditions on the project. This evidence included a "pro forma" analyzing the construction costs of implementing the sixteen conditions and projecting profit returns in view of these added costs. The pro forma and the expert testimony adduced at the hearing demonstrate, to the court's satisfaction, that the plaintiffs are aggrieved because the conditions have a substantial adverse impact on the viability of the affordable housing development.

It is the conclusion of this court, therefore, that the plaintiffs have satisfactorily demonstrated aggrievement.

TIMELINESS AND SERVICE OF PROCESS

The commission's decision denying the plaintiffs' original application was published on December 12, 2000. The plaintiffs then filed their amended application on December 26, 2000. The date of publication of the decision denying the amended application was February 16, 2001. The plaintiffs commenced their appeal on March 1, 2001, by service of process upon the town clerk of Old Saybrook and the chairman of the commission. The plaintiffs filed a timely appeal upon the proper parties.[fn4]

SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a planning and zoning commission's decision on an affordable housing application is set forth at §
CT Page 11939
**8-30g** (g), which provides that: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1)(A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2)(A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission dos not satisfy the burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." (Emphasis added.)[fn5]

This provision reveals two different burdens of proof for appeals brought pursuant thereto. Subpart (1) applies to traditional affordable housing appeals and subpart (2) applies to affordable housing appeals that seek to locate housing in an area zoned for industrial use. Under both alternatives, the burden is on the commission first to cite the reasons for their decision; JPI: and to demonstrate that the "reasons cited for such decision are supported by sufficient evidence in the record." See § **8-30g** (g). Second, "[t]he commission *shall also have the burden to prove*" one of two things: if it is a traditional affordable housing appeal, the commission must satisfy the three-pronged test set forth in parts (1)(A)(B) and (C). If the application seeks to place housing in an area zoned for industrial use, the commission must only satisfy the two-pronged test set forth in parts (2)(A) and (B).

In the present case, if the commission establishes the applicability of the industrial zone exemption, it must only show that the reasons it cited are supported by sufficient record evidence. If, however, the industrial zone exemption does not apply, the commission must satisfy the heightened burden of proof set forth in part (1) of the statute.

As the industrial zone exemption is determinative of the commission's

burden of proof and the scope of this court's review, its applicability must be determined at the outset. General Statutes § **8-30g** (g) (2),**[fn6]** the industrial zone exemption, sets forth a less
CT Page 11940
stringent burden of proof than that set forth in § **8-30g** (g)(1). The commission asserts that this exemption applies to the plaintiffs' applications and, therefore, that its burden of proof is limited to demonstrating that (1) its decision is supported by sufficient evidence, (2) the applications sought to locate affordable housing is an area which is zoned for industrial use and which does not permit residential uses and (3) the development is not assisted housing.

The commission asserts, and the record reflects, that the premises is located in a B-2 Shopping Center Business District. The Commission takes the position that this appeal is governed by the industrial use exemption because the area for which the plaintiffs seek approval for its affordable housing is zoned for industrial use.

The argument fails. The Application does not locate affordable housing in an area which is zoned for industrial use. Turning to the zoning regulations of the Town of Old Saybrook, we find that they specifically designate in Article IV — Industrial Districts — the town's two industrial zones. The subject area is not located in either. Rather, it is located in a B-2 zone which is expressly designated as a "Shopping Center Business District" under Article III — Business and Maritime Districts.

The commission argues, however, that the industrial use exception applies because the B-2 zone permits industrial uses, that is, some of the same uses permitted in the Industrial Districts. According to the town's zoning regulations, the B-2 district permits various commercial and business uses. The commission argues that because some of the uses permitted in the B-2 zone are "industrial in nature" and, in fact, overlap many of the uses permitted in the town's two industrial zones, the industrial zone exemption should apply to the plaintiffs' applications. The commission further asserts that the B-2 zone does not permit residential uses and that the development is not assisted housing, as that term is defined in subsection (a) of § **8-30g**.

This court is not persuaded. While many of the permitted uses in the Industrial District and the B-2 District overlap,**[fn7]** the fact that two different zones permit some of the same uses or attributes does not mean that the two zones are interchangeable or wholly congruent. This court is mindful of the proposition that "all squares are rectangles, but not all rectangles are squares." It is the differences in the permitted uses, not the similarities, that are important. Indeed, what would set one zone apart from another if not the allowance in one of uses prohibited in others. Both the I-1 and I-2 zones permit uses that the B-2 zone expressly prohibits, for example: painting, plumbing, electrical, sheet
CT Page 11941
materials, carpentry, wood-working, blacksmith, welding and machine shops (See § 41.1.5 and § 32.3.2,) and warehousing and wholesale businesses; building contractors' businesses and storage years; lumber and building materials businesses; freight and materials trucking terminals and businesses; bus terminals; commercial storage, sale and distribution of fuel. (See § 41.1.3 and § 32.3.5.)

In assessing whether the B-2 zone falls within the industrial zone exemption, this court is mindful of the legislative purpose behind the affordable housing land use appeals statute which is to "encourage and

facilitate the much needed development of affordable housing throughout the state"; *JPI Partners, LLC v. Planning and Zoning Board*, **259 Conn. 675**, **689**, **791 A.2d 552** (2002)); and that, as a remedial statute, section § **8-30g** "must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Kaufman v. Zoning Commission*, **232 Conn. 122**, **140**, **653 A.2d 798** (1995). If this court were to adopt the broad interpretation of § **8-30g** (g)(2) advanced by the commission and expand the exemption to include not only "areas zoned for industrial use" but also areas in which permitted uses overlap with areas zoned for industrial use, it would thwart the important purposes of the statute to promote the development of affordable housing. It is an established and long-held rule that statutory exceptions are to be strictly construed. *Conservation Commission v. Price*, **193 Conn. 414**, **424** (1984); *Kulis v. Moll*, **172 Conn. 104**, **110** (1976). See also, *State v AFSCME*, **257 Conn. 80**, **93** (2001).

This court concludes that the B-2 Shopping Center Business District is not "an area zoned for industrial use" and that the industrial zone exemption is not applicable to the plaintiffs' applications. As such, this appeal is governed by § **8-30g** (g)(1), and the commission must satisfy that section with respect to each of the reasons it cites for imposing the ten challenged restrictions.

As a predicate addressing the merits of this appeal, the court finds, and it is undisputed by the parties, that the Town of Old Saybrook is seriously lacking an adequate supply of affordable housing and, indeed, is well below the 10% goal set by the statute. In a report dated April 11, 2000, the Connecticut Department of Economic and Community Development determined that 1.93% of the town's housing stock was affordable. That dire need, informs, as it must, any plenary review conducted by this court.

First, however, pursuant to § **8-30g** (g), the commission must demonstrate that the reasons it cites for imposing each of the ten
CT Page 11942
challenged conditions are supported by sufficient evidence in the record. If the commission meets the initial burden of proof that there is sufficient evidence in the record to support its reason for imposing each condition, the trial court then undertakes a plenary review of the record to determine whether: "(A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development." Section **8-30g** (g)(1). It is important to underscore that under subparagraphs (A), (B), and (C) of the statute, "the court must review the commission's decision independently, based upon its own scrupulous examination of the record." *Quarry Knoll II Corp. v. Planning and Zoning Commission*, supra, 256 Conn. 727.

It is well settled that, while a zoning commission does not have to make its findings in perfect language, the reasons it gives for acting on an affordable housing application must be the collective reasons cited by the commission at the time it took its formal vote on the application, rather than reasons that later might be culled from the record. See *Mackowski v. Planning and Zoning Commission*, **59 Conn. App. 608**, **615**, **757 A.2d 1162** (2000). In the present case, only the commission's collective reasons for the conditions, given in its decision-making