UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

– – – – – – – – – – – – – – – – – – – – – – – – – – – x
                              :

| | | |
|---|---|---|
| EUREKA V LLC, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. |
| | : | 3: 02 CV 356 (DJS) |
| | : | |
| VS. | : | |
| | : | |
| THE TOWN OF RIDGEFIELD, THE BOARD | : | |
| OF SELECTMEN OF THE TOWN OF | : | |
| RIDGEFIELD, THE BOARD OF FINANCE OF | : | |
| THE TOWN OF RIDGEFIELD, THE | : | |
| ECONOMIC DEVELOPMENT COMMISSION | : | |
| OF THE TOWN OF RIDGEFIELD, THE | : | |
| BENNETT'S FARM DEVELOPMENT | : | |
| AUTHORITY, BARBARA SERFILIPPI, IN | : | |
| HER OFFICIAL CAPACITY AS THE TOWN | : | |
| CLERK OF THE TOWN OF RIDGEFIELD, and | : | |
| THE PLANNING AND ZONING COMMISSION | : | |
| OF THE TOWN OF RIDGEFIELD, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | June 28, 2007 |

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Eureka V LLC submits this memorandum of law in opposition to the motion of

Defendants The Town of Ridgefield, The Board of Selectmen of the Town of Ridgefield, The

Board of Finance of the Town of Ridgefield, The Economic Development Commission of the

Town of Ridgefield, The Bennett's Farm Development Authority, and Barbara Serfilippi, in her

official capacity as the Town Clerk of the Town of Ridgefield (the "Defendants") to dismiss the

Fourth Count in Plaintiff's Second Amended Complaint as (i) moot and (ii) failing to state a

claim upon which relief may be granted (the "Motion"). The Defendants' Motion is unfounded,

if not frivolous, and should be summarily denied.

First, the fact that Eureka filed an affordable housing application with the Planning and Zoning Commission of the Town of Ridgefield (the "Planning and Zoning Commission") before the effective date of the new zoning regulations does not render its Fourth Count under the Federal Fair Housing Act, 42 U.S.C. §3600 *et seq*., moot.  While it is true the new regulations, which are effective May 1, 2007, will not apply to Eureka's most recent application, they will apply to any subsequent applications, including applications that would be made if the pending application is denied or Eureka (or any subsequent owner) changes the development plan for the property.  In that event, Eureka would be precluded by the new regulations from filing another affordable housing application. Thus, the issues presented are live and claim is not moot.

Second, Eureka alleges that the Commission changed the zoning regulations for the Corporate Development District ("CDD") zone, by eliminating the specified residential uses in the zone, in order to preclude or interfere with affordable housing on the property, which undeniably states a claim upon which relief can be granted.  While the Defendants have taken a litigation position that the new CDD regulations do not establish an industrial zone, and therefore Eureka can still file an affordable housing application under the new regulations, the Planning and Zoning Commission, which is charged with adopting and interpreting the Town's zoning regulations, has expressly refused to join in that view.  *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss, dated June 18, 2007, at 2 (Docket No. 132-2).  There is substantial disagreement between the parties on whether the new CDD zone is an industrial zone, or was intended to be one, and resolution of this fact intensive issue is not proper on a Rule 12 (b) (6) motion.  Moreover, the Defendants miscast Eureka's Fourth Count as being limited to and dependant upon a finding that the new regulations actually preclude affordable housing applications in the CDD zone.  In fact, Eureka alleges that the *intent* and/or *effect* of the

regulation changes is to preclude, prevent or interfere with applications for affordable housing in the CDD zone (and specifically on Eureka's property), and thereby prevent or interfere with new families with school age children from moving to Ridgefield in violation of the Federal Fair Housing Act, 42 U.S.C. §3600 *et seq.*   Finally, as noted, the Motion should be denied because the Defendants improperly seek resolution of the merits of the case in the context of a Rule 12(b)(6) motion to dismiss, rather than more properly on summary judgment or at trial after full discovery on Eureka's claim.

## FACTUAL BACKGROUND

Plaintiff's First Amended Complaint, dated July 26, 2002, contains three counts based upon Ridgefield's improper attempts to take Eureka's property to stop affordable housing on the site.  On May 21, 2007, the Court granted Eureka's motion to amend its complaint to add new factual allegations and a new claim under the Federal Fair Housing Act arising out of adoption by the Planning and Zoning Commission of new regulations effective May 1, 2007 (the "New Regulations").  *See* Second Amended Complaint, Fourth Count.

The New Regulations include discriminatory changes to the CDD zone in which Plaintiff's property lies.  Specifically, Eureka alleges in pertinent part as follows:

> 72.    During the hearings on Eureka's March 2005 [affordable housing] Application, the Planning and Zoning Commission challenged Eureka about whether the above referenced provision in Ridgefield's CDD regulations permitted Eureka to apply for affordable housing under section 8-30g of the Connecticut General Statutes.  In response, Eureka explained that such an application was clearly permissible under Ridgefield's existing zoning regulations including specifically Section 410.0 G.2 (e).

> . . .

> 78.    The New Zoning Regulations eliminate student dormitories and residences for executive and professional staff as a permitted use in the CDD zone. By eliminating the specified residential uses from the CDD zone in which the Plaintiff's property is located, Ridgefield and its Planning and Zoning Commission **have acted to preclude**

**future applications for affordable housing on the property, with the intent or effect** of precluding new families with school age children from moving to Ridgefield.

79.     In *Terrar, LLC v. Town of Ridgefield Planning and Zoning Com'n*, 2006 WL 1000314 (Conn. Super. March 29, 2006) (No. HHBCV0504004079Z) the Connecticut Superior Court (i) sustained the plaintiff's appeal of the denial of its affordable housing applications by the Planning and Zoning Commission, including its application to create a new "Housing Opportunity Development" ("HOD") District pursuant to C.G.S. 8-30g, and (ii) ordered the Commission to adopt the HOD District.

80.     As further evidence of its contempt for affordable housing, the Planning and Zoning Commission's New Zoning Regulations do not include the HOD zone ordered by the Court in *Terrar* just one year ago.

. . .

92.     Title 42 U.S.C. § 3617 provides that "It shall be unlawful to coerce, intimidate, threaten, or **interfere** with any person in the exercise or enjoyment of . . ., or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

93.     Notwithstanding the pendancy of this action, in which Plaintiff alleges that Ridgefield is seeking to take the Property to stop affordable housing on the Property, the Planning and Zoning Commission has approved amendments to its Zoning Regulations which include elimination of specified residential uses in the CDD zone where the Property is located.  These actions were taken **for the purpose of precluding affordable housing on the Property, or to prevent families with school-aged children from moving into and residing in the Town of Ridgefield**, or to prevent the perceived **fiscal consequences of such families moving to and residing in Ridgefield**, as evidenced by the statements quoted in ¶¶ 28, 29, 38–44, 52-54, 61-66 constitute interference with aiding the exercise or enjoyment of the rights and protections granted by 42 U.S.C. § 3604, in violation of 42 U.S.C. §§ 3604 and 3617.

94.     By eliminating the specified residential uses from the CDD zone in which the Plaintiff's property is located, Ridgefield and its Planning and Zoning Commission **have acted to preclude future applications** for affordable housing on the property, with the **intent or effect** of precluding new families with school age children from moving to Ridgefield or otherwise making housing unavailable to families with school age children in violation of 42 U.S.C. §§ 3604 and 3617.

95.     The New Zoning Regulations, which eliminate specified residential uses on the Property, **are discriminatory and are intended to preclude** Plaintiff from being eligible to file applications for affordable housing under Section 8-30g of the Connecticut General Statutes after the effective date of the New Zoning Regulations.

96.     Plaintiff seeks a temporary and permanent injunction against Ridgefield and the Planning and Zoning Commission barring or prohibiting implementation of the New Zoning Regulations to the extent they have eliminated specified residential uses in the CDD zone or include any other changes **that preclude or may preclude** Plaintiff from filing applications for affordable housing on the Property.

Second Amended Complaint, Fourth Count, ¶¶ 72, 78-80, 92-96 (Emphasis added).

Thus, Eureka's claim is not simply that the New Regulations preclude affordable housing, but it is more encompassing in that Eureka alleges that the intent and/or effect of the changes, including the elimination of the specified residential uses in the CDD zone, was to prevent, preclude or otherwise interfere with affordable housing and/or to prevent or otherwise interfere with families with school-aged children from moving into and residing in Ridgefield.

In their Motion, the Defendants assert that the new CDD zone is not an industrial zone. However, in its companion Motion to Dismiss, the Planning and Zoning Commission, which is statutorily charged with adopting and implementing the Town's zoning regulations, expressly refused to join that argument, stating:  "the Defendant Commission has not had an affordable housing application filed with it subsequent to the adoption of the new regulations for property located within the Corporate Development District ("CDD") Zone and, accordingly, has not had an opportunity to take any formal position on the exclusive industrial zone exemption issue." *See* Defendants' Motion to Dismiss, dated June 18, 2007, at 2.

## ARGUMENT

**I.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE EUREKA PRESENTS LIVE ISSUES FOR ADJUDICATION AND STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

### A.     Eureka's Fourth Count Is Not Moot Because the Issues Presented Are Live.

A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  *Blackwelder v. Safnauer*, 866 F.2d 548, 551 (2d. Cir. 1989).

When asking the court to dismiss a claim as moot, the defendant carries a heavy burden and must demonstrate that it is "absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur." *Atlantic States Legal Foundation v. Pan American Tanning Corporation*, 993 F.2d 1017, 1019 (2d. Cir. 1993). Principles of mootness prevent maintenance of a suit when there is no reasonable expectation that the wrong will be repeated. *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). *See also* Def. Memo. at 4.

In response to Eureka's claim that the Planning and Zoning Commission amended the CDD zone regulations to preclude or interfere with affordable housing applications on Eureka's site, the Defendants contend that the Fourth Count is moot because Eureka has filed an application for affordable housing under the prior zoning regulations. Def. Memo. at 5. There is no question that Eureka filed an application for a 510 unit affordable housing development prior to the effective date of the New Regulations. It is also true that the New Regulations cannot effect that application. However, Defendants' simplistic argument fails because by definition the New Regulations will apply to any application for affordable housing made by Eureka (or any subsequent owner) after the effective date of the New Regulations, whether such application is occasioned by the denial of its current application, a change in the development plan for the property or otherwise. Indeed, it is commonplace in the real estate development world, including affordable housing projects, for successive applications to be made as the applicant modifies its development plan to, for example, accommodate changes requested by the commission. *See e.g. Avalonbay Communities, Inc. v. Wilton Planning and Zoning Com'n,* 2005 WL 2436189, at 5 (Conn. Super. Sep 12, 2005) (NO. CV040527391) (noting similar prior applications for

affordable housing on the property by plaintiff). Thus, the mere filing of an affordable housing application before the effective date of the New Regulations does not render the claim moot.

Moreover, the Defendants have not shown that it is "absolutely clear" that the Defendants' and the Planning and Zoning Commission's historic animus towards affordable housing and Eureka will not continue. In fact, all the evidence is to the contrary, including the Planning and Zoning Commission's refusal in its companion motion to dismiss to state whether or not the new CDD zone is an industrial zone. This refusal is remarkable given that in 2005 the Planning and Zoning Commission challenged Eureka about whether Ridgefield's CDD regulations permitted Eureka to apply for affordable housing under section 8-30g of the Connecticut General Statutes; Eureka responded by referencing the language in Section 410.0 G.2 (e) of the regulations that permitted specific residential uses in that zone; and in the New Regulations the Planning and Zoning Commission deleted that very language from the CDD zone as part of a comprehensive re-write and re-organization of the Town's zoning regulations. *See e.g.* Second Amended Complaint, Fourth Count, ¶¶ 72, 78, 92-95. Thus, the suggestion that the Commission does not know its position on whether the CDD zone is an industrial zone under the New Regulations is ludicrous, and its refusal to articulate that position is disingenuous at best and typical of the smoke and mirrors facing Eureka as it tries to develop affordable housing.

Finally, even if all of the defendants did agree to treat Eureka fairly and in accordance with the applicable laws, the claim would still not be moot given that nothing would stop the wrongful acts from occurring again. *See e.g. Tsombanidis v. West Haven Fire Department*, 352 F.3d 565, 574 (2d. Cir. 2003) (Case was not moot because a new administration could change the

7

interpretation of the relevant code).  Thus, the Defendants have not satisfied their burden of establishing that the claim is moot.[1]

**B.     Eureka States A Claim Upon Which Relief Can Be Granted**.

In determining a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b) (6), the court must accept all facts alleged by the plaintiff in the complaint as true and draw all inferences in favor of the plaintiff.  *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 154 (2006).  To dismiss, it must "appear [] beyond doubt, even when the complaint is liberally construed, that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  *See also* Def. Memo. at 4.

**1.     The Planning and Zoning Commission's refusal to join with the Defendants and commit that the new CDD zone is not an industrial zone demonstrates why the Motion is premature and should be dismissed.**

The Defendants argue that the Fourth Count should be dismissed pursuant to Rule 12(b) (6) for failure to state a claim upon which relief can be granted because the new CDD zone in which Eureka's property lies is *not* an industrial zone and therefore Eureka is not precluded from making an affordable housing application under the New Regulations.  Def. Br. at 6-8.  To resolve the Motion the Court needs look no further than the companion motion to dismiss of the Planning and Zoning Commission, the agency responsible for adopting and interpreting the Town's zoning regulations, wherein the Commission refused to adopt the Defendants' position:

> "the Defendant Commission has not had an affordable housing application filed with it subsequent to the adoption of the new regulations for property located within the Corporate Development District ("CDD") Zone and, accordingly, has not had an

---

[1]  The Defendants' erroneously state that "If the Fourth Count is not dismissed and Plaintiff does appeal the Commission's decision on the Application, there is a danger that this Court and the state court may issue inconsistent ruling."  Def. Memo. at 6 n.3.  Given that the current Application is under the old regulations, there is no possibility of inconsistent ruling since the Fourth Count involves the New Regulations, not the old.

> opportunity to take any formal position on the exclusive industrial zone exemption issue."

*See* Defendants' Motion to Dismiss, dated June 18, 2007, at 2.

As noted above, the Planning and Zoning Commission has refused to take a position on this issue even though it challenged Eureka in 2005 about whether its CDD regulations permitted Eureka to apply for affordable housing, and then in its New Regulations deleted the very language Eureka identified that authorized such applications – the specified residential uses in the CDD zone. *See* Second Amended Complaint, Fourth Count, ¶¶ 72, 78, 92-95. Thus, the Defendants' litigation position that under the new CDD regulations the CDD zone is not an industrial zone (Def. Memo. at 9) is of no moment since the Planning and Zoning Commission could and in all likelihood would take the opposite position when dealing with a future application by Eureka for affordable housing under the new CDD regulations. The Defendants have not established that "there are no set of facts in support of plaintiff's claim which would entitle plaintiff to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); Def. Memo. at 4.

Moreover, even if the Planning and Zoning Commission agreed with the Defendant's interpretation, Eureka would still state a claim since its Fair Housing Act claim is much broader than suggested by the Defendants. As explained more fully below, Eureka alleges not just that the Commission deleted residential uses from the prior CDD zone regulations in order to create an industrial zone, but also that it did so in order to discourage and interfere with affordable housing applications. Even if the Court were to conclude the new CDD zone is not an industrial zone, Eureka has still alleged a set of facts that would entitle it to relief.

2. **Eureka's claim does not require a finding that the New Regulations preclude affordable housing, as its claim is also predicated on the intent and effect of the change in regulation on affordable housing.**

The Defendants mischaracterize Eureka's claim as being dependant upon a finding that the New Regulations preclude it from the filing of an affordable housing application. Def. Memo at 9. In fact, Eureka's claim is not dependant on such a finding, or that it is in fact ultimately precluded from making an affordable housing application under the New Regulations, although Eureka certainly believes that to be the case. The claim is much broader and directly implicates (i) the intent of the Commission in making the changes to the CDD zone and (ii) the effect of those changes, which at a minimum will have a chilling effect on affordable housing applications. *See e.g.* Second Amended Complaint, Fourth Count, ¶¶ 78, 92-96, 42 U.S.C. §3617; 42 U.S.C. §3604(a); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2d. Cir. 1988) (discriminatory zoning restrictions.); *Tsombanidis v. West Haven Fire Department*, 352 F.3d 565, 573 (2003) (Plaintiff can establish discrimination under three available theories: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation.).

For example, even if the Court were to eventually conclude that the new CDD zone is not an industrial zone, Eureka could still prevail on its claim by establishing that the amendments were intended to interfere with affordable housing or have that effect. Put differently, at bottom Eureka's claim is that the Planning and Zoning Commission intended to create an industrial zone, or at a minimum it intended that owners of CDD zoned property believe the Commission intended to create an industrial zone. Either way its actions were intended to preclude or

interfere with affordable housing and are violative of the Federal Fair Housing Act. Eureka has unquestionably stated a claim which can not be dismissed on a Rule 12(b) (6) motion.[2]

### 3. Defendants' Rule 12(B) (6) motion is improper because it requires the Court to decide the substantive merits of the claim, not whether a claim has been stated.

After asking the Court to take judicial notice of Section 5.5 of the New Regulations, the Defendants argue that Eureka fails to state a claim because the CDD zone purportedly is not an industrial zone, even though the Planning and Zoning Commission's has refused to agree with that position. In all events, however, Rule 12(b) (6) motions are *not* intended to serve the function of resolving disputes on the merits. Rather, they are to serve the very limited purpose of testing "the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Global Network Communications, Inc. v. City of New York*, 458 F.3d. 150, 155 (2d Cir. 2006) (emphasis in original). Underscoring the distinction between a Rule 12(b) (6) motion and a motion for summary judgment is the fact that while "the mere allegation of the existence of [a fact] would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment [, which] is designed to pierce the pleadings [and] flush out those cases that are predestined to result in directed verdict." *Id.* (internal quotations omitted).

Here, there is substantial disagreement among the parties as to whether the new CDD zone is an industrial zone. Eureka alleges that it is an industrial zone; the Defendants contend

---

[2] *Jordan v. Old Saybrook Zoning Comm'n*, 2003 Ct. Sup. 11935 (J.D. New Britain, 10/31/2003) (Judge Tanzer) (Def. Memo. at 7-8) is of little help to the Defendants. In *Jordan*, the Commission maintained that Old Saybrook's B-2 Shopping Center Business District was in fact an industrial zone. The Court disagreed for several reasons, including the existence of two specifically designed industrial zones in Old Saybrook's regulations. By contrast, there is no specifically designated industrial zone in Ridgefield, which adds weight to Eureka's argument that the new CDD zone, which clearly includes industrial uses, is an industrial zone. Moreover, *Jordan* illustrates how a zoning commission can claim that a zone is an industrial zone in an effort to avoid affordable housing.

that it is not; and the Planning and Zoning Commission, while not taking a formal position, has refused to join with the Defendants in asserting it is not an industrial zone. Second Amended Complaint, Fourth Count, ¶¶ 72 – 96; Def. Memo. at 6-8; Defendant's Memorandum of Law in Support of Motion to Dismiss, dated June 18, 2007, at 2 (Docket No. 132-2). Quite clearly the Defendants improperly seek the Court to resolve the merits of this fact driven claim, about which there is substantial legal and factual disagreement, in the context of a Rule 12(b) (6) motion, where no discovery has even been taken on the claim. This is not the function of Rule 12(b) (6). Moreover, the Defendants' Motion does not address the totality of Eureka's claim, including its allegations regarding the intent and effect of the regulation changes.

In addition, when materials outside the pleadings are submitted in support of a 12(b) (6) motion, the court has two options: (1) exclude the materials or (2) convert the motion into a Rule 56 motion for summary judgment. *Kopec v. Coughlin II*, 922 F.2d. 152, 155 (2d. Cir. 1991). The conversion requirement is mandatory. *Global Network Communications, Inc.*, 458 F.3d. at 155. There are two exceptions to the rule: (1) materials integral to the complaint, and (2) materials subject to judicial notice. *Id.* at 156. Under the judicial notice exception, the court may, in its discretion, entertain material subject to judicial notice as provided in Rule 201 of the Federal Rules of Evidence. However, it may do so only to establish its existence of those facts, not for the truth of the matter asserted. *Id.* at 157. Once the court is asked to evaluate the merits of the case the motion should be converted to one for summary judgment. In that event, the Court should provide notice to the parties that it is converting the motion to one for summary judgment, deny the motion, and permit discovery and full briefing on the issue. *Id.* at 155-57.

## CONCLUSION

For these reasons, the Defendants' motion to dismiss should be denied.

THE PLAINTIFF

By:    /s/ Matthew C. Mason
       Matthew C. Mason (ct 15291)
       Gregory and Adams, P.C.
       190 Old Ridgefield Road
       Wilton, CT 06897
       (203) 762-9000 (Tel.)
       (203) 834-1628 (Fax)
       mmason@gregoryandadams.com

## <u>CERTIFICATION</u>

I certify that on June 28, 2007 a copy of the foregoing was filed electronically.  Notice of

this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


<u>/s/ Matthew C. Mason</u>
Matthew C. Mason (ct15291)
Gregory and Adams, P.C.
190 Old Ridgefield Rd.
Wilton, CT 06897
(203) 762-9000
Fax: (203) 834-1628
E-mail: mmason@gregoryandadams.com