UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUREKA V LLC | : | CIVIL ACTION NO: |
| | : | |
| Plaintiff, | : | 3:02 CV 356 (DJS) |
| | : | |
| VS. | : | |
| | : | |
| THE TOWN OF RIDGEFIELD, ET AL. | : | |
| | : | |
| Defendants. | : | NOVEMBER 7, 2007 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

Defendants hereby file this Memorandum of Law in Support of their Motion to

Dismiss the Fourth Count of Plaintiff's Third Amended Complaint served on October 17,

pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  As more fully set forth below, the Fourth

Count should be dismissed because: 1) it is moot; and 2) Plaintiff's allegations fail to

state a claim upon which relief can be granted.

### II.    STATEMENT OF FACTS

Plaintiff commenced this action by Summons and Complaint dated February

27, 2002 to stop the Town of Ridgefield ("Ridgefield") from implementing its properly

authorized project plan to support economic development in Ridgefield.

On March 20, 2007, the Ridgefield Planning & Zoning Commission (the

"Commission") adopted numerous and significant changes and amendments to its zoning

regulations (the "Amendments" or the "New Regulations").  The Amendments included

the elimination of certain language identifying specified residential uses associated with

institutions of higher learning in the Corporate Development District Zone (the "CDD

zone").  See Affidavit of Betty Brosius dated November 5, 2007 ("Brosius Affidavit") at

1, attached hereto as Ex. A.  The Amendments became effective on May 1, 2007.

Brosius Affidavit at 2.

On April 25, 2007, prior to the effective date of the Amendments, Plaintiff filed

an application with the Commission (the "Application").  The Application included:

1) an Application for Text Change to add a Housing Opportunity District (the "HOD") to

Ridgefield's zoning regulations; 2) an Application for Zone Change to rezone 153+ acres

from the CDD to the HOD; 3) an Application to Amend the Ridgefield Plan of

Conservation and Development as needed, to support the zone and text change; and 4) a

Conceptual Plan for 509 dwelling units, with 30% designated as "affordable" pursuant to

Connecticut General Statutes Section 8-30g.  Brosius Affidavit at 2.  Specifically, the

Application proposes that 15% of the units in the development shall be offered to families

whose income is less than or equal to 60% of the area or state wide median income

whichever is less, and 15% of the units in the development shall be offered to families

whose income is greater than 60% but less than or equal to 80% of the area or state wide median income, whichever is less.  Brosius Affidavit at 2.[1]

Plaintiff served a Second Amended Complaint on May 24, 2007 (the "Second Amended Complaint").[2]  The Fourth Count of the Second Amended Complaint is a claim for violation of the Federal Fair Housing Act, based on the Commission's adoption of the New Regulations.  Plaintiff claimed that the Commission adopted the New Regulations for the purpose of precluding affordable housing on its property which is located in the CDD zone (the "Property"), and to prevent families with school-aged children from moving into and residing in Ridgefield.  Second Amended Complaint, Paragraphs 93 through 95.

At the Commission's July 3, 2007 meeting, the Commission unanimously adopted the following Official Statement:

> The Ridgefield Planning and Zoning Commission hereby stipulates, and states for the public record, that the Corporate Development District (CDD) Zone regulation, section 5.5 of the Ridgefield Zoning Regulations, which became effective on May 1, 2007, and any property located within that zone, are not subject to the industrial use exemption set forth in the Affordable Housing Statute, Connecticut General Statutes Section 8-30g(g)(2)(A) and (B).

---

[1]Pursuant to Section 8-30g(1), an "affordable housing development" consists either of "assisted housing" or "a set-aside development."  Assisted housing is what is commonly known as low-income housing.  Section 8-30g(3).  The development Plaintiff proposes is *not* assisted housing; it is a set-aside development. Section 8-30g(6).

[2] Plaintiff had filed a Motion to Amend and a Proposed Second Amended Complaint on March 8, 2005. However, because the case was stayed, the Court did not rule on that Motion to Amend and a Second Amended Complaint was not filed at that time.

Brosius Affidavit at 2.

On September 25, 2007, Plaintiff sought permission to file a Third Amended Complaint.[3] The Court granted Plaintiff's request. Plaintiff served the Third Amended Complaint on October 17, 2007 (the "Operative Complaint"). Despite the Commission's adoption of the foregoing Official Statement, the allegations Plaintiff made in the Fourth Count of the Operative Complaint remain fundamentally the same as the allegations Plaintiff made in the Fourth Count of the Second Amended Complaint. Specifically, Plaintiff makes the following pertinent allegations in the Operative Complaint:

1)      The Commission has approved amendments to its zoning regulations which include elimination of specified residential uses in the CDD zone where the Property is located. These actions were taken for the purpose of making the CDD zone an industrial zone in which residential uses are not permitted and therefore exempt from Connecticut General Statutes Section 8-30g, or alternatively, to give that appearance to the public. These actions were taken for the purpose of precluding affordable housing on the Property, to prevent families with school-aged children from moving into and residing in Ridgefield, or to prevent the perceived fiscal consequences of such families moving to and residing in Ridgefield, in violation of the Federal Fair Housing Act. Operative Complaint, Fourth Count, Para. 109.

---

[3] Defendants filed Motions to Dismiss the Second Amended Complaint on June 11, 2007 and June 18, 2007. Those motions were pending when Plaintiff filed the Third Amended Complaint.

2)     By eliminating the specified residential uses from the CDD zone in which the Property is located, Ridgefield and the Commission have acted to preclude future applications for affordable housing on the Property, with the intent or effect of precluding new families with school-aged children from moving to Ridgefield or otherwise making housing unavailable to families with school-aged children, in violation of the Federal Fair Housing Act.  Operative Complaint, Fourth Count, Para. 110.

3)     The New Regulations, which eliminate specified residential uses on the Property, are discriminatory and are intended to preclude Plaintiff from being eligible to file applications for affordable housing under Section 8-30g after the effective date of the new regulations, or make Plaintiff and others believe that such applications are not authorized, thereby interfering with the filing of such applications by Plaintiff and others.  Operative Complaint, Fourth Count, Para. 111.

4)     Plaintiff seeks a temporary and permanent injunction against Ridgefield and the Commission barring or prohibiting implementation of the new regulations to the extent they have eliminated specified residential uses in the CDD zone or include any other changes that preclude or may preclude Plaintiff from filing applications for affordable housing on the Property.  Operative Complaint, Fourth Count, Para. 112.

III.     **ARGUMENT**

   A.     **Standard of Review on Motions to Dismiss under Rule 12(b) of the Federal Rules of Civil Procedure.**

"Dismissal under Rule 12(b)(6) is only proper when it appears beyond doubt that there are no set of facts in support of plaintiff's claim which would entitle plaintiff to relief. . . . In reviewing the dismissal of a complaint for 12(b)(6) insufficiency, the complaint is to be construed in the light most favorable to the plaintiff. . . . [T]he . . . court must accept as true all the factual allegations in the complaint." Harsco Corp. v. Segui, 91 F.3d 337, 341 (2d Cir. 1996) (citations and internal quotation marks omitted).

A motion that includes evidentiary matters outside the pleadings cannot be made under Rule 12(b)(6).  However, when subject matter jurisdiction is challenged under Rule 12(b)(1), the movant may present evidentiary matters by affidavit or otherwise. Kamen v. American Telephone and Telegraph Co., 791 F.2d 1006, 1010-11 2d Cir. 1986).

   B.     **The Fourth Count of the Operative Complaint Must Be Dismissed Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.**

"The mootness doctrine, which is mandated by the case or controversy requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties. . . . Thus, when the issues presented are no longer live or the parties lack a legally cognizable

interest in the outcome . . . a case is moot and the federal court is divested of jurisdiction over it. . . . The central question . . . is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Catanzano v. Wing, 277 F.3d 99, 107 (2nd Cir. 2001) (citations and internal quotation marks omitted). When a case is moot, the federal courts lack subject matter jurisdiction. Muhammad v. City of New York, 126 F.3d 119, 122-23 (2d Cir. 1997).

> 1) **The Fourth Count Is Moot Because Plaintiff Filed Its Affordable Housing Application Before the New Regulations Became Effective.**

In the Fourth Count of the Operative Complaint, Plaintiff alleges that the Commission has adopted regulations which prevent Plaintiff from filing an affordable housing application. However, Plaintiff filed the Application -- an affordable housing application -- on April 25, 2007, prior to the date when the New Regulations became effective. Accordingly, the New Regulations cannot affect the Commission's review of the Application. See Samperi v. Planning & Zoning Commission, 40 Conn. App. 840, 844 (1996) (confirming that pursuant to Conn. Gen. Stat. Section 8-2h(a), a commission's review of a zoning application must conform to the regulations in effect when the application was filed).

Because the New Regulations cannot affect the Commission's review of the Application, the Fourth Count of the Operative Complaint is moot and this Court lacks

subject matter jurisdiction over that count.  Therefore, the Fourth Count of the Operative

Complaint must be dismissed.[4]

> **2)      The Fourth Count Is Moot Because the Commission
> Adopted an Official Statement Declaring That the
> Industrial Use Exemption Under Connecticut General
> Statutes Section 8-30 Does Not Apply to the New
> Regulations Or Any Property Located Within the CDD
> Zone.**

Connecticut General Statutes Section 8-30g is the state's affordable housing

statute.  Section 8-30g shifts the burden of proof in affordable housing appeals from the

applicant to the commission.  As a result, in an affordable housing appeal, the

commission must "prove, based upon the evidence in the record compiled before such

commission that (1)  the decision from which such appeal is taken and the reasons cited

for such decision are supported by sufficient evidence in the record; (2) the decision is

necessary to protect substantial public interests in health, safety, or other matters which

the commission may legally consider; (3) such public interests clearly outweigh the need

for affordable housing; and (4) such public interests cannot be protected by reasonable

---

[4] It is also important to note that "federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the [C]ircuit's many local legislative and administrative agencies. . . . Local zoning boards, subject to direct oversight by state courts, are in a far better position than are the federal courts to balance the needs of their communities with those of individuals seeking development." Harlen Associates v. The Incorporated Village of Mineola, 273 F.3d 494, 502 (2d Cir. 2001) (citations and internal quotation marks omitted).  Consequently, in the event the Commission denies the Application, Plaintiff can avail itself of the state's administrative appeal process to seek relief.  Indeed, if the Fourth Count is not dismissed and Plaintiff does appeal the Commission's decision on the Application, there is a danger that this Court and the state court may issue inconsistent rulings.  In fact, Plaintiff already has availed itself of its state court appeal remedy by appealing the adoption of the Amendments.  See Eureka V LLC v. Ridgefield Planning and Zoning Commission, D.N. DBD-CV-07-4007262S (J.D. of Danbury at Danbury).

changes to the affordable housing development." Ensign-Bickford Realty v. Zoning

Commission, 245 Conn. 257, 270 (1998) (citations and internal quotation marks omitted).

"This burden of proof applies to every type of application filed with a commission in

connection with an affordable housing proposal." Wisniowski v. Planning Commission,

37 Conn. App. 303, 313, cert. denied, 233 Conn. 909 (1995) (citation and internal

quotation marks omitted).

Because of the burden shifting contemplated by Section 8-30g, a commission

cannot deny an affordable housing application on broad grounds such as noncompliance

with local zoning regulations. This includes regulations regarding use. Id. at 314-16.

Nor can a commission circumvent the statute by designating a specific site as an

affordable housing zone, to the exclusion of other non-industrial zones. Town Close

Associates v. Planning and Zoning Commission, 42 Conn. App. 94, 102, cert denied, 239

Conn. 914 (1996).

There is only one exemption to the burden shifting contemplated by the statute,

known as the "industrial use exemption." The burden shifting will *not* occur if: 1) "the

application which was the subject of the decision from which [an] appeal was taken

would locate affordable housing in an area which is zoned for industrial use and which

does not permit residential uses"; and 2) "the development is not assisted housing. . ."

Conn. Gen. Stat. Section 8-30g(g)(C)(2)(A) and (B); see also Section IIIC herein

(discussing applicability of exemption only to land zoned exclusively for industrial uses).

The Official Statement adopted by the Commission specifically addresses the industrial use exemption in Section 8-30g and its relationship to the New Regulations. In a zoning appeal, "where a commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." Kaufman v. Zoning Commission, 232 Conn. 122, 142 (1995) (citations and internal quotation marks omitted).   Accordingly, the court always looks to the commission's formal statement as the only expression of its members' collective position. What individual members may think or say is irrelevant. It is only a board's official collective statement that matters. There is no reason the same rule should not apply in the present context.

Plaintiff's claim in its Fourth Count is specifically premised on the allegation that the Commission adopted the New Regulations for the purpose of making the CDD zone an industrial zone in which residential uses are not permitted, thereby exempting all property in that zone from Section 8-30g, or alternatively, to give that appearance to the public. This claim presents no viable controversy between the parties because the Commission has adopted an Official Statement declaring that the New Regulations and all property located within the CDD zone are not subject to the industrial use exemption set forth in Section 8-30g. Thus, the Commission has made a statement that represents

the collective position of its members.  What individual Commission members or others

may have said or thought prior to the adoption of the Official Statement is irrelevant.

Likewise, Plaintiff's allegation regarding the "appearance" of the Commission's action is

wholly speculative and equally irrelevant.  Clearly, the Commission must abide by its

own public declaration, which means that the Commission cannot rely on the New

Regulations to preclude affordable housing in the CDD zone.[5]

For these reasons, the claims Plaintiff makes in the Fourth Count are moot and

that count must be dismissed.

**C.      The Fourth Count of the Operative Complaint Should Be
          Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a
          Claim Upon Which Relief Can Be Granted.**

Because the Official Statement prevents the Commission from relying on the

New Regulations to preclude affordable housing in the CDD zone, the Fourth Count of

the Operative Complaint also fails to state a claim upon which relief can be granted.

Nevertheless, even if the Commission had not issued the Official Statement, the adoption

of the New Regulations could have no effect on the Commission's review of an

---

[5] In Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss dated June 28, 2007 ("Plaintiff's Opposition"), Plaintiff responded to all of Defendants' Motions to Dismiss the Second Amended Complaint as follows: "The Planning and Zoning Commission's refusal to join with the [other] Defendants and commit that the new CDD zone is not an industrial zone demonstrates why the Motion [to Dismiss] is premature and should be dismissed . . . . Defendants' litigation position that under the new CDD regulations the CDD zone is not an industrial zone . . . is of no moment since the Planning and Zoning Commission could and in all likelihood would take the opposite position when dealing with a future application by Eureka for affordable housing under the new CDD regulations."  Plaintiff's Opposition at 8-9.  In light of the Commission's Official Statement, Plaintiff's contention clearly has no merit.

affordable housing application, because there is no legal basis upon which the

Commission could apply the industrial use exemption to applications involving property

in the CDD zone.

The courts strictly construe the industrial use exemption to apply only to areas

that are zoned exclusively for industrial use.  For example, in Jordan v. Old Saybrook

Zoning Commission, 2003 Ct. Sup. (LOIS) 11935 (J.D. of New Britain at New Britain,

Oct. 31, 2003, Tanzer, J.) (copy attached hereto as Ex. B), the commission took the

position that an affordable housing project appeal was not subject to the burden shifting

under Section 8-30g pursuant to the industrial use exemption because the plaintiff's

property was located in a shopping center business district that permitted some of the

same industrial uses permitted in the town's industrial zones, the district excluded all

residential uses, and the proposed development was not assisted housing.  Reasoning that

Section 8-30g is a remedial statute that must be liberally construed in favor of those

whom the legislature intended to benefit, and that statutory exceptions are to be strictly

construed, the court rejected the commission's position.  The court concluded that the

district was not "an area zoned for industrial use" within the meaning of the statute and

that the exemption was not applicable to the plaintiffs' applications.  Id. at *6-7; see also

JPI Partners, LLC v. Planning & Zoning Board, 259 Conn. 675, 680, 682 (2002)

(referring to the exemption under Section 8-30g(g)(C)(2) as the "exclusive industrial

zone exemption").

Here, the Property is located in the "Corporate Development District" (CDD) zone. Similar to the zone in <u>Jordan</u>, the CDD zone is a mixed use zone that permits commercial, industrial and municipal uses. Specifically, the following are the uses allowed by special permit in the CDD zone:[6]

1.    Offices for executive, administrative, business, professional, and data processing activities.

2.    Research and development laboratories, including research and development of manufactured, processed or compounded products.

3.    The manufacture, production, fabrication, processing, assembling, packing, storing and distribution of:

   a.    precision-electrical or precision-mechanical equipment;
   b.    optical goods, business machines, precision instruments, surgical and dental instruments;
   c.    pharmaceutical, toiletry, and cosmetic; and
   d.    any other use of the same general character as any of the uses listed above.

4.    Medical and medical paraprofessional offices and facilities, provided that:

   a.    the parcel is larger than twenty-five (25) acres,
   b.    has frontage on two state highways, and
   c.    no overnight stays are permitted.

5.    Accredited post-secondary educational institutions.

---

[6] Defendants request that this Court take judicial notice of Section 5.5D of the Town of Ridgefield Zoning Regulations. <u>See</u> <u>United States of America v. Robinson</u>, 1995 U.S. Dist. LEXIS 22327, *7-8 (D. Conn. 1995) (copy attached hereto as Ex. C) (Court took judicial notice of sections of the City of New Haven Zoning Ordinance and noted that the taking of judicial notice of facts outside the pleadings does not convert a Rule 12(b)(6) motion to a motion for summary judgment under Rule 56).

6.      Municipal or other governmental uses, including public parking and recreational facilities.

7.      Licensed child day care centers.

8.      Public utility substations.

9.      Uses accessory to the uses listed in Subsection 5.5D when located on the same lot.

Thus, the statutory industrial use exemption could not apply to the CDD zone. The CDD zone is not limited exclusively to industrial uses. Because it is not an area zoned for industrial use within the meaning of the statute, the elimination of specified residential uses from the zone is irrelevant.

Just as before the Amendments took effect, an applicant can file an affordable housing application for property located in the CDD zone, and the Commission must apply the heightened standard required by Section 8-30g in reviewing that application. Accordingly, the Fourth Count of the Operative Complaint fails to state any claim upon which relief can be granted and should be dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court grant their Motion to Dismiss the Fourth Count of Plaintiff's Third Amended Complaint.

THE DEFENDANTS,
THE TOWN OF RIDGEFIELD, THE
ECONOMIC DEVELOPMENT
COMMISSION OF THE TOWN OF
RIDGEFIELD, THE BENNET'S FARM
DEVELOPMENT AUTHORITY, AND
BARBARA SERFILIPPI, IN HER
OFFICIAL CAPACITY AS THE TOWN
CLERK OF THE TOWN OF RIDGEFIELD

By:  *Barbara M. Schellenberg*
Stewart I. Edelstein, Esq. (ct06021)
Monte E. Frank, Esq. (ct13666)
Barbara M. Schellenberg, Esq. (ct02400)
Cohen and Wolf, P. C.
1115 Broad Street
Bridgeport, CT  06604
Tel:  203/368-0211
Fax: 203/576-8504
sedelstein@cohenandwolf.com
mfrank@cohenandwolf.com
bschellenberg@cohenandwolf.com


THE DEFENDANT,
RIDGEFIELD PLANNING AND
ZONING COMMISSION


By:    /s/   Thomas W. Beecher
Thomas W. Beecher, Esq. (ct301715)
Collins, Hannafin, Garamella, Jaber,
& Tuozzolo, P.C.
148 Deer Hill Avenue
Danbury, CT  06810
Tel:  203/744-2150
Fax: 203/791-1126
tbeecher@chgjtlaw.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 7, 2007, a copy of Defendants' Memorandum of Law in Support of Their Motion to Dismiss dated November 7, 2007, was filed electronically.

Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.

Parties may access the foregoing filing and this Certification of Service through the Court's system.

*Barbara M. Schellenberg*
Barbara M. Schellenberg