UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

– – – – – – – – – – – – – – – – – – – – – – – – – – – x
                                            :
EUREKA V LLC,                               :
                                            :
                    Plaintiff,              :       CIVIL NO.
                                            :       3: 02 CV 356 (DJS)
                                            :
            VS.                             :
                                            :
THE TOWN OF RIDGEFIELD, ET AL               :
                                            :
                    Defendants.             :
                                            :       December 14, 2007
– – – – – – – – – – – – – – – – – – – – – – – – – – – x

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Eureka V LLC submits this memorandum of law in opposition to the motion of

defendants The Town of Ridgefield, The Board of Selectmen of the Town of Ridgefield, The

Board of Finance of the Town of Ridgefield, The Economic Development Commission of the

Town of Ridgefield, The Bennett's Farm Development Authority, and Barbara Serfilippi, in her

official capacity as the Town Clerk of the Town of Ridgefield (the "Town Defendants"), and the

Planning and Zoning Commission of the Town of Ridgefield (the "Commission") (collectively

the "Defendants") to dismiss the Fourth Count in Plaintiff's Third Amended Complaint (the

"Motion").

The Fourth Count alleges that the Commission's adoption of new zoning regulations

effective May 1, 2007 (the "New Regulations") violates the Federal Fair Housing Act because it

was intended to and has the effect of impeding or precluding affordable housing and thereby

discriminates against families with school age children.  The grounds for the Motion, that the

Fourth Count is moot and fails to state a claim upon which relief may be granted, are patently untenable.

First, Eureka's Fourth Count under the Federal Fair Housing Act, 42 U.S.C. §3600 *et seq*. ("FFHA"), is not moot simply because Eureka *filed* an affordable housing application with the Commission before the effective date of the New Regulations. Def. Memo at 7. The New Regulations will apply to any new applications after the May 1, 2007 effective date, including those that would be made if the pending application is denied, approved with modifications unacceptable to Eureka, or if the development plan for the property changed.

Second, the Commission's adoption of a so-called "Official Statement," to the effect that the Corporate Development District ("CDD") zone under the New Regulations is not subject to the industrial use exemption under Conn. Gen Stat. §8-30(g), is litigation motivated and not dispositive of the Commission's intent at the time it adopted the regulation. The Commission took a position on the issue only after meeting with counsel in executive session on **five** occasions. Further proof that the "Official Statement" was a *post hoc* revision is that the Commission filed a June 18, 2007 pleading, under signature evidencing a good faith investigation (Fed. R. Civ. P. 12(b)), that it did not know what its intent was at the time it adopted the New Regulation. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 2 (Docket No. 132). That fact alone creates sufficient grounds to reject the present Motion to Dismiss. Moreover, cases are legion that voluntary cessation of illegal acts does not render the underlying claim moot, and there is absolutely nothing preventing the Commission from changing its litigation driven "Official Statement" in the future.

Third, the Defendants incorrectly assert that the Fourth Count fails to state a claim upon which relief can be granted because under the New Regulations the CDD zone is not an

industrial zone.   Resolution of this issue is a fact based determination, requiring the Court to weigh the evidence, and is inappropriate on a Rule 12(b) motion.  Moreover, case law construing the industrial use exemption is sparse and it is therefore uncertain what is or will be Connecticut law on this issue.   Furthermore, the Defendants miscast Eureka's Fourth Count as being limited to and dependent upon a finding that the New Regulations actually preclude affordable housing applications in the CDD zone.   In fact, Eureka also alleges that the *intent* and/or *effect* of the regulation changes is to preclude, prevent or interfere with applications for affordable housing in the CDD zone (and specifically on Eureka's property), in violation of the FFHA.    Finally, the Motion should be denied because the Defendants improperly seek resolution of the merits of the case in the context of a Rule 12(b) (6) motion to dismiss.

## BACKGROUND

### A.    Procedural Background.

Plaintiff's First Amended Complaint, dated July 26, 2002, contains three counts based upon Ridgefield's improper attempts to take Eureka's property to stop affordable housing on the site, including its Third Count for violation of the FFHA.

On May 21, 2007, the Court granted Eureka's motion to amend its complaint to, *inter alia*, add a new claim under the FFHA arising out of adoption by the Commission of New Regulations effective May 1, 2007.  *See* Second Amended Complaint, Fourth Count.

On June 11, 2007, the Town Defendants moved to dismiss the Fourth Count as moot and for failure to state a claim.  In their Motion, the Town Defendants asserted that the CDD zone is not an industrial zone; however, in its companion Motion to Dismiss, the Commission, which is statutorily charged with adopting and implementing the Town's zoning regulations, expressly refused to join that argument, stating:  "the Defendant Commission has not had an affordable

housing application filed with it subsequent to the adoption of the new regulations for property located within the Corporate Development District ("CDD") Zone and, accordingly, has not had an opportunity to take any formal position on the exclusive industrial zone exemption issue." *See* Defendant's Memorandum in Support of Motion to Dismiss at 2 (Docket No. 132).

Thereafter, following *five* meetings in executive session with its counsel, the Commission issued an "Official Statement" that the new CDD zone was not an industrial zone. The Commission also then sought to join in the Town Defendants' motion to dismiss.

Following discovery on Eureka's new Fourth Count, Eureka moved to amend the Fourth Count to add additional factual allegations based on information obtained in discovery. That motion was granted on October 17, 2007 (Docket No. 153) and the Third Amended Complaint filed. (Docket No. 154.)

Once again in their Motion, the Town Defendants and the Commission have moved to dismiss the Fourth Count as moot and failing to state a claim upon which relief may be granted.

**B.     Eureka's Fourth Count**

Eureka's Fourth Count in its Third Amended Complaint paints a disturbing picture of a Commission, consistent with actions of other Town officials, determined to preclude or at a minimum interfere with affordable housing on Eureka's property, in violation of the FFHA. Specifically, Eureka alleges in pertinent part as follows:

71.     In the 1970's, Ridgefield's IL – 40, light industrial zone was changed to the CDD zone.

72.     The CDD zone as it existed prior to May 1, 2007 allowed several light industrial uses but allowed only one residential category of use as follows:

Section 410.0 G.2 (e) Accredited institutions of higher learning. *Facilities for accredited institutions of higher learning may include student dormitories and residences for executive and professional staff.* (Emphasis added.)

73.    During the hearings on Eureka's March 2005 Application, the Planning and Zoning Commission challenged Eureka about whether the above referenced provision in Ridgefield's CDD regulations permitted Eureka to apply for affordable housing under section 8-30g of the Connecticut General Statutes which exempts any parcel zoned for industrial uses "and which does not permit residential uses."    In response, Eureka explained that such an application was clearly permissible under Ridgefield's existing Regulations including specifically Section 410.0 G.2 (e), quoted in paragraph 72 herein, which expressly permitted a residential use in the zone.

74.    By letter dated September 6, 2005, following the Commission's directive to staff to prepare a resolution of denial but prior to its vote on such a resolution, Eureka withdrew the March 2005 Application pursuant to the Settlement Agreement dated August 31, 2005 between Eureka and Ridgefield.

75.    In 2006, the Planning and Zoning Commission proposed new Zoning Regulations.

76.    The Commission sought to prohibit affordable housing in the CDD zone by repealing language in Section 410.0 G.2 (e) quoted in paragraph 72 above that permitted a residential use in the CDD zone.  This is the very language Eureka identified for the Commission in the 2005 hearing supporting its right to file applications for affordable housing under C.G.S. 8-30g.

77.    In deposition, neither Glenn Chalder of Planemetrics, the planning company engaged by the Commission to assist it in revising its Regulations, the Chairman of the Commission, the Vice-Chairman of the Commission, or the Town Planner had any specific recollection of why this language was deleted from the CDD zone.

78.    At numerous times, including by letter dated December 26, 2006, Eureka objected to the proposed changes to Section 410.0 G.2 (e) and elimination of the second sentence of that Section.   Specifically, Eureka's December 26, 2006 letter stated as follows:

> We write as counsel to Eureka V LLC, owners of a 155± property located at Bennett's Farm Road in Ridgefield.  Section 410.0 G.2 (e) of the Town of Ridgefield's existing zoning regulations includes the following as a permissible use in the Corporate Development District ("CDD Zone"):

> (e)    Accredited institutions of higher learning. *Facilities for accredited institutions of higher learning may include student dormitories and residences for executive and professional staff.*  (Emphasis added.)

5

As you will recall from our extensive discussions during the hearing on Eureka's affordable housing application last year, Section 410.0 is not exempt from amendment pursuant to Connecticut General Statutes Section 8-30g because (i) industrial uses are permitted in the CDD Zone and (ii) subsection G.2 (e) allows accredited institutions of higher learning, which facilities may include "student dormitories and residences for executive and professional staff.." C.G.S. §8-30g (b) (2)(g) allows exceptions when affordable housing would be located in an area which is zoned for industrial uses and which does *not* permit any residential uses.

The Commission's proposed CDD regulations eliminate the second sentence of 410.0 G.2 (e) highlighted above and thereby eliminates all residential uses in the CDD Zone. Coming on the heels of Eureka's affordable housing application last year, and its well-known intention to re-file such an application absent resolutions of its dispute with the Town, it appears clear that the intent of the change is to preclude affordable housing on Eureka's Bennett's Farm property and prevent families with school age children from [moving] into and residing in the Town of Ridgefield. Especially given the Town's paucity of affordable housing, and the pending litigation between Eureka and the Town regarding the Town's attempts to take its property to stop affordable housing on the site, we find the proposed change extremely troubling. Eureka strongly objects to the change and requests that Section 410.0 G.2 (e) remain in its current form.

79.    The Commission forwarded the December 26, 2006 letter to its Counsel for review. Counsel to the Commission "had a very simple answer, that the Planning and Zoning Commission is the land use authority in the Town, and it is within its purview to write and adopt regulations as it sees fit." [Minutes of the Commission's January 9, 2007 meeting at 9]

80.    No one from the Commission, including staff and its legal counsel, advised Eureka or publicly indicated that the position expressed in Attorney Healy's letter of December 26, 2006, that the proposed change was intended to preclude affordable housing in the CDD zone, was incorrect.

81.    During the February 27, 2007 public hearings on the proposed new regulations, ROSA, the group opposed to Eureka's affordable housing plans and development of the site, through one of its spokesman, Erik Kristofferson, inquired of the Commission whether a day care center can be considered a residential use and thereby provide a basis for Eureka to make application under 8-30g since the property under the proposed regulations is in an industrial zone that precludes residential use. The Town Planner confirmed that a day care center was not a residential use that would remove the exemption from 8-30g:

**Eric Kristoffersen:**    The reason I bring that up . . . right now is that Eureka's property is zoned for CDD zone, is an industrial zone that precludes residential and is therefore exempt from 8-30g,

and if you add a day care center to that zone, does that become an industrial zone that allows residential use, and is therefore no longer exempt from 8-30?

**Planner Brosius:** No, the day care center that would be, and perhaps it needs to be defined a little bit better than listing it as a day care center, but the day care center that would be allowed in the CDD zone, if the Commission decides to leave it in there, would be for the care of children during the day, for the use of the corporate employees. It's similar to . . . Boehringer Ingelheim has one on their own property as an accessory use, but that is for day care of the children of the employees of the Corporate Development District.

**Eric Kristoffersen:** Okay.

**Planner Brosius:** So that's the type of facility. I am not saying that it would be exclusive to the . . .

**Eric Kristoffersen:** It doesn't become  . . .

**Planner Brosius:** It doesn't become a residence use. It is "<u>day</u> care." It is not a residence. It is <u>day</u> care.

**Eric Kristoffersen:** It is not a residential use.

**Planner Brosius:** No.

Transcript of Public Hearing of February 27, 2007 at 14-15 (emphasis in original).

82.    No member of the Commission challenged, corrected or disagreed with Mr. Kristofferson's statement that under the new regulations Eureka's property was in an industrial zone that did not allow residential uses and therefore was exempt from 8-30g, or the Town Planner's confirmation that Mr. Kristofferson's statement was accurate.

83.    In the course of the public hearings and deliberations on the New Regulations, the Commission never stated that the new CDD zone was not an industrial zone, or that residential uses were permitted in the zone, or explained why it was eliminating the second sentence of Section 410.0.G.2 (e) regarding residential uses in the CDD zone.

84.    Based on the changes to the CDD regulations including elimination of the specified residential uses, Eureka's December 26, 2006 letter to the Commission, ROSA's views as expressed by Mr. Kristofferson at the February 27, 2007 hearing, and the Commission's responses (and lack of responses), the intended impact and effect of the change in the CDD regulation was that the public, including persons owning property

7

in the CDD zone or considering acquiring property in the CDD zone, would conclude that the new CDD zone was an industrial zone in which residential uses were not permitted and therefore was exempt from C.G.S. 8-30g.

85.     At its March 20, 2007 meeting, following public hearings, the Commission adopted the new regulations, effective May 1, 2007 (the "New Zoning Regulations").

86.     The New Zoning Regulations eliminate student dormitories and residences for executive and professional staff as a permitted use in the CDD zone, leaving no other residential uses as allowed in the CDD zone.

87.     By eliminating the specified residential uses from the CDD zone in which the Plaintiff's property is located, Ridgefield and the Commission created or intended to create an industrial zone in which residential uses were not permitted and which therefore was exempt from C.G..S. 8-30 g.

88.     Alternatively, or in addition to, Ridgefield and the Commission intended that the public would believe that the new CDD zone was an industrial zone in which residential uses were not permitted and which therefore was exempt from C.G.S. 8-30 g.

89.     The Commission and Ridgefield have acted to interfere with and/or preclude future applications for affordable housing on the property, with the intent and/or effect of precluding new families with school age children from moving to Ridgefield.

90.     In *Terrar, LLC v. Town of Ridgefield Planning and Zoning Com'n*, 2006 WL 1000314 (Conn. Super. March 29, 2006) (No. HHBCV0504004079Z) the Connecticut Superior Court (i) sustained the plaintiff's appeal of the denial of its affordable housing applications by the Planning and Zoning Commission, including its application to create a new "Housing Opportunity Development" ("HOD") District pursuant to C.G.S. 8-30g, and (ii) ordered the Commission to adopt the HOD District.

91.     At its March 20, 2007 meeting, the Commission repealed the court-ordered HOD zone from its zoning regulations.

92.     Following filing of the Second Amended Complaint, the Defendants moved to dismiss the Fourth Count for violation of the Federal Fair Housing Act. In its Motion to Dismiss, the Commission, which is statutorily charged with adopting and implementing the Town's zoning regulations, expressly refused to join the argument of the co-defendants that the new CDD zone was not an industrial zone and therefore was not exempt from C.G.S. 8-30g, stating: "the Defendant Commission has not had an affordable housing application filed with it subsequent to the adoption of the new regulations for property located within the Corporate Development District ("CDD") Zone and, accordingly, has not had an opportunity to take any formal position on the exclusive industrial zone exemption issue." *See* Defendants' Motion to Dismiss, dated June 18, 2007, at 2.

93.    As of June 18, 2007, the Commission had not formed an intent for the CDD zone to allow residential uses and not be exempt from C.G.S. 8-30g, notwithstanding Eureka's letters to the Commission and ROSA's comments and questions on this very issue during the public hearing process.

94.    Only after meeting in executive session on **five** occasions and in the context of two litigations brought by Plaintiff against the Commission arising out the changed regulations, did the Commission, post hoc, conclude that the new CDD was not exempt from C.G.S. 8-30g.

95.    The Commission's intent/position stated in the Defendant Planning and Zoning Commission of Ridgefield's Reply to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, filed July 12, 2007, was not formed at the time it modified Section 410.0 G.2 (e) to repeal the residential uses in the CDD zone.

96.    The Commission's recent determination for trial purposes that the CDD zone is not exempt from 8-30g is based on its analysis of the revised text and perceived risk of litigation and not based on its actual intent at the time it proposed and adopted the new regulations.

. . .

107.    Plaintiff, as the intended provider of dwelling units, is acting in aid of certain rights granted by the Federal Fair Housing Act.

108.    Title 42 U.S.C. § 3617 provides that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . ., or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

109.    Notwithstanding the pendency of this action, in which Plaintiff alleges that Ridgefield is seeking to take the Property to stop affordable housing on the Property, the Planning and Zoning Commission has approved amendments to its Zoning Regulations, which include elimination of specified residential uses in the CDD zone where the Property is located.  The amendment of the CDD zone Regulations was for the purpose of making the CDD zone an industrial zone in which residential uses were not permitted and therefore exempt from 8-30g, or alternatively, or at a minimum, to give the appearance to the public that is the case.  These actions were taken for the purpose of precluding or interfering with affordable housing on the Property, or to prevent or interfere with families with school-aged children from moving into and residing in the Town of Ridgefield, or to prevent the perceived fiscal consequences of such families moving to and residing in Ridgefield, as evidenced by, among others, the statements quoted in ¶¶ 28, 29, 38–44, 52-54, 61-66, all of which constitutes interference with Plaintiff aiding the exercise or enjoyment of the rights and protections granted by 42 U.S.C. § 3604, in violation of 42 U.S.C. §§ 3604 and 3617.

110.    By eliminating the specified residential uses from the CDD zone in which the Plaintiff's property is located, Ridgefield and the Commission have acted to interfere with and/or preclude future applications for affordable housing on the property, with the intent or effect of precluding or interfering with new families with school age children from moving to Ridgefield or otherwise making housing unavailable to families with school age children in violation of 42 U.S.C. §§ 3604 and 3617.

111.    The New Zoning Regulations as they relate to the CDD zone and Eureka's property are intended to preclude Plaintiff from filing applications for affordable housing under Section 8-30g of the Connecticut General Statutes after the effective date of the New Zoning Regulations, or make Plaintiff (and others) believe that such applications are not authorized and thereby inhibit or interfere with the filing of such applications by Plaintiff (and others).

112.    Plaintiff seeks a temporary and permanent injunction against Ridgefield and the Commission barring or prohibiting implementation of the New Zoning Regulations to the extent they have eliminated specified residential uses in the CDD zone or include any other changes that preclude or may preclude Plaintiff from filing applications for affordable housing on the Property.

113.    In the absence of the prohibitory injunctive relief sought by the Plaintiff herein, the Plaintiff will suffer irreparable harm for which it has no adequate remedy at law.

114.    As a direct result of the actions of the defendants to this Fourth Count as set forth above, the plaintiffs have suffered and will suffer substantial financial losses, including property taxes; lost profits; lost business opportunities; expert witness and consultant fees; attorneys' fees; and litigation costs.

Third Amended Complaint ("Comp."), Fourth Count, ¶¶ 71-114.  The Prayer for Relief includes damages and punitive damages.

Thus, Eureka's Fourth Count under the FFHA is not just that the New Regulations preclude affordable housing, but it is much broader in that Eureka alleges that the intent and/or effect of the changes, including the elimination of the specified residential uses in the CDD zone, was to prevent, preclude or otherwise interfere with affordable housing and/or to prevent or otherwise interfere with families with school-aged children from moving into and residing in Ridgefield.  Eureka seeks compensatory and punitive damages, and injunctive relief.

# ARGUMENT

## I.    PLAINTIFF'S FOURTH COUNT IS NOT MOOT BECAUSE EUREKA PRESENTS LIVE ISSUES FOR ADJUDICATION.

### A.    The Applicable Standard.

A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Blackwelder v. Safnauer*, 866 F.2d 548, 551 (2d. Cir. 1989). When asking the court to dismiss a claim as moot, the defendant carries a heavy burden and must demonstrate that it is "absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur." *Atlantic States Legal Found. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1019 (2d. Cir. 1993). *See Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). *See also* Def. Memo. at 4.

While matters outside the pleadings may be submitted in support of a motion challenging subject matter jurisdiction, Def. Memo. at 6, they are permissible only if they are "competent" evidence showing the "facts as they exist." *Global Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir. 1976).

The "voluntary cessation of allegedly illegal activities" will not render a case moot unless "'the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.' " *Granite State Outdoor Advert., Inc. v. Town of Orange,* 303 F.3d 450, 451 (2d Cir.2002) (quoting *Campbell v. Greisberger,* 80 F.3d 703, 706 (2d Cir.1996)). *See e.g. Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 579 (2d Cir. 2003) (Case was not moot because a new administration could change the interpretation of the relevant code); *Envtl Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 810 (D.C. Cir. 1983) (EPA's voluntary

withdrawal of its proposal to defer hazardous waste permits under Resource Conservation and

Recovery Act did not moot plaintiff's action for violation of Administrative Procedures Act  for

unlawfully suspending a regulation without notice or comment because EPA could repeat its

violation in the future).

The defendant's burden is a heavy one to ensure the allegedly illegal activities do not

temporarily cease only to resume after the claims have been dismissed. *Friends of the Earth, Inc.*

*v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000).   As the Supreme Court

explained:

> It is well settled that "a defendant's voluntary cessation of a challenged practice
> does not deprive a federal court of its power to determine the legality of the
> practice." *City of Mesquite,* 455 U.S., at 289, 102 S.Ct. 1070. "[I]f it did, the
> courts would be compelled to leave '[t]he defendant ... free to return to his old
> ways.' " *Id.,* at 289, n. 10, 102 S.Ct. 1070 (citing *United States v. W.T. Grant Co.,*
> 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). In accordance with this
> principle, the standard we have announced for determining whether a case has
> been mooted by the defendant's voluntary conduct is stringent: "A case might
> become moot if subsequent events made it absolutely clear that the allegedly
> wrongful behavior could not reasonably be expected to recur." *United States v.*
> *Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21
> L.Ed.2d 344 (1968). The "heavy burden of persua[ding]" the court that the
> challenged conduct cannot reasonably be expected to start up again lies with the
> party asserting mootness. *Ibid.*

*Id.* at 189.   *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288-89 (1982)

(municipality's repeal of objectionable language did not render action moot; court should decide

legality of city's actions to preclude city from merely reinstating the challenged practice at a later

time)*; United States v. Oregon State Med. Socy.*, 343 U.S. 326, 333 (1952) ( "It is the duty of the

courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform,

especially when abandonment seems timed to anticipate suit, and there is probability of

resumption.").

**B.    The Mere Filing of an Affordable Housing Application by Eureka prior to the Effective Date of the New Regulations does not Render its Fourth Count Moot.**

The Defendants make the frivolous claim that the Fourth Count is moot because Eureka filed an application for affordable housing under the old zoning regulations.  Def. Memo. at 7.  Undeniably, Eureka filed such an application and the New Regulations cannot effect it.  However, it is equally undeniable that the New Regulations will apply to any new application for affordable housing made after the May 1, 2007 effective date of the New Regulations, whether such application is occasioned by the denial of the current application, a change in the development plan for the property or otherwise.  It is commonplace in the real estate development world, including affordable housing projects, for successive applications to be made as the applicant modifies its development plan to, for example, accommodate changes requested by the commission.  *See e.g. Avalonbay Communities, Inc. v. Wilton Planning and Zoning Comm'n,* 2005 WL 2436189, at *5 (Conn. Super. Sept. 12, 2005) (NO. CV040527391) (noting similar prior applications for affordable housing on the property by plaintiff).  Thus, the mere *filing* of an affordable housing application before the effective date of the New Regulations does not and could not possibly render the claim moot.[1]

**C.    The Commission's Adoption of its Official Statement does not make the Fourth Count Moot.**

Defendants falsely assert that the Fourth Count is moot because the Commission has adopted something called an "Official Statement" that provides that the "industrial use exemption" is inapplicable to the CDD zone under the New Regulations.  *See* Def. Memo. at 8-11; Affidavit of Betty Brosius at ¶8.  While the Defendants have not provided any explanation to

---

[1] Even if this application was approved the claim would not be moot since the New Regulations apply to the Property after the May 1, 2007 effective date and govern what can be developed on the Property going forward.

the Court of what prompted the "Official Statement," or why it was issued, the record and factual

allegations before the Court on the instant Motion and in the Fourth Count include the following:

- During the hearings on Eureka's March 2005 [affordable housing] Application, the Commission challenged Eureka about its authority for applying for affordable housing under section 8-30g of the Connecticut General Statutes. In response, Eureka identified the specified residential uses in Section 410.0 G.2 (e) of Ridgefield's zoning regulations.

- The Commission proposed elimination in the New Regulations of the very language identified by Eureka as providing it a basis to proceed under section 8-30g of the Connecticut General Statutes.

- Eureka objected to the proposed changes to Section 410.0 G.2 (e) and elimination of the specified residential uses in that Section.

- Nonetheless, the Commission adopted New Zoning Regulations which eliminate all residential uses as a permitted use in the CDD zone.

- In the course of the public hearings and deliberations on the New Regulations, the Commission never stated that the new CDD zone was not an industrial zone or explained why it was eliminating the residential uses from the CDD zone.

- In *Terrar, LLC v. Town of Ridgefield Planning and Zoning Com'n*, 2006 WL 1000314 (Conn. Super. March 29, 2006) the Connecticut Superior Court ordered the Commission to adopt a new "Housing Opportunity Development" ("HOD") District pursuant to Conn. Gen. Stat. 8-30g. The Commission's New Zoning Regulations do not include the HOD zone ordered by the Court in *Terrar*.

- As of June 18, 2007, when the Commission filed its motion to dismiss the Fourth Count of the Second Amended Complaint, it was unable or unwilling to state its position on whether the CDD zone was an industrial zone under the New Regulations, notwithstanding the fact the amendments were made as part of a major revision of the Town's zoning regulations. Pursuant to Fed. R. Civ. P. 11, this pleading reflected the Commission's counsel's position "formed after inquiry reasonable under the circumstances."

  - After meeting with counsel in executive session on five occasions, the Commission adopted its "Official Statement" that the new CDD zone is not an industrial zone.

  - The Defendants have not provided any explanation of why the "Official Statement" was issued, what prompted its issuance, or otherwise provided any factual context or basis for evaluation of the statement and its import.

- The Defendants have never provided any explanation as to why the language providing for residential uses in the CDD zone was eliminated in the New Regulations, if not to create an industrial zone or at a minimum convey the appearance the new zone was an industrial zone so as to discourage or interfere with potential affordable housing applications.

- There is nothing preventing the Defendants from changing their "Official Statement" at any time in future.

- Eureka has expressly challenged the *bona fides* of the "Official Statement" in the Fourth Count.  *See* Comp. Fourth Count, esp. ¶¶92-96.

In light of the allegations in the Fourth Count, including those set forth above, on a Rule 12(b) (6) motion the Court can not blindly accept the litigation motivated "Official Statement" or conclude that the wrongful acts can not, or will not resume in the future.

Moreover, as explained above, case law is clear that mere cessation of illegal or wrongful acts, which may well be temporary, is insufficient to moot a claim based on such wrongful acts. *See Point I. A. supra.  Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 579 (2d Cir. 2003) illustrates the flaw in the Defendants' argument.  *Tsombanidis* involved an alleged discriminatory interpretation of the Fire Code by the West Haven Fire Department.  At trial the fire inspector testified that he had changed the interpretation of the fire code so that, in the future, the plaintiff, a group home for recovering alcoholics and drug addicts, would be excluded from fire safety requirements for lodging and rooming houses, and all enforcement efforts would cease as long as the home was occupied by no more than seven residents.  The defendant then argued that this testimony rendered the action moot.  The Second Circuit rejected this argument, concluding that "[t]he Fire District has not met its heavy burden because the interpretation of the code might change again -- for example, upon a change in the State Fire Marshal's administration."  *Id.* at 574.

In evaluating claims of mootness, Courts examine the totality of circumstances, not just statements prepared in the wake of litigation. *See* Point I. *A. supra.* As noted, in its Fourth Count Eureka alleges a lengthy series of facts demonstrating the Commission's intent to interfere with and/or preclude affordable housing. This includes the Commission's elimination of a Housing Opportunity District under Section 8-30g that was court ordered just 12 months before the Commission adopted the New Regulations. Comp. Fourth Count, esp. ¶¶ 90-91. If the Commission had no problem deleting a Court ordered affordable housing district from its New Regulations, it can be expected to have little problem changing its "Official Statement" on the industrial zone exemption when such a change suits its needs. Thus, the mere reference to something called an "Official Statement," in the face of the litany of factual allegations by Eureka regarding the Defendants' intent and the effect of their actions, does not satisfy the Defendants' heavy burden that the wrongful conduct will not resume or resurface after the litigation ends. *Envtl Def. Fund, Inc.,* 713 F.2d at 810; *Tsombanidis*, 352 F.3d at 574. A controversy over an agency's illegal acts remains justiciable if the actions are capable of repetition and the "complaining party could be subjected to the action again." *Envtl. Def. Fund*, 713 F.2d at 810 (quoting *Weinstein v. Branford*, 423 U.S. 147, 149 (1975)).

Defendants reliance on *Kaufman v. Zoning Comm'n of Danbury,* 232 Conn. 122, 142 (1995) is misplaced. (Def. Memo. at 10.) In the context of a zoning appeal of a denial of an affordable housing application, the Connecticut Supreme Court in *Kaufman* found that a zoning commission could not, at a later time, supplement the reasons for denial to its collective statement. *Id.* at *142-43. Kaufman* has absolutely no bearing on the Commission's ability to change its "Official Statement," which was not rendered in the context of any filed application or decision on any such application, but instead is intended to extricate itself from litigation.

Furthermore, a case or controversy remains justiciable if a court can redress plaintiff's injuries, even if nominally. *Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 140 (2d Cir. 1994). Here, Plaintiff has requested damages, punitive damages and injunctive relief. The Defendants have made no showing that an award of compensatory or punitive damages is not viable on the Fourth Count. Moreover, "it is now well established that if [plaintiff] can prove that he was deprived of a constitutionally protected right, and if defendants are not able to establish a defense to that claim, [plaintiff] will be entitled to recover at least nominal damages. *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir.1986) citing *Carey v. Piphus,* 435 U.S. 247 (1978). Thus, even if Defendants were bound to follow the Official Statement, a questionable proposition, nominal damages are available for Defendants' violation of constitutionally protected rights under the FFHA, preventing application of the "mootness doctrine" to the claim. Eureka also has the right to pursue punitive damages.

Finally, it is well settled that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *U.S. v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953);  *Hecht Co. v. Bowles,* 321 U.S. 321, 327 (1944); Goshen *Mfg. Co. v. Hubert A. Myers Mfg. Co.*, 242 U.S. 202, 207 (1916). The purpose of an injunction is to prevent future violations. *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928). Thus, the voluntary cessation of illegal actions, which may well be temporary, does not bar an injunction against further violations.

## II.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE EUREKA STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.    The Applicable Standard on a Rule 12(b) (6) Motion to Dismiss.

In determining a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b) (6), the court must accept all facts alleged by the plaintiff in the complaint as true and draw all inferences in favor of the plaintiff. *Global Network*

*Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2006). To dismiss, it must "appear []
beyond doubt, even when the complaint is liberally construed, that 'the plaintiff can prove no set
of facts in support of his claim which would entitle him to relief.'" *Id*. (quoting *Conley v.
Gibson*, 355 U.S. 41, 45-46 (1957)). *See also* Def. Memo. at 4.

Evidentiary materials outside the pleadings *cannot* be introduced on a Rule 12(b) (6)
motion to dismiss. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155-
57 (2d Cir. 2006); Def. Memo. at 6.

**B.      The Defendants Improperly Rely on Matters Outside the Record to Support
Their Rule 12(b) (6) Motion.**

Defendants concede that any evidentiary materials outside the pleadings cannot be
introduced on a Rule 12(b) (6) motion to dismiss. *Id*. Nonetheless, the Defendants' first
argument in support of their Rule 12(b (6) motion is that "the 'Official Statement' prevents the
Commission from relying on the New Regulations to preclude affordable housing in the CDD
zone. . . ." *Id.* at 11. The Court should disregard the materials outside the pleadings when
considering the motion to dismiss or convert the motion to one for summary judgment, deny the
motion, and permit full briefing on the issue in the context of a summary judgment motion which
fully complies with the Federal and local rules. *Global Network Commc'ns*, 458 F.3d at 155-57.
*See also infra* at 21-22.

**C.      Connecticut Law is Uncertain Regarding the Industrial Use Exemption.**

Defendants assert that the Commission has no legal basis to apply the industrial use
exemption to properties in the CDD zone because the law is clear that the "industrial use
exemption" does not apply. Def. Memo. at 11-12. The principal problem with the Defendants'
argument, however, is case law construing the "industrial use exemption" is sparse and it is
therefore uncertain what is or will be Connecticut law on this issue.

Pursuant to Conn. Gen. Stat. §8-30g (g), the burden shifting contemplated by the statute on affordable housing applications will not occur if "the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses . . . ." Here, the Commission has eliminated all residential uses from the CDD zone and by its express terms the CDD zone includes industrial uses. Comp., Fourth Count, ¶¶72, 76, 85-89, 108-111; Def. Memo. at 13-14.

The only case containing any substantive analysis of the "industrial use exemption" is an *unpublished* Connecticut Superior Court decision, *Jordan Properties, LLC v. Old Saybrook Zoning Comm'n* , 2003 Ct. Sup. 11935 (J.D. New Britain, 10/31/2003) (Judge Tanzer). *See* Def. Memo at 12.[2] In *Jordan*, the Commission, in an effort to avoid an affordable housing project, maintained that Old Saybrook's B-2 Shopping Center Business District was in fact an industrial zone. The Court disagreed, in part because of the existence of two specifically designed industrial zones in Old Saybrook's regulations. By contrast, there is no specifically designated industrial zone in Ridgefield, which bolsters Eureka's argument that the CDD zone under the New Regulations, which was formally Ridgefield's IL 40 light industrial zone, and which includes industrial uses, is an industrial zone. *Jordan* further illustrates how a zoning commission can claim that a zone is an industrial zone in an effort to avoid affordable housing.

While the Defendants suggest the law is clear regarding the "industrial use exemption" (Def. Memo. at 12), if true, then why did the Commission, in its original companion motion to dismiss, refuse to adopt the Town Defendants' position to that effect at that time, stating:

> "the Defendant Commission has not had an affordable housing application filed
> with it subsequent to the adoption of the new regulations for property located

---

[2]   Defendants also cite to dicta in *JPI Partners, LLC v. Planning and Zoning Board*, 259 Conn. 675, 692 (2002), where the court determined the "industrial use exemption" could not be invoked for the first time by a commission on appeal. Def. Memo. at 12.

within the Corporate Development District ("CDD") Zone and, accordingly, has not had an opportunity to take any formal position on the exclusive industrial zone exemption issue."

*See* Defendants' Memorandum in Support of Motion to Dismiss at 2 (Docket No.132). [3]

Similarly, if the law is so clear why did the Commission require five meetings with its counsel in executive session before issuing its "Official Statement"? Finally, how can the Defendants suggest the law is clear when no Connecticut appellate court has interpreted the industrial zone exemption? Given the uncertainty regarding the "industrial use exemption," the Defendants' premise that the Commission has no legal basis for arguing the industrial use exemption is entirely self-serving and unsubstantiated. The Defendants have not established that "there are no set of facts in support of plaintiff's claim which would entitle plaintiff to relief." *Conley,* 355 U.S. at 45-46.

> **D. Eureka's claim does not require a finding that the New Regulations preclude affordable housing, as its claim is also predicated on the intent and effect of the change in the regulations on affordable housing.**

The Defendants mischaracterize Eureka's claim as being dependent upon a finding that the New Regulations preclude it from filing an affordable housing application. Def. Memo at 9. In fact, Eureka's claim is much broader and directly implicates (i) the intent of the Commission in making the changes to the CDD zone and (ii) the effect of those changes, which at a minimum were intended to and will have a chilling effect on affordable housing applications. *See e.g.* Third Amended Complaint, Fourth Count, esp. ¶¶ 78, 92-96; 42 U.S.C. §3617; 42 U.S.C.

---

[3] This Commission's initial refusal to state whether the new CDD zone was subject to the industrial use exception was remarkable given that in 2005 the Commission challenged Eureka about whether Ridgefield's CDD regulations permitted Eureka to apply for affordable housing under section 8-30g of the Connecticut General Statutes; Eureka responded by referencing the language in Section 410.0 G.2 (e) of the regulations that permitted specific residential uses in that zone; and in the New Regulations the Commission deleted that very language from the CDD zone as part of a comprehensive re-write and re-organization of the Town's zoning regulations. *See e.g.* Third Amended Complaint, Fourth Count, ¶¶ 72, 78, 92-95. Thus, the suggestion that the Commission did not know its position on whether the CDD zone is an industrial zone under the New Regulations was ludicrous, and its initial refusal to articulate that position further evidences that its "Official Statement" is entirely litigation motivated.

§3604(a); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2d. Cir. 1988) (discriminatory zoning restrictions.); *Tsombanidis*, 352 F.3d at 573 (Discrimination can be established under three available theories: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation).

For example, even if the Court were to eventually conclude that the new CDD zone is not an industrial zone, Eureka could still prevail on its claim by establishing that the amendments were intended to interfere with affordable housing or have that effect. Put differently, assuming *arguendo* that the Commission did not succeed in creating an industrial zone, it intended to create the appearance of an industrial zone in order to interfere with affordable housing applications. Section 3617 of the FFHA states:

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, on or account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

Thus, *any* interference with a constitutionally protected right supports a claim under the FFHA. *E.g. Wilkey v. Pyramid Constr. Co.*, 619 F.Supp. 1453, 1453-54 (D.Conn. 1985) (Court denied property owner's motion to dismiss a former secretary's Section 3617 claim premised on her unwillingness to adhere to the property owner's discriminatory policy not to rent to black applicants); *Stewart B. McKinney Found. v. Town Plan and Zoning Comm'n of Fairfield*, 790 F.Supp. 1197 (D.Conn. 1992) (Court granted a preliminarily injunction under Section 3617 (and other provisions) in favor of the Plaintiff, a nonprofit corporation, based on claims the town zoning commission's requirement that Plaintiff obtain a special exception for its intended use of two-family residence as home for HIV-infected persons constituted a discriminatory housing practice in violation of the FFHA and other acts).

At bottom Eureka's claim is that the Commission created an industrial zone, or at a minimum it intended that owners of CDD zoned property believe the Commission did so. Either way its actions were intended to preclude or interfere with affordable housing, constitutes interference with constitutionally protected rights under the FFHA, and the Fourth Count can not be dismissed on a Rule 12(b) (6) motion.

**E.    Defendants' Rule 12(B) (6) motion is improper because it requires the Court to decide the substantive merits of the claim, not whether a claim has been stated.**

Rule 12(b) (6) motions are *not* intended to serve the function of resolving disputes on the merits. Rather, they are to serve the very limited purpose of testing "the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc.*, 458 F.3d. at 155 (emphasis in original). Underscoring the distinction between a Rule 12(b) (6) motion and a motion for summary judgment is the fact that while "the mere allegation of the existence of [a fact] would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment [, which] is designed to pierce the pleadings [and] flush out those cases that are predestined to result in directed verdict." *Id.* (internal quotations omitted).

Here, Eureka has alleged that CDD zone under the New Regulations is an industrial zone and the Commission intended to interfere with or preclude affordable housing, fact based determinations requiring the Court to weigh the evidence. The Defendants are improperly asking the Court to resolve the merits of this fact driven claim, about which substantial legal and factual questions must be resolved, in the context of a Rule 12(b) (6) motion. This is not the function of

Rule 12(b) (6).  Moreover, the Motion does not address the totality of Eureka's claim, including its allegations regarding the intent and effect of the regulation changes.

In addition, when materials outside the pleadings are submitted in support of a 12(b) (6) motion, the Court has two options: (1) exclude the materials or (2) convert the motion into a Rule 56 motion for summary judgment.  *Kopec v. Coughlin II*, 922 F.2d. 152, 155 (2d. Cir. 1991). The conversion requirement is mandatory.  *Global Network Commc'ns.*, 458 F.3d. at 155.  There are two exceptions to the rule: (1) materials integral to the complaint, and (2) materials subject to judicial notice.  *Id.* at 156.  Under the judicial notice exception, the court may, in its discretion, entertain material subject to judicial notice as provided in Rule 201 of the Federal Rules of Evidence.  However, it may do so only to establish its existence of those facts, not for the truth of the matter asserted.  *Id.* at 157.  Once the Court is asked to evaluate the merits of the case the motion should be converted to one for summary judgment.  In that event, the Court should provide notice to the parties that it is converting the motion to one for summary judgment, deny the motion, and permit discovery and full briefing on the issue.  *Id.* at 155-57.

<u>**CONCLUSION**</u>

For these reasons, the Defendants' motion to dismiss should be denied.

THE PLAINTIFF

By:      /s/ Matthew C. Mason
         Matthew C. Mason (ct 15291)
         Gregory and Adams, P.C.
         190 Old Ridgefield Road
         Wilton, CT 06897
         (203) 762-9000 (Tel.)
         (203) 834-1628 (Fax)
          mmason@gregoryandadams.com

## <u>CERTIFICATION</u>

I certify that on December 14, 2007 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


<u>/s/ Matthew C. Mason</u>
Matthew C. Mason (ct15291)
Gregory and Adams, P.C.
190 Old Ridgefield Rd.
Wilton, CT 06897
(203) 762-9000
Fax: (203) 834-1628
E-mail: mmason@gregoryandadams.com