UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| EUREKA V LLC | : |
| | : |
| | : |
| v. | : CIV. NO. 3:02CV356 (HBF) |
| | : |
| THE TOWN OF RIDGEFIELD, THE | : |
| BOARD OF SELECTMEN OF THE | : |
| TOWN OF RIDGEFIELD, THE BOARD | : |
| OF FINANCE OF THE TOWN OF | : |
| RIDGEFIELD, THE ECONOMIC | : |
| COMMISSION OF THE TOWN OF | : |
| RIDGEFIELD, THE BENNETT'S | : |
| FARM DEVELOPMENT AUTHORITY, | : |
| and BARBARA SERIFILIPPI, | : |
| IN HER OFFICIAL CAPACITY AS | : |
| THE TOWN CLERK OF THE TOWN | : |
| OF THE TOWN OF RIDGEFIELD | : |
| | : |

RULING ON PENDING MOTIONS

Pending before the Court are several motions, including defendants' motion for judgment [Doc. #266], plaintiff's motion for permission to file supplemental memorandum in opposition to motion for judgment and in support of motion to amend complaint [Doc. #289], and plaintiff's motion to amend/correct the amended complaint [Doc. #291]. At the outset, the Court terminates as moot plaintiff's motion for permission to file supplemental memorandum in opposition to motion. [Doc. #289]. The arguments set forth in the supplemental memorandum are duplicative of those set out in the motion to amend, which arguments have been duly considered by the Court in deciding the motion for judgment.

This is an action filed in February 2002 to enjoin the defendants from taking by eminent domain the plaintiff's real property in Ridgefield, CT and implementing the Bennett's Farm Corporate Park Preliminary Project Plan ("Project Plan").[1] [Doc. #154, Third Amended Complaint; Doc. #210, Mem. of Dec. Summary Judgment]. Plaintiff, a real estate developer and owner of 155 acres of property located in the South Parcel of the Bennett's Farm Property ("BFP"), makes allegations concerning the defendants' proposed taking of the South Parcel and/or efforts to implement the Project Plan. In its Third Amended Complaint, filed on October 17, 2007, plaintiff asserted four claims against defendants:

- Count One, to enjoin implementation of the Bennett's Farm Preliminary Project Plan pursuant to Conn. Gen. Stat. Chapter 132.
- Count Two, to enjoin taking by eminent domain of the South Parcel;
- Count Three and Count Four, violations of the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617.

Count Three alleged that defendants' use of eminent domain violated federal law in that it prevented families from moving into the Town of Ridgefield or sought to prevent the perceived fiscal consequences of these families moving into Ridgefield. Count Four alleged that by eliminating the specified residential uses from the Corporate Development District, the Town sought to

---

[1]   A full recitation of the facts can be found at Judge Squatrito's Memorandum of Decision and Order on the defendants' Motion for Summary Judgment. [Doc. #210].

interfere with and preclude future applications for affordable housing on the property.

Defendants' motion for summary judgment on all counts was granted in part and denied in part by Judge Squatrito in February 2011. [Doc. #210]. More specifically, Judge Squatrito granted summary judgment as to Counts Three and Four of the Complaint, and denied summary judgment as to Counts One and Two. On May 20, 2011, the parties filed a joint trial memorandum [Doc. #231] and, shortly thereafter, the case was transferred to the undersigned for all further proceedings [Doc. #236]. On June 6, 2011, a bench trial was tentatively scheduled to begin on October 3, 2011. [Doc. #244]. On September 2, 2011, defendants filed a sealed offer of judgment in which defendants agreed to the entry of injunctive relief on Counts One and Two without conceding liability. [Doc. #257]. Plaintiff rejected the offer on September 7, 2011. [Doc. #261]. On September 12, 2011, defendants subsequently moved for judgment on Counts One and Two. [Doc. #266]. On February 7, 2012, while the motion for judgment was pending, plaintiff filed a motion to amend/correct complaint. [Doc. #291]. First, the Court addresses the plaintiff's motion to amend/correct the complaint.

I.    **RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND/OR SUPPLEMENT THE THIRD AMENDED COMPLAINT [DOC. #291]**

Nine years after this action was filed, three and a half years after the Third Amended Complaint was filed, two and a half years after the withdrawal of the Project Plan, seven months after a summary judgment ruling, and four months after the parties submitted their joint trial memorandum and evidentiary objections, plaintiff now seeks to amend its complaint in several ways. First, it seeks to add allegations regarding the Town's consideration of and vote to appropriate funds to purchase an unrelated property from Schlumberger Technology Corp. ("Schlumberger property"). Plaintiff maintains that the Town's "collective motive" for acquiring this property is to prevent affordable housing development and argues that the "parallels between the Defendants' efforts to take Eureka's property by eminent domain and the Defendants' acquisition of the Schlumberger property are striking". [Doc. #291-1]. Second, plaintiff seeks to add allegations concerning defendants' alleged plans to pursue a moratorium against the filing of applications under Connecticut's Affordable Housing Appeals procedure. Plaintiff argues that this moratorium "may apply to Eureka's site plan applications and could deprive Eureka of the burden-shifting benefits of Connecticut's affordable housing statute". [Doc. #291-1 at 3]. Third, plaintiff seeks to add allegations concerning the Town's withdrawal of the Project Plan

4

in 2009, within weeks of the case becoming trial ready. Fourth, plaintiff seeks to expand the injunctive relief sought and to add a declaratory judgment count pertaining to the Town's future actions vis-à-vis affordable housing on Eureka's property.

Defendants oppose plaintiff's motion to amend, arguing that the amendments should be denied as improper, futile and unduly prejudicial. Defendants argue that Eureka is seeking to amend "because Eureka is desperately looking for a way to force trial so that it can have an opportunity for a finding of bad faith to somehow be used as a sword against land use boards that are not even parties to this lawsuit." [Doc. #275 at 4]. In support of their opposition, defendants have provided the affidavit of First Selectman Rudolph P. Marconi. [Doc. #298-1 at 13-18].

### A.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) provides that any time after a responsive pleading is served, a party must seek leave from the court to amend a pleading. Fed. R. Civ. P. 15(a). Rule 15(a)(2) specifically states that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, in Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court stated that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. . . . ." Id. at 182.

Federal Rule of Civil Procedure 15(d) provides that the "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint." Scottish Air Int'l, Inc. v. British Caledonian Group, 751 F. Supp. 1129, 1133 (S.D.N.Y. 1990), rev'd on other grounds, 945 F.2d 53 (2d Cir. 1991) (citations omitted). "Matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading." Id. at 1133 (citing 3 Moore's Federal Practice ¶15.16[3], at 15-183 (2d Ed. 1989)). See also Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d. Cir. 1995) ("[L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.") (citations omitted).

The decision to grant or deny a Rule 15(a) motion to amend or a 15(d) motion to supplement is within the sound discretion of the district court. Foman, 371 U.S. at 182; Scottish Air, 751 F. Supp. at 1133.

**B.    DISCUSSION**

**1.    Undue delay, bad faith, or dilatory motive, failure to cure**

**a)    *Schlumberger property***

Plaintiff, faced with an offer of compromise and motion for judgment which would resolve all remaining claims, seeks to add over twenty new factual allegations concerning the Town's effort to purchase the Schlumberger property. Plaintiff argues that public records from 2011 show that the Town's intent in acquiring the Schlumberger property was to stop a potential 290-unit affordable housing development.

The allegations concerning the Schlumberger property, even if taken as true, have no relation to the plaintiff's case over the BFP. Plaintiff has absolutely no stake in the Schlumberger property, or standing to assert claims against the Town with respect to the acquisition of the Schlumberger property. Factually, the Town's actions with regard to the BFP and the Schlumberger Property are also distinguishable; the Town sought to purchase the Schlumberger Property versus the Town's effort to take by eminent domain the South Parcel of the BFP. Further, as First Selectman Marconi states in his declaration, the Schlumberger property differs from the BFP in size, location and intended use. [Doc. #298-1 at 15-16].

Moreover, the Court granted defendants summary judgment on the Fair Housing Act claims, further narrowing the scope of

claims and evidence to be considered at trial. Specifically, Judge Squatrito held that the defendants' conduct in trying to use eminent domain to implement the Project Plan and in creating the New Regulations failed to have a disparate impact on families with school-age children. The Court further examined statements by "members of the Decision-making body, minutes of its meetings, or reports" to determine whether invidious discrimination was a motivating factor in the Town's decision [Doc. #210 at 38] and found that plaintiff failed to establish a link between those statements and "evidence that animus against families with school-age children was a significant factor in the decision of the Defendants to seek to take the Bennett Farm Property by eminent domain or to implement the New Regulations." [Doc. #210 at 38]. The plaintiff's attempt to resurrect Counts Three and Four, by inserting allegations over an unrelated property which the Town sought to purchase, is improper.

Plaintiff argues that these additional allegations are related in that the public records discussing the Schlumberger acquisition specifically reference the Bennett's Farm Property and the resulting litigation.  Indeed, public officials and residents in their discussions over the potential acquisition of the Schlumberger property do reference the BFP. Neither the town nor its officials are precluded from drawing on their experience with the BFP when confronted with issues over real property. Any

comments about affordable housing developing on the Schlumberger property have no bearing on the outcome of this case, especially now that the Fair Housing claims are dismissed. The Court finds that the Schlumberger property allegations are unrelated and brought by plaintiff in bad faith to unnecessarily delay the disposition of this case.

### b)    *Withdrawal of Project Plan*

Plaintiff seeks to add allegations pertaining to the defendants' withdrawal of the Project Plan in April of 2009. Plaintiff argues that the Town's justification for withdrawing the Project Plan -that the Connecticut legislature amended the statute governing municipal project plans- was a sham because the amended statute was not retroactive to plans in existence. Rather, plaintiff argues, the withdrawal of the Project Plan was entirely litigation motivated and designed to allow defendants to argue that Eureka's claims were moot, further undermining Eureka's affordable housing project.

Setting aside the Town's motivation for the withdrawal of the Project Plan, plaintiff's effort to add events that took place three years prior to its motion to amend cannot be sanctioned by this Court. Even if plaintiff's theory were true, it has not offered any justification for the delay in seeking to amend the complaint. Plaintiff's effort to insert allegations three years after they occurred, when faced with the prospect of

a full resolution of the case, is no more supportable than plaintiff's contention that defendants' withdrawal of the Project Plan was done in bad faith.

In light of the defendants' proffer that the Project Plan was withdrawn in response to the Connecticut legislature's amendment of C.G.S. §8-189, and because the Project Plan was seven years old and the declining economy had changed the Town's desire to pursue the plan as originally conceived [Doc. #298-1, Marconi Dec. at 16-17, ¶ 11], this proposed allegation does not add much to the plaintiff's case on the Town's motivation. Defendants' willingness to consent to the entry of an injunction prohibiting the taking of the property for any reason for ten years undercuts the claim that defendants' withdrawal of the Project Plan was done in bad faith. The Court finds that the allegations over the withdrawal of the Project Plan are unduly delayed and brought by plaintiff in bad faith to unnecessarily delay the disposition of this case.

### c)   *Affordable Housing Moratorium*

Plaintiff seeks to supplement its complaint by citing the Town's effort to qualify for a moratorium pursuant to Conn. Gen. Stat. § 8-30g(1). Plaintiff argues that

> Eureka's site plan application would be filed under
> Connecticut's Affordable Housing Appeals procedure,
> Connecticut General Statute § 8-30g, and the Defendants
> likely would claim it is covered by the moratorium. This is

yet another flagrant attempt by the Defendants to delay or stop Eureka's affordable housing development.

[Doc. #291 at 5, ¶13].

Defendants counter that in the summer of 2011, aware that other municipalities had qualified for a moratorium, the Town sought to avail itself of the statute which allows "a municipality to apply for a moratorium if 2% of its housing stock qualifies as affordable housing". [Doc. #298-1 at 17, ¶ 13]. Notably, defendants attest that "at no time did the Town believe or intend, and the Town does not now believe or intend, that a future moratorium could affect Plaintiff's affordable housing plans with respect to the Eureka Property." [Id. ¶ 14]. Any concerns of bad faith on the part of the defendants are allayed by the Town's willingness to consent to a judgment providing that any such moratorium could not be applied to land use applications filed, or to be filed, in connection with the development of the Eureka Property. The Court finds that the request to add allegations concerning the affordable housing moratorium are speculative and brought by plaintiff to unnecessarily delay the disposition of this case.

###### d)   Additional Injunctive Relief and Declaratory Judgment Count

Plaintiff seeks to add claims for additional injunctive relief and an additional count for declaratory judgment. Plaintiff seeks a list of declarations, including that defendants were and are unalterably opposed to Eureka's affordable housing plans; defendants acted in bad faith and for the improper purpose of stopping affordable housing on Eureka's property; the defendants abused the sovereign power of eminent domain in seeking to take Eureka's property to stop affordable housing; the defendants concocted a facially valid but pretextual basis to take the property by eminent domain; the defendants violated Eureka's Fifth and Fourteenth Amendment rights; the defendants' history of misconduct includes the withdrawal of the Project Plan, the statements and actions in acquiring the Schlumberger property, and the proposed Affordable Housing Moratorium; the defendants do not have the right to utilize eminent domain to take the South Parcel for any reason; the defendants must negotiate in good faith any and all inter-municipal agreements required for Eureka to complete its affordable housing project; and the defendants must exercise good faith in all future dealings with Eureka concerning its affordable housing project.

The additional injunctive relief sought and all but a few declarations relate back to facts in existence when the case was

filed in 2002. Plaintiff has not offered any reason for the failing to add these allegations or this additional count earlier or any excuse for the undue delay. Thus, as stated previously, given the history of this case, the Court is led to conclude that plaintiff's intent in adding the additional claims for relief is dilatory.

## 2.   Undue Prejudice

The Court finds that permitting the plaintiff's proposed amendment would unduly prejudice the defendants. "In gauging prejudice, we consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993)). "Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" Ruotolo, 514 F.3d at 192 (quoting State Teachers Retirement Bd v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where

"the amendment will not involve a great deal of additional discovery")).

Here, plaintiff had the benefit of reviewing and rejecting defendants' offer of compromise, in which defendants agreed to the entry of injunctive relief without conceding liability, and then reviewing and opposing the defendant's motion for judgment. When faced with the possibility of a case that has resolved or become moot, plaintiff sought to insert unrelated allegations and an additional cause of action for declaratory relief that could have been brought at the inception of this case or, at the latest, prior to the filing of dispositive motions.

Plaintiff's new allegations and cause of action come on the eve of this Court's ruling on defendants' motion for judgment which, as set forth below, disposes of the case. Not only would allowing the amendment require defendants to conduct discovery on the facts alleged and new claims asserted, it would further delay the disposition of this case, which the Court deems resolved in light of defendants' willingness to consent to the relief sought by plaintiff. See AEP Energy Servs. Gas Holding Co. v. Bank of Am., 626 F.3d 699, 725-727 (2d Cir. 2010) (prejudice resulting from proposed amendment is among most important reasons to deny leave to amend; leave was properly denied when impact of added claim would have been substantial, delaying resolution of dispute and requiring defendant to expend

14

significant additional resources to defend). The Court cannot fathom a greater prejudice to a non-moving party, especially in light of this Court's intention to grant the motion for judgment.

For these reasons, the Court finds that the amendments proposed are futile, unduly delayed, brought in bad faith and would unduly prejudice the defendants. As such, the Court denies plaintiff's motion to amend its complaint to add allegations concerning the Schlumberger property, the moratorium, and the withdrawal of the Project Plan; an additional count for declaratory relief; and additional requests for injunctive relief.

## II.  RULING ON DEFENDANTS' MOTION FOR JUDGMENT [DOC. #266]

Defendants move for judgment on Counts One and Two. [Doc. #266].  Defendants argue that the Court has the authority to enter an injunction in favor of Eureka without making underlying findings of liability, and contends that this offer exceeds the relief that Eureka could obtain if it prevailed at trial.  In the alternative, if the Court is not inclined to enter judgment, defendants request an evidentiary hearing on the issue of whether this case is moot in light of the fact that the Project Plan has been withdrawn, there is no evidence that the Town of Ridgefield has any intention of taking Eureka's property, and the Ridgefield Planning & Zoning Commission has approved affordable housing for Eureka's property.

As set forth earlier, defendants filed a sealed offer of judgment on September 2, 2011, in which defendants agreed to the entry of injunctive relief without conceding liability.  Plaintiff rejected the offer on September 7, 2011. [Doc. ##257, 261].  Defendants now request that the Court enter judgment in accordance with that offer of judgment.  A bench trial scheduled for October 3, 2011, was continued in light of this pending motion. [Doc. ##244, 269].

**A. <u>Counts One and Two: Relief Sought</u>**

In the joint trial memorandum, plaintiff made the following statement regarding the nature of each cause of action and the relief sought. [Doc. #231 at 3-4].

> Simply put, this is an action, <u>inter alia</u>, to: (i) enjoin the Town Defendants[2] from implementing the Bennett's Farm Corporate Park Preliminary Project Plan (First Count) and (ii) enjoin the Town Defendants from taking by eminent domain the Plaintiff's 153± acre property located in Ridgefield, Connecticut (Second Count).
>
> In Count One, plaintiff alleges that the Town Defendants' proposed implementation of the Preliminary Project Plan violates §§7-136 and 7-148 and Chapter 132 of the General Statutes, does not constitute a bona fide plan for a municipal development project, constitutes a bad faith exercise of the authority granted to municipalities by these statutes, and is unreasonable and unnecessary.   In Count Two, plaintiff alleges that the intended condemnation of the parcel violates the Fifth and Fourteenth Amendments to the United States Constitution and Article First, §11, of the Connecticut Constitution, in that it is not being carried out to serve a public use, and that the intended condemnation constitutes a bad faith, unreasonable and unnecessary exercise of the eminent domain power.
>
> The Plaintiff seeks (a) a <u>permanent injunction</u>, whereby the Town Defendants, and

---

[2]   The "Town Defendants" are the Town of Ridgefield, its Selectmen, Board of Finance, and Economic Development Commission ("EDC"), the Bennett's Farm Development Authority ("BFDA"), and Barbara Serfilippi, the Ridgefield Town Clerk.   The other defendant is the Planning and Zoning Commission of the Town of Ridgefield (collectively with the Town Defendants the "Defendants").

> their agents, representative, employees and
> assigns, are permanently enjoined and
> restrained from implementing the "Bennett's
> Farm Corporate Park Preliminary Project
> Plan" as adopted by the BFDA on February 6,
> 2002 and the legislative body of Ridgefield
> on February 13, 2002; (b) a <u>permanent
> injunction</u>, whereby defendants, and their
> agents, representatives, employees and
> assigns, are enjoined and restrained from
> taking any actions in furtherance of taking
> the property by eminent domain; and (c) any
> such additional relief as the Court deems
> just and proper.

[Doc. #231 at 3-4 (emphasis in original)].[3]

In the Third Amended Complaint, the prayer for relief tracks the language included in the joint trial memorandum above. [Third Amend. Compl., Prayer for Relief (e), Doc. #154 at 41-42].

Count Two at paragraph (f) seeks a permanent injunction to enjoin and restrain defendants, their agents, representatives, employees and assigns from taking any of the following actions with respect to the South Parcel "in furtherance of its taking by eminent domain."[4]

---

[3]   Eureka states in its memorandum in opposition to defendants' motion for judgment, "In essence, the First Count seeks preliminary and permanent injunctive relief to stop implementation of the Project Plan and the Second Count seeks preliminary and permanent injunctive relief to enjoin Ridgefield from taking the South Parcel." [Doc. #271 at 9].

[4]   Count Two of the Third Amended Complaint, entitled "To Enjoin Taking by Eminent Domain of the South Parcel," incorporates by reference all the allegations of the First Count. [Doc. #154 at 34]. Plaintiff alleges in Count Two, among other things, that defendants' "intended condemnation of the South Parcel" violates the law, in that the condemnation is not

(i)  filing a statement of compensation or a deposit with the Clerk of the Superior Court pursuant to Conn. Gen. Stat. §§7-136, 7-148, 8-129, 8-130, 8-193, or Chapters 132 or 588;

(ii) recording such a statement of compensation in the office of the Ridgefield Town Clerk;

(iii)filing a return of notice with the Clerk of the Superior Court;

(iv) obtaining a certificate of taking from the Clerk of the Superior Court;

(v)  recording a certificate of taking in the office of the Ridgefield Town Clerk; or

(vi) any other action to take the referenced property by eminent domain.

[Third Amend Compl., Prayer for Relief (f), Doc. #154 at 42].

---

being carried out to serve a public use or purpose, in one or more of the following respects: (a) the Project Plan violates Connecticut law, does not constitute a bona fide plan and violates plaintiff's rights to procedural due process; (b) "even if the Project Plan complied procedurally with applicable law," defendants seek to turn over the South Parcel to a private developer or business in preference to plaintiff for private business use; . . . (d) "the prevention of affordable housing is not a proper purpose;" (e) "the exclusion from the Town of Ridgefield of . . . housing for families with school-aged children is not a proper purpose;" . . . [Doc. #154 ¶105]; and defendants' intended condemnation constitutes bad faith and unlawful exercise of municipal power of eminent domain because "the preparation, review and approval of the Preliminary Project Plan were a sham and an unlawful pretext to take control of the property from Eureka and stop its development and affordable housing plans." [Doc. #154 ¶106 (e)].

On April 3, 2009, the EDC withdrew the Project Plan and, at a Special Town Meeting on April 14, 2009, Ridgefield's residents voted to withdraw the Project Plan. [Doc. #231 at 4].

Pending State Court Appeal

On April 25, 2007, Eureka filed an application with the Ridgefield Planning and Zoning Commission (the "2007 Application"). Pursuant to Connecticut General Statute §8-30g, Eureka sought approval of a zoning text amendment and map, to add a Housing Opportunity Development Zone ("HOD Zone") to the Ridgefield Zoning Regulations and change the zone of the subject property from a Corporate Development District ("CDD Zone") to the HOD zone. Id. at 2010 WL 4609391, *1.   Eureka submitted a conceptual site plan for development of the property, but did not request site plan approval.[5] Id. at 2010 WL 4609391, *1.   On February 12, 2008, the Ridgefield Planning and Zoning Commission agreed to amend the zoning map to show properties designated as eligible for the Housing Opportunity Development ("HOD") Overlay

---

[5]    Originally, the site plan depicted 509 homes on the 153 acres, with a proposed density of 14 homes per acre. Id. at 2010 WL 4609391, *1. On November 13, 2007, after public hearing the Commission approved a modified proposed HOD regulation, a modified proposed change to the State Plan of Conservation and Development and denied the application for a zone change because the HOD Zone Regulation approved by the commission was an overlay zone.  2010 WL 4609391, *1. On December 6, 2002, Eureka resubmitted a modified application for changes to the HOD Regulation and for a change to the zoning map adding an overlay zone on top of the existing CDD Zone.  2010 WL 4609391, *2.

Zone with modifications of the HOD Zone Regulations.[6] <u>Eureka v. Ridgefield Planning and Zoning Commission</u>, No. CV084018175S, 2010 WL 4609391, *1 (Conn. Super Ct. Oct. 20, 2010). Eureka appealed to the Connecticut Superior Court. <u>Id.</u> at 2010 WL 4609391, *1. The subject of the Superior Court appeal was limited to the zoning text and map amendment in response to the Commission's modifications to Eureka's resubmitted application.[7] <u>Id.</u> On October 20, 2010, the Court ruled in favor of the Commission in precluding development of housing or sewer within the Saugatuck Watershed land.[8] The Court found in favor of

---

[6]     Specifically, the Commission's response to Eureka's resubmission: "(1) set a maximum density of two dwellings per acre and prohibited development in the Saugatuck Watershed; (2) made no change to the commission's original approval of the utilities section which required all dwelling units within the HOD to be served by the Town of Ridgefield public water and sewer and prohibited the placement of sewer lines within the Saugatuck Watershed; (3) set the maximum percentage of three bedroom units at 30% and barred three bedroom units; (4) made no change to the original seventy percent age restriction; and (5) made no change to the originally required one hundred foot side and rear set backs." 2010 WL 4609391, *2.

[7]     "Specifically, Eureka challenge[d] the commission's decision with respect to five issues: (1) the allowable density of the development and the prohibition of development on the sixty-seven acres of the Saugatuck Watershed; (2) the requirement to connect the housing development to the Ridgefield public sewer system; (3) the age restriction requiring that seventy percent of the development be dedicated to senior housing; (4) the prohibition of the construction of four bedroom homes and cap on the number of three bedroom homes; and (5) the requirement of one hundred foot side and rear yard setbacks." 2010 WL 4609391, *2.

[8]     Sixty-seven acres of the South Parcel are located in the Saugatuck Public Water Supply Watershed ("Saugatuck Watershed"). <u>Eureka v. Ridgefield Planning and Zoning Commission</u>, No.

Eureka on the remaining issues, directing that the modified application be approved under "reasonably justified terms and conditions." Id. at 2010 WL 4609391, *7. Eureka filed an appeal on February 8, 2011. The case was heard by the Connecticut Appellate Court on February 16, 2012. Supplemental briefing was filed on July 27, 2012. No decision has yet been filed. http://appellateinquiry.jud.ct.gov/CaseNameInq.aspx, Eureka v., LLC v. Ridgefield P & A Commission et al, AC 33125 (last visited September 25, 2012).

### B. Offer of Judgment

Defendants move that judgment enter for the plaintiff on Counts One and Two as follows:

> Defendants, their agents, representatives, employees and assigns, are permanently enjoined from implementing the Bennett's Farm Corporate Park Preliminary Project Plan as adopted by the Bennett's Farm Development Authority on February 6, 2002 and the legislative body of Ridgefield on February 13, 2002, and as amended. Defendants, their agents, representatives, employees and assigns are further enjoined from exercising eminent domain to acquire property now owned by Plaintiff, consisting of a 155 - acre tract located to the south of Bennett's Farm Road in Ridgefield, for any reason, for a period of ten years from the entry of judgment herein. Judgment is entered with no finding or concession of liability but rather is based on defendants' consent. Costs which have accrued, if any, shall be

CV084018175S, 2010 WL 4609391, *1 (Conn. Super Ct. Oct. 20, 2010).

determined by the Court after final judgment
is entered.

[Doc. #266]. Eureka rejected this offer on September 7, 2011, and opposes the entry of judgment in its favor now.

### 1. Authority to Enter an Injunction Without Making Underlying Findings of Liability

Defendants argue that this Court has the authority to enter judgment in favor of Eureka without making underlying findings of liability, contending that a trial for the purpose of making liability findings "is simply not warranted where, as here, the defendant has consented to a judgment that would provide the plaintiff with more relief than it could obtain at trial." [Doc. #266-1 at 7].

In Chathas v. Local 134 IBEW, defendants submitted an offer of judgment consenting to the entry of a permanent injunction without admission of liability. 233 F.3d 508, 511 (7th Cir. 2000), cert. denied, 533 U.S. 949 (2001). Plaintiffs rejected the offer and defendants moved for entry of a permanent injunction under Fed. R. Civ. P. 68.[9] Id.  The district court entered the injunction and, thereafter, defendants moved the district court to dismiss the suit as moot. Id.  Plaintiffs objected, arguing that they were entitled to a declaratory

---

[9]     The Court of Appeals noted that, "Rule 68 offers are much more common in money cases than in equity cases, but nothing in the rule forbids its use in the latter type of case." Chathas, 233 F.3d at 511 (citing cases).

judgment or at least to a finding in or accompanying the permanent injunction that the defendants had violated the law. Id.  At the same time, the plaintiffs asked for leave to amend their complaint to add a claim.  The court granted the motion to dismiss the suit "on the ground that the entry of the permanent injunction had eliminated the controversy between the parties except insofar as the request to amend the complaint was concerned."  Id.[10]  The district court denied the motion to amend and plaintiffs appealed, renewing the arguments that they were entitled to a finding of illegality.

> A winning party cannot appeal merely because the court that gave him his victory did not say things that he would have liked to hear, such as that his opponent is a lawbreaker . . . . Nor can a party force his opponent to confess to having violated the law, as it is always open to a defendant to default and suffer judgment to be entered against him without his admitting anything-if he wants, without even appearing in the case.

---

[10]   It is noted that the Chathas court addressed the appeal from the denial of declaratory relief independently of the appeal from the district court's denial of leave to amend. Chathas, 233 F.3d at 511. Finding that "the question whether to bar an amendment to the complaint because of undue delay is committed to the discretion of the district court," the Chathas court held that the district court did not exercise any discretion as it denied amendment on the "sole ground that the claim sought to be added did not state a claim."  The appeal on denial of leave to amend the complaint was remanded to the district court to enable the judge to make the "required" discretionary finding.  Chathas, 223 F.3d at 514.

The <u>Chathas</u> court went on to say,

> if the defendant has thus thrown in the
> towel there is nothing left for the district
> court to do except enter judgment. The
> absence of a controversy in the
> constitutional sense precludes the court
> from issuing an opinion on whether the
> defendant actually violated the law. Such
> an opinion would be merely an advisory
> opinion, having no tangible, demonstrable
> consequence, and is prohibited.

<u>Id.</u> at 512 (citations omitted).

The Seventh Circuit held that, "[a]lthough Rule 65(d) does require that the order granting the injunction 'set forth the reasons for its issuance,' they need not take the form of findings that the defendant violated the law. The reason for the injunction might simply be that the defendant had consented to its entry . . . ." <u>Id.</u> at 513.   The district court entered the permanent injunction, drafted by plaintiffs, providing all they were entitled to with the exception of a finding of liability and the Circuit Court found such a finding was "not a prerequisite to the issuance of a valid injunction."  <u>Id.</u> at 513.

## 2.   Injunctive Relief Offered by Defendants

Eureka does not challenge defendants' position that this Court has the authority to enter judgment without making findings of liability. Rather, Eureka argues that the motion for judgment should be denied because the offered relief is

inadequate. [Doc. #271 at 15].   Eureka contends that "the critical inquiry for the Court in evaluating a motion for judgment based upon a Rule 68 offer of judgment is whether, in fact, the offering party has shown <u>definitively</u> that the offer is the maximum that the party could possible obtain at trial."[11] [Doc. #271 at 16-17 (emphasis in original)].   Plaintiff cites no authority for this expansive proposition.

Defendants argue that, "Eureka has failed to demonstrate that defendants' offer of judgment <u>does not</u> provide Eureka with <u>all</u> the relief it could obtain if it prevailed at trial, based on the harm Eureka has alleged." [Doc. #275 at 4 (emphasis added)].   The Court agrees that the Third Amended Complaint does not allege any specific action that defendants have taken to stop affordable housing on the South Parcel other than actions related to the Project Plan.   Indeed, all of Eureka's factual proposed findings and conclusions of law relate to the subject matter of the Project Plan. [Doc. #231].

### 3.   Injunctive Relief Sought by Eureka

Eureka states that, "In essence, the First Count seeks preliminary and permanent injunctive relief to stop

---

[11]   In plaintiff's sur-reply brief, Eureka states that the "dispositive issue is whether the Court can <u>definitively</u> decide at this juncture that the defendants, in the Motion for Judgment, have offered the plaintiff *all* of the relief it might possibly obtain if successful at trial." [Doc. #283 at 1 (emphasis added, italics in original)].

implementation of the Project Plan and the Second Count seeks preliminary and permanent injunctive relief to enjoin Ridgefield from taking the South Parcel." [Doc. #271 at 9]. The basis of Eureka's argument that it can recover more than is offered by defendants is that the available relief is not limited to the four corners of the complaint or prayer for relief in the Third Amended Complaint and, ultimately, the Court has the broad discretion to award appropriate injunctive and other relief.

Specifically, Eureka seeks a permanent injunction against taking the South Parcel "for any reason" as well as the following relief:

- an injunction precluding the Defendants, their agents, representatives, employees and assigns, from taking <u>any other actions</u> to delay, impede or interfere with Eureka's affordable housing project.

- an affirmative injunction <u>obligating</u> the Defendant, their agents, representatives, employees and assigns, including specifically the Board of Selectman and Board of Finance, to support Eureka's plans before any and all state, local or federal boards, commissions or agencies that will review any aspect of the plan.

- a declaratory judgment that the Defendants <u>violated Eureka's constitutional rights</u> by blocking its affordable housing project in bad faith through the improper use of eminent domain.

[Doc. #271 at 21-22 (emphasis added)]. Eureka contends that it should be "clear by now" that the "wrongful conduct at issue in this case is not simply the Project Plan, but rather is the

broader scheme of conduct to stop affordable housing on the South Parcel." [Doc. #271 at 24]. Eureka contends there is a "host of ways" that defendants "wish to be free to undermine or sabotage Eureka's affordable housing plans in other ways." [Doc. #283 at 2].

- one of the primary options for provision of sewer service to the property is for Eureka to connect to Danbury's Wastewater Treatment Plant, which was designed at the State's request to have excess capacity for neighboring communities like Ridgefield. This would require an inter-municipal agreement between Ridgefield and Danbury, which the Board of Selectman <u>could</u> refuse to negotiate or execute in order to stop the affordable housing project.

- a second option for sewer service requires expansion of Ridgefield's existing Route 7 sewer treatment plan; the Board of Selectman and Board of Finance <u>could</u> oppose those efforts for the improper purpose of stopping Eureka's affordable housing plans.

- The Ridgefield Water Pollution Authority ("WPCA") will be integrally involved in Eureka's efforts to obtain sewer and water for the site. Ridgefield's First Selectman, defendant Rudy Marconi, one of the masterminds of the town's eminent domain approach and a vocal critic of the State's affordable housing laws, sits ex officio on the WPCA. As such, he has the power to improperly cause the WPCA to interfere, impede or stop Eureka's project.

- Ridgefield <u>could</u> amend its zoning or permitting regulations to delay, impede, or interfere with the project.

[Doc. #283 at 2 (emphasis added)].

The Court declines to exercise its discretion to bar defendants from taking the South Parcel for "any reason" for an indeterminate amount of time or barring "any other actions" or

"obligating" defendants to support Eureka's plans, nor will the Court enjoin defendants from taking actions they "could" take but have not taken. "Ripeness doctrine reflects the determination that courts should decide only 'a real, substantial controversy,' not a mere hypothetical question." 13B Charles Alan Wright, Arthur M. Miller, Federal Practice and Procedure §3532.2 (3d ed. 2011) (quoting Longway v. Jefferson County Bd. of Sup'rs, 24 F.3d 397, 400 (2d Cir. 1994)). Some "events that are anticipated with alarm are simply too remote to justify decision." Id. This is true when "events that once presented a ripe controversy have ceased to have any continuing impact, and the prospect of renewal is speculative" and/or the "claim involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. "Accordingly, 'a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the Court's intervention.'" Town of Bethel v. Howard, 198 F.3d 235, 1999 WL 973627, *3 (2d Cir. Sept. 30, 1999) (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)); 13B Federal Practice and Procedure §3532.3 ("The value of not deciding is affected by the relationships of the federal judiciary with other branches of the federal government and with state institutions, the need to

conserve judicial resources, and the risk that premature decision may be proved unwise as facts are more fully developed and as more minds consider the question.").

There is clearly room to disagree about future events and actions defendants may or could take. The parties have a pending zoning appeal in state court and Eureka can come up with a "host of ways" that defendants "could delay, interfere, impede, or stop Eureka's affordable housing plans." [Doc. #283 at 2(emphasis added)]. There is a clear possibility that defendants will not act illegally. 13B Federal Practice & Procedure §3532.3 ("An extreme illustration of the need to await development of state law is reflected in the refusal to consider the validity of public actions that have not yet been taken.").[12]

_____

[12] Citing Chacon v. Granata, 515 F.2d 922, 924-926 (5th Cir. 1975), cert. denied, 423 U.S. 930 (1975). In Chacon, the plaintiffs, who owned property near an Air Force base, filed suit to challenge annexation of the property by the City of San Antonio minutes after passage of the annexation ordinance. Their claim was that annexation was simply a first step in a scheme to deprive them of use of their land without just compensation, either by arbitrary zoning or eminent domain proceedings to be initiated after the annexation had depressed the value of the property. Although there was evidence that the purpose of the anticipated zoning or condemnation would be to prevent uses of the land that would interfere with aircraft operations, the court found the challenge to merely anticipated actions was not ripe. Any injury that might be suffered could be remedied in the future. It must be presumed that legislative action not yet taken would respect constitutional rights, and in any event it would not be possible to predict the contours of the predicted ordinances, nor judicial interpretation and administrative application. "Under these circumstances the injury plaintiffs fear about future zoning ordinances is not imminent." Id. at 925.

This forecast/prediction by Eureka which anticipates future events or "further efforts by the defendants intended to stop or delay Eureka's affordable housing development" is speculative at best. [Doc. #283 at 2]; Chacon v. Granata, 515 F.3d at 924-25 ("Taking all of plaintiffs' contentions as true, the annexation by itself is nothing more than an inchoate wrong that may never ripen."). "[W]here a history of legal violations is before the district court, that court has significant discretion to conclude that future violations of the same kind are likely. Courts are free to assume that past misconduct is highly suggestive of the likelihood of future violations." Kapps v. Wing, 404 F.3d 105, 123 (2d Cir. 2005)(internal citations and quotation marks omitted)(finding "ample evidence before the district court of prior violations."). Plaintiff has not made this showing and the Court expressly declines to grant the expansive relief requested. The Court finds that defendants' offer of judgment provides plaintiff with broader relief than the mere entry of an injunction prohibiting defendants from taking Eureka's property to implement the Project. Defendants consent to the entry of an injunction prohibiting them from taking Eureka's property for any reason for a period of ten years. See Chathas, 223 F.3d at 512. The Court finds the terms of the offer of judgment appropriately tailored to redress the

legal violations alleged by plaintiff, and resolve the controversy between the parties.

Based on the foregoing, the Court enters judgment in favor of plaintiff on Counts One and Two as set forth in defendants' Offer of Judgment.

## III. CONCLUSION

For the reasons stated, defendants' Motion for Judgment **[Doc. #266]** on Counts One and Two of the Third Amended Complaint is **GRANTED** as set forth in defendants' Offer of Judgment. The Clerk of the Court will enter Judgment in favor of plaintiff on Counts One and Two of the Third Amended Complaint as follows.

> Defendants, their agents, representatives, employees and assigns, are permanently enjoined from implementing the Bennett's Farm Corporate Park Preliminary Project Plan as adopted by the Bennett's Farm Development Authority on February 6, 2002 and the legislative body of Ridgefield on February 13, 2002, and as amended. Defendants, their agents, representatives, employees and assigns are further enjoined from exercising eminent domain to acquire property now owned by Plaintiff, consisting of a 155 - acre tract located to the south of Bennett's Farm Road in Ridgefield, for any reason, for a period of ten years from the entry of judgment herein. Judgment is entered with no finding or concession of liability but rather is based on defendants' consent. Costs which have accrued, if any, shall be determined by the Court after final judgment is entered.

[Doc. #266].

Summary Judgment was granted in favor of defendants on Counts Three and Four of the Third Amended Complaint on February 4, 2011. [Doc. #210].

Plaintiff's Motion for Permission to File Supplemental Memorandum in Opposition to Motion for Judgment and in Support of Motion to Amend Complaint **[Doc. #289]** is terminated as **MOOT.**

Plaintiff's Motion for Leave to Amend and/or Supplement the Third Amended Complaint **[Doc. #291]** is **DENIED.**

This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge **[Doc. #231]** on May 20, 2011, with appeal to the Court of Appeals.

ENTERED at Bridgeport this 28th day of September 2012.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE